# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

JENNIFER COUTURE; RALPH
GARRAMONE M.D. P.A. d/b/a
GARRAMONE PLASTIC SURGERY

Plaintiffs,

vs.

DANESH NOSHIRVAN a/k/a
@THATDANESHGUY; TIKTOK
INC.; AND BYTEDANCE, INC.;
JOHN DOES 1-100, being fictitious
names, and ABC CORPORATIONS
1-100 being fictious names

Defendants

_____/

Case No. 2:23-cv-00340-SPC-KCD

## DEFENDANTS TIKTOK INC. AND BYTEDANCE INC.'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF

### INTRODUCTION

By this action, Plaintiffs Jennifer Couture and Ralph Garramone M.D. P.A. d/b/a Garramone Plastic Surgery accuse an individual defendant, Danesh Noshirvan a/k/a @thatdaneshguy, and his unnamed associates of engaging in an "online and telephonic" campaign to harass, threaten, and defame them. Whatever the merits of those claims, it is a dispute exclusively between those parties, not Defendants TikTok Inc. ("TTI") or ByteDance Inc. ("BDI") (collectively "TikTok Defendants").

Indeed, the operative Amended Complaint makes clear that the harms asserted by Plaintiffs were the direct result of alleged actions and content created by *Defendant Noshirvan* and his followers (termed "Danelanders"), all of whom used a variety of internet services—including Facebook, Yelp, and Google—as well as telephone calls and texts to harass Plaintiffs.[1]  Evident from the pleading, neither of the TikTok Defendants created *any* of the allegedly harmful online material regarding Plaintiffs or otherwise participated in the harassment.  Plaintiffs instead vaguely suggest that the TikTok Defendants are liable for a variety of claims because they: (1) should have moderated and removed Defendant Noshirvan's content posted on TikTok; and (2) "offer[] several in-app monetization features," which Defendant Noshirvan allegedly utilized at unspecified times and unconnected with his harassment of Plaintiffs, resulting in financial gain for both Defendant Noshirvan and the TikTok Defendants.

Plaintiffs' strained theories of liability as to the TikTok Defendants are fundamentally flawed as a matter of law.  The claims against the TikTok Defendants should be dismissed for at least two independent reasons:

*First*, Section 230 of the Communications Decency Act ("CDA") bars *all* state law claims—including the very causes of action asserted against the TikTok

---

[1] For purposes of this motion to dismiss, the TikTok Defendants accept as true non-conclusory factual allegations from Plaintiffs' Amended Complaint.  At this stage, the TikTok Defendants take no position with regard to the accuracy or merits of Plaintiffs' factual allegations.

Defendants—that hold internet services liable for publishing information created and provided by a third-party user. *Dowbenko v. Google Inc.*, 582 Fed.Appx. 801, 804 (11th Cir. 2014); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006). And other federal courts already have dismissed similar claims involving TikTok—alleging third-party misconduct including cyberbullying and false information by other users. *See, e.g.*, *Winter v. TikTok*, No. 4:21-CV-01046 JAR, 2021 WL 5446733 (E.D. Mo. Nov 22, 2021) (dismissing claim under Section 230); *Day v. TikTok, Inc.*, No. 21 C 50129, 2022 WL 595745, at *1 (N.D. Ill. Feb. 28, 2022) (same). This is consistent with the Eleventh Circuit's repeated application of Section 230's broad immunity, and Plaintiffs' claims against the TikTok Defendants are barred as a matter of law.

*Second*, putting aside Section 230's threshold bar on such claims, Plaintiffs do not and cannot meet their burden of plausibly pleading key elements for any of the individual causes of action in the Amended Complaint:

- Plaintiffs do not and cannot plausibly establish the required elements of a cyberstalking claim, including that the TikTok Defendants ever communicated with Plaintiffs, let alone engaged in willful or malicious cyberstalking of them. Moreover, the Florida statute on which Plaintiffs rely does not provide a civil cause of action for damages as Plaintiffs allege;

3

- Plaintiffs' second and third claims for civil conspiracy likewise fail in the absence of factual allegations establishing the required elements, particularly that the TikTok Defendants and Defendant Noshirvan entered into any agreement pertaining to Plaintiffs, much less an "illicit accord"; and

- Plaintiffs do not and cannot allege facts establishing that the TikTok Defendants had knowledge of any of Plaintiff Garramone's "existing business relationships" or "prospective relationships," and thus the claim for interference with prospective economic advantage fails as well.

Furthermore, no amount of amendments to the pleading can cure these fatal deficiencies. The TikTok Defendants therefore respectfully request that the Court dismiss the claims against them with prejudice.

## BACKGROUND

### A. The Amended Complaint Centers on Plaintiffs' Dispute with Defendant Noshirvan, Which Spanned Different Internet Services as Well as Multiple Arenas.

The core of the Amended Complaint consists of allegations that Plaintiffs were harassed and threatened by Defendant Noshirvan and individuals associated with him. *See generally* Am. Compl. ¶¶ 34–59, pp. 14-29.[2] According to Plaintiffs, their harassment traces to an incident in 2022 where "Couture was recorded arguing

---

[2] The paragraphs in the Amended Complaint are not numbered sequentially and include two different sets of allegations numbered 47 – 53. When referring to the allegations, the TikTok Defendants have included page numbers to clarify the precise allegations being referenced.

with a person in a parking lot" and a teenager "provided [Noshirvan] a copy of the video of Couture arguing, along with Couture's personal identifying information." *Id.* ¶ 39, p.15.  Plaintiffs do not (and cannot) allege that the TikTok Defendants had any role in the public incident, the videotaping, or Defendant Noshirvan's alleged involvement.  *See id.* ¶¶ 35-36, p.14 (alleging that Defendant Noshirvan is a "repeat offender" who "sources" and "re-posts" videos where "the subject is recorded in an argument with another").

Thereafter, Defendant Noshirvan and his supporters allegedly engaged in a "campaign of *online and telephonic* harassment." *Id.* ¶ 40, p. 16 (emphasis added). Notably, the Amended Complaint acknowledges this dispute was not specific or confined to TikTok, but spilled across multiple sites on the internet and offline. *See, e.g.*, Am. Compl. ¶ 38, p. 15 (alleging "emails, phone calls, voicemails, social media postings" including negative reviews "on sites like Yelp and Google"); ¶ 41, p. 16 (alleging "hundreds" of abusive and threatening text messages and a "constant stream" of phone calls and voicemails); *id.* (alleging similar messages were sent to Plaintiff Couture's "emails and social media"); *id.* ¶¶ 45-46, pp. 18-19 (alleging Defendant Noshirvan's communications with Plaintiff Couture on Facebook); *id.* ¶ 48, p. 20 (alleging Defendant Noshirvan "purchased other forms of media to promote and expand the reach of his videos and cyberstalking campaign against Couture"); *id.* ¶ 55, p. 22 (alleging Defendant Noshirvan filed anonymous

allegations that triggered a Florida Department of Children and Families investigation at Couture's home); *id.* ¶ 58, p. 23 (alleging Defendant Noshirvan "incited Danelanders to report [Couture] to Southwest Florida Crimestoppers"); *id.* ¶¶ 59, p. 23; 47, p. 24 (alleging Defendant Noshirvan "doxed" a familial link between Plaintiffs Couture and Garramone, which led to Garramone receiving "hundreds of rage-filled calls, text messages, emails, and fictitious negative reviews posted on professional review sites").

Nowhere in the Amended Complaint do Plaintiffs suggest that the TikTok Defendants participated in this third-party harassment of Plaintiffs, contributed to the underlying harassing content allegedly created by Defendant Noshirvan or his followers (which admittedly was not limited to TikTok), or had any affiliation with Defendant Noshirvan.  *See* Am. Compl. ¶65, p. 31 ("Plaintiffs are the victims of cyberstalking conducted by defendant Danesh Noshirvan."), ¶ 67, p. 31 (describing "his online and telephonic cyberstalking campaigns").  Plaintiffs likewise do not allege that they have any relationship or connection with the TikTok Defendants—in fact, Plaintiff Couture concedes that she "was not a TikTok user" at the time of Defendant Noshirvan's harassment.  *Id.* ¶ 44, p. 18.

## B. The TikTok Defendants' Only Alleged "Involvement" was Providing a Platform on Which Third-Party Users Posted Their Content

TikTok[3] is a video-sharing service that millions of Americans can download and use to create, share, and view videos. *See* Am. Compl., ¶ 10, p.5. Plaintiffs acknowledge that third-party users create and upload the content of videos posted on TikTok. *Id.*

Thus, the TikTok Defendants' only alleged involvement is that *Defendant Noshirvan* used his TikTok account (@thatdaneshguy), among other internet services, to post harassing content about Plaintiffs and incite other individuals to do the same. *Id.* ¶¶ 9, p. 5; 66, p. 31 (Defendant Noshirvan "communicated online and telephonic cyberstalking campaigns" including "via" TikTok). While the Amended Complaint asserts that Defendant Noshirvan's account was previously terminated "for violating Community Guidelines"[4] and other harassing posts—unrelated to

---

[3] TTI provides the TikTok service in the United States. *See generally* https://www.tiktok.com/legal/page/us/terms-of-service/en. Plaintiffs do not (and cannot) allege relevant facts as to BDI, beyond purported corporation affiliation with TTI. (Am. Compl. ¶ 5, p.4). This alone requires dismissal of BDI as a party, as undifferentiated lumping of separate corporate entities is insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). In addition, this Motion to Dismiss asserts defenses that would require dismissal of both TTI and BDI.

[4] In light of the Amended Complaint's many references to the Community Guidelines, the TikTok Defendants are permitted to refer to the same Community Guidelines herein. *Reed v. Royal Caribbean Cruises Ltd.*, 618 F.Supp.3d 1346, 1352 (S.D. Fla. 2022) (citing *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009)). Those Community Guidelines articulate principles for a global community where users "come to TikTok to discover a diversity of ideas, creators, and products, and to connect with others in our community." *See* Community Guidelines, https://www.tiktok.com/community-guidelines/en/ (last accessed July 9, 2023). While TikTok "aim[s] to remove content or accounts that violate our guidelines before they are viewed or shared

Plaintiffs—Plaintiffs nonetheless (1) allege that such posts were created and posted by Defendant Noshirvan and his supporters; (2) describe "their victims" as "victimsofdaneland"; and (3) nowhere claim that such content was created by the TikTok Defendants.  Am. Compl. ¶¶ 15, p. 6; 55-56, p. 27.

The only other allegations about TikTok are unrelated and/or generic, none of which are connected to or specific to the alleged wrongful acts against Plaintiffs.  For example, the Amended Complaint alleges that TikTok collects user data.  *Id.* ¶¶ 25-30, pp. 10-13.  But Plaintiffs do not and cannot allege that they were harmed by data collection by TikTok.  *See, e.g.*, *id.* ¶ 44, p. 18 (Couture asserts she was not even a TikTok user).  In another example, the Amended Complaint asserts that TikTok benefits from in-app revenue generated by users, through "several in-app monetization features" available to eligible users.  *See id.* ¶¶ 12-24, pp. 5-11.  But Plaintiffs allege that such features are available to other eligible creators (not only Defendant Noshirvan) and that *viewers* determine whether to send payment to eligible creators.  *Id.* ¶¶ 14-16, pp. 6-7.  Besides a generalized allegation that

---

by other people," it encourages community members to "report violations in-app and on our website" to facilitate "appropriate action if warranted."   https://www.tiktok.com/community-guidelines/en/enforcement/.  But like other communication services where users post third-party content, TikTok's Terms of Service inform users that "[t]he information and materials in the User Content . . . have not been verified or approved by us"; that TikTok has the right but no obligation "to remove or disable access to content at our discretion"; and that TikTok accepts "no liability in respect of any content submitted by users and published by us or by authorised third parties." https://www.tiktok.com/legal/page/us/terms-of-service/en.

Defendant Noshirvan "has exploited TikTok's in-app revenue," the Amended Complaint alleges only one particular feature—a "Live Subscription" in which users pay a monthly fee for advance access to another user's content—in which Defendant Noshirvan even participated. *Id.* ¶¶ 21, p. 9; 24, pp. 10-11. Nowhere does the Amended Complaint allege that the specific harassment of Plaintiffs was caused by purported participation in the "Live Subscription." To the contrary, Plaintiffs allege that Defendant Noshirvan had an established "scheme" of "sourc[ing] videos from a variety of sources" and "re-pos[ting]" them (*id.* ¶¶ 35-36, pp. 14), and that his "online and telephonic campaign" was not limited to TikTok and spanned other services such as Facebook, Yelp, and Google.

Based on these allegations, the Amended Complaint asserts claims of cyberstalking, civil conspiracy, and interference with prospective economic advantage against the TikTok Defendants. Plaintiffs seek, jointly and severally from all Defendants, compensatory, liquidated, statutory, and punitive damages.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Wiand v. ATC Brokers Ltd.*, No. 8:21-cv-1317-MSS-AAS, 2022 WL 19336431, *4 (M.D. Fla. Sept. 27, 2022) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Although a court must "accept all factual allegations as true," plaintiffs must allege "more than labels and

conclusions amounting to a formulaic recitation of the elements of a cause of action." *George & Co. v. Spin Master Corp.*, No. 2:18-cv-154-FtM-38MRM, 2018 WL 5268754, at *3 (M.D. Fla. Sept. 13, 2018) (J. Chappell) (citations omitted).

## ARGUMENT

As a threshold matter, the claims against BDI should be dismissed because the Amended Complaint pleads *no facts* specific to BDI. Plaintiffs' allegations that lump in BDI among the other "Defendants"—without alleging any specific facts around BDI's alleged involvement in the underlying conduct—amount to impermissible "shotgun" pleadings and are insufficient to state a claim against BDI. *Magluta*, 256 F.3d at 1284.

Even putting aside this absence of any factual allegations pertaining to BDI, the claims against both TikTok Defendants should be dismissed for at least two independent reasons: *First*, Section 230's broad immunity unequivocally bars all of Plaintiffs' asserted claims. *Almeida*, 456 F.3d at 1321-22. *Second*, Plaintiffs fail to allege viable state-law claims against the TikTok Defendants, as they do not and cannot allege facts demonstrating the requisite elements of each claim. Fed. R. Civ. Proc. 12(b)(6).

## I.   Section 230 of the Communications Decency Act Bars Plaintiffs' Claims.

In 1996, Congress passed the CDA to insulate internet platforms from lawsuits based on third-party speech and conduct. The CDA bars liability for

interactive computer services, like TikTok, in two respects: (1) an interactive computer service cannot be liable based on the content of others—such as the service's users—that is published on the platform, 47 U.S.C. § 230(c)(1); and (2) an interactive computer service cannot be held liable for good faith but imperfect efforts to limit/moderate the availability of objectionable third party content on its platform, 47 U.S.C. § 230(c)(2).

To effect this two-pronged immunity, the CDA expressly prohibits state and local causes of action that impose liability in either circumstance: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.'" 47 U.S.C. § 230(e)(3). The Eleventh Circuit has repeatedly enforced this statutory immunity, holding unequivocally that "the CDA . . . preempts any inconsistent state law causes of action". *Dowbenko*, 582 Fed.App'x. at 804; *see also Almeida*, 456 F.3d at 1321 (same). Indeed, courts have found that Section 230 preempts the types of claims Plaintiffs raise against the TikTok Defendants: civil conspiracy, *GW Equity LLC v. Xcentic Ventures LLC*, No. 3:07-CV-976-O, 2009 WL 62173 (N.D. Tex. Jan. 9, 2009); and interference with prospective economic advantage, *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311 (M.D. Fla. Oct. 21, 2015).

Because the CDA provides immunity not only from liability, but also from suit itself, CDA immunity should be awarded "at the earliest possible stage of the

case." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (affirming grant of motion to dismiss because "Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process"); *see also Wiand*, 2022 WL 19336431, at *7 (granting motion to dismiss where Section 230 statutory immunity was "readily apparent from the face of the Amended Complaint").

Section 230 immunity applies as long as the TikTok Defendants are (1) a "provider or user of an interactive computer service" (2) alleged to have published "information provided by another information content provider," and (3) treated "as the publisher or speaker" of that third-party content. *See* 47 U.S.C. § 230(c)(1). As set forth below, all three requirements are readily established here.

## A. The TikTok Defendants are Providers of an Interactive Computer Service.

As pled in the Amended Complaint, the TikTok Defendants are unquestionably providers of an interactive computer service under the CDA. Section 230(f)(2) defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server". *Id*. § 230(f)(2). According to the Amended Complaint, TikTok offers an online platform that allows users to "edit, modify, and create short-form videos." Am. Compl. ¶ 10, p. 5. Indeed, courts have already held that the TikTok Defendants are an "interactive computer service" as defined by the

CDA. *Winter*, 2021 WL 5446733, at *4 (dismissing claim against TTI and Facebook—relating to allegedly false posts by third-party bad actors—as barred by Section 230); *Day*, 2022 WL 595745, at *2 (dismissing claims that TTI "allowed and did not timely remove the videos posted by someone else" under Section 230).

### B. All Claims against the TikTok Defendants Hinge Entirely on User-Generated Content.

Plaintiffs' theory against the TikTok Defendants is based solely on harassing content allegedly generated by third-party users and allegedly posted on TikTok—in other words, "information provided by another information content provider." 47 U.S.C. § 230(c)(1). Indeed, the few relevant allegations against the TikTok Defendants are entirely derivative of the alleged "campaigns of harassing, defamatory, and abusive attacks" attributed directly to Defendant Noshirvan and his online followers. *See, e.g.*, Am. Compl. ¶ 66, p. 31.

As in similar cases where courts have applied Section 230, the harassing information and content that Plaintiffs deem harmful and that forms the core of this lawsuit "originat[ed] with a third-party user of [TikTok]." *Almeida*, 456 F.3d at 1321. The Amended Complaint refers repeatedly and exclusively to content posted by others: *Defendant Noshirvan* allegedly posted a series of twelve videos targeting Plaintiff Couture, repeatedly edited and re-posted his previous videos, prompted his followers to send "hundreds" of abusive and threatening messages, including to Plaintiff Couture's "social media," and even paid to publish in the online edition of

International Business Times of Singapore.   Am. Compl. ¶¶ 40-51, pp. 16-21.

Tellingly, nowhere in the Amended Complaint do Plaintiffs allege that the TikTok

Defendants developed or contributed to *any* content posted by Defendant Noshirvan

or his followers.   Thus, under Section 230, Defendant Noshirvan and his followers

are the quintessential examples of persons alleged to be "responsible, in whole or in

part, for the creation or development of information provided through the Internet or

any other interactive computer service."   47 U.S.C. § 230(f)(3)

### C. The TikTok Defendants Are Not Liable as a Matter of Law for Performing a Quintessential Publisher Function

Finally, Plaintiffs' claims clearly seek to treat the TikTok Defendants as the

"publisher" of content created by others—*i.e.*, the content of Defendant Noshirvan

and his followers.   Under Section 230, a cause of action "treat[s]" an entity as a

"publisher"—and is preempted—any time it attempts to hold an entity responsible

for "deciding whether to publish, withdraw, postpone or alter content."   *McCall v.*

*Zotos*, No. 22-11725, 2023 WL 3946827 at *3 (citing *Zeran*, 129 F.3d at 330); *see,*

*e.g.*, *Winter*, 2021 WL 5446733, at *4 (citing *Zeran* and dismissing allegations of

third-party "stalking and harassment" that "seek to hold Facebook and TikTok liable

for not removing the content/accounts posted/held by Dolan and her group").

Plaintiffs' allegations—which amount to no more than repeated observations

that *Defendant Noshirvan* allegedly used TikTok, among other internet services, to

harass them, *see* Am. Compl. ¶¶ 35-43, pp. 14-18—are precisely the type that courts

have dismissed pursuant to Section 230. *See, e.g.*, *Dowbenko*, 582 Fed.Appx. at 805 (affirming dismissal of defamation claim against Google based on CDA immunity for publishing an allegedly defamatory article written and posted by anonymous bloggers); *McCall*, 2023 WL 3946827, at **2-3 (affirming dismissal of complaint against Amazon for publishing a third-party's negative product review in light of CDA immunity); *Roca*, 140 F. Supp.3d at 1323-1324 (dismissing with prejudice tort claims against website operator for publishing third-party's post).

Plaintiffs' non-specific allegations that the TikTok Defendants somehow failed to enforce the TikTok Community Guidelines and failed to moderate/remove content does not change the fact that the harassing content originated with third parties. *See, e.g.,* Am. Compl. ¶ 15, pp. 6-7 (alleging that TikTok Community Guidelines prohibit "harassing, humiliating, threatening, and doxing"); ¶¶ 25-31, pp. 11-12 (alleging TikTok has general monitoring capabilities); ¶¶ 56-57, p. 22 (alleging that TikTok previously terminated and reinstated Defendant Noshirvan's account for his own posts). Such a claim seeks to hold an internet service liable for failing to take down—in other words, publish—a third-party's content, which "is exactly the kind of claim that is immunized by the CDA." *McCall*, 2023 WL 3946827, at *3; *see, e.g.*, *Dowbenko*, 582 Fed.Appx. at 805 ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional functions—such as deciding whether to publish, withdraw, postpone or alter content—are

barred."); *Winter*, 2021 WL 5446733, at \*5 ("Plaintiffs' complaint about selective enforcement of content standards is precisely the type of claim Congress intended to preempt in § 230(c)(1)" and falls within "the exercise of traditional publisher functions"); *cf. Netchoice, LLC v. Attorney General*, 34 F.4th 1196, 1203 (11th Cir. 2022) ("We hold that it is substantially likely that social-media companies—even the biggest ones—are 'private actors' whose rights the First Amendment protects, … that their so-called 'content-moderation' decisions constitute protected exercises of editorial judgment") (citation omitted).

Finally, allegations that internet services financially benefit from third-party use of their services are immaterial. *See generally* Am. Compl. ¶¶ 12-24, pp. 5-11. Courts routinely apply Section 230 immunity despite such plaintiff allegations. *See, e.g.*, *L.H. v. Marriott Int'l, Inc.*, 604 F.Supp.3d 1346, 1354, 1364-65 (S.D. Fla. May 23, 2022) (dismissing claims under Section 230, notwithstanding allegation that third-party wrongdoer "also paid a fee to craigslist," and noting features of Craigslist website did not contribute to underlying third party content); *Roca*, 140 F. Supp. 3d at 1324 (applying Section 230 to bar claims against website that summarized third-party posts into statistics, and rejecting argument that defendants became "providers" of such content because users could pay to have testimonials placed on defendants' website). Here, Plaintiffs acknowledge that any neutral tools on TikTok are available to other creators (not only Defendant Noshirvan) and that any alleged

benefit depends on *third-party viewers* deciding whether to send payment.  Am. Compl. ¶¶ 14-16, pp. 6-7; *see, e.g.*, *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1267, 1270 (9th Cir. 2016) (rejecting claims that Yelp's neutral tools were exempt from Section 230, despite allegations that viewers were "'directed to Yelp.com and then shown Yelp sponsored [sic] advertising'").  And nowhere do Plaintiffs allege that any TikTok-specific features contributed to *the underlying harassing content* that forms the basis of their claims.  To the contrary, Plaintiffs allege that Defendant Noshirvan had an established "scheme" of "sourc[ing] videos from a variety of sources" and "re-pos[ting]" them (Am. Compl. ¶¶ 35-36, p. 14), and that his "online and telephonic campaign" was not limited to TikTok and spanned other services such as Facebook, Yelp, and Google.

*     *     *     *     *

Because the TikTok Defendants are providers of an interactive computer service being held liable for publishing and failing to remove the harassing third-party content at issue, the TikTok Defendants are entitled to Section 230 immunity from Plaintiffs' claims.  *Dowbenko*, 582 Fed.Appx. at 804.

## II.  Plaintiffs Fail to State a Claim for the Individual Causes of Action in the Amended Complaint.

In addition to being barred by Section 230, Plaintiffs fail to carry their burden of pleading essential elements of each of their three causes of action—cyberstalking, civil conspiracy, and interference with prospective economic advantage—much less

17

pled enough facts to state a claim for relief that is plausible as required by Federal Rules of Civil Procedure 8(a) and 12(b)(6).

### A. Plaintiffs do not State a Claim for Cyberstalking (Count I) Against the TikTok Defendants.

Plaintiffs attempt to bring an "action for damages for cyberstalking pursuant to Section 748.048(1)(d)(1) of the Florida Statutes". Am. Compl. ¶ 59, p. 30. That *criminal* statute defines "cyberstalk[ing]" as a "course of conduct to communicate, or to cause to be communicated, directly or indirectly, words, images, or language by or through the use of electronic mail or electronic communications, directed at or pertaining to a specific person[.]" Fla. Stat. § 784.048(1)(d)(1). Section 784.048 provides a series of potential criminal punishments in the event a person "willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person." Section 784.0485(1) separately creates a cause of action for an injunction "for protection against stalking," including cyberstalking.

Plaintiff Couture readily admits that she had *no* connection or interaction with the TikTok Defendants at all, as she did not maintain a TikTok account. Am. Compl. ¶ 44. Aside from generalized allegations pertaining to all "Defendants," Plaintiffs plead no allegations that the TikTok Defendants ever "communicate[d]" with Plaintiffs or "cause[d, Plaintiffs] to be communicated with" by anyone. And Plaintiffs' allegations that generically lump in the TikTok Defendants with alleged

improper conduct by the other "Defendants" are insufficient to state a claim against the TikTok Defendants.  *Magluta*, 256 F.3d at 1284.

Further, there are no allegations suggesting that the TikTok Defendants "willfully, maliciously, [or] repeatedly" cyberstalked Plaintiffs—no such allegations could be articulated.  To the contrary, the entire Amended Complaint makes clear that the alleged "cyberstalking campaign" was conducted by Defendant Noshirvan and his followers.  Absent allegations demonstrating any course of conduct towards Plaintiffs at all by the TikTok Defendants, Plaintiffs' cyberstalking claim for damages against TTI and BDI should be dismissed.

Lastly, the Florida cyberstalking statutes do *not* provide a cause of action for damages.  The relief provided by the cyberstalking statutes is limited to criminal punishment or civil injunctions.  *See* Fla. Stat. §§ 784.048(1)(d)(1) and 784.0485(1). For this reason alone, Plaintiffs' cyberstalking claim for damages fails.

### B. Plaintiffs do not State a Claim for Civil Conspiracy (Counts II and III) Against the TikTok Defendants.

To state a claim for civil conspiracy under Florida law, Plaintiffs must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."  *George & Co.,*2018 WL 5268754, at \*5 (quoting *United Techs. Corp v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009)).  It is not enough for Plaintiffs to

plead general allegations of conspiracy, but instead they must set forth "clear, positive, and specific allegations of civil conspiracy." *Springboard Media, LLC v. Augusta Hitech Soft Sol., LLC*, No. 22-20191-CIV-GRAHAM, 2022 WL 18465128, at *5 (S.D. Fla. June 14, 2022) (quotations omitted). "[F]acts relating to the overt acts must be pled with specificity", *Larson v. Sch. Bd. of Pinellas County, Fla*., 820 F. Supp. 596, 600 (M.D. Fla. Mar. 31, 1993), and Plaintiffs' allegations must "plausibly suggest an illicit accord," *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

Here, Plaintiffs only conclusorily allege that "Defendants each had knowledge of and participated in campaigns of online and telephonic harassment, cyberstalking, and public defamatory statements" with the intent to damage Plaintiffs and "to interfere with the business relationship between Garramone Plastic Surgery and its patients and clients." Am. Compl. ¶¶ 73, 79, pp. 33, 34. But Plaintiffs include no factual allegations to plausibly suggest that the TikTok Defendants entered into any agreement with Defendant Noshirvan to engage in such improper activity. *See, e.g.*, *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1227 (2023) (rejecting conclusory allegations about platforms' knowledge of specific third-party wrongdoers given "their relationship with their billion-plus other users:  arm's length, passive, and largely indifferent"). To the contrary, the only agreements conceivably alleged between the TikTok Defendants and Defendant Noshirvan are the Community Guidelines and Terms of Service that all users agree to by using TikTok, and they

20

specifically *prohibit* the type of conduct alleged by Plaintiffs.  *See* Community Guidelines (prohibiting "any material which is defamatory of any person, obscene, offensive, pornographic, hateful or inflammatory").  As a result, Plaintiffs' civil conspiracy claims against TTI and BDI should be dismissed.[5]

### C. Plaintiffs do not State a Claim for Interference with Prospective Economic Advantage (Count IV) Against the TikTok Defendants.

To state a claim for tortious interference with a business relationship, Plaintiffs must demonstrate (1) the existence of a business relationship under which Plaintiffs have legal rights; (2) knowledge of that relationship by TTI and BDI; (3) an intentional and unjustified interference with the relationship; and (4) damage to Plaintiffs as a result.  *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).

Under Florida law, "an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if

---

[5] Plaintiffs cannot maintain an independent claim for civil conspiracy if their claims against the TikTok Defendants for cyberstalking and interference with prospective economic advantage fail. *Sun Life Assurance Co. of Canada (U.S.) v. Imperial Holdings, Inc.*, No. 13-80385-Civ-Brannon, 2014 WL 12452450, at *5 (S.D. Fla. June 26, 2014) (citations omitted) ("'Because a civil conspiracy claim is not an independent cause of action in Florida, if a court dismisses the predicate claim, … the court must also dismiss the conspiracy claim.'").  Thus, should the Court dismiss Plaintiffs' cyberstalking and tortious interference claims, dismissal of the civil conspiracy claims is warranted for this separate ground.

the defendant had not interfered." *Springboard Media,* 2022 WL 18465128, at *4 (quotations omitted). As a result, courts have held that a claim for tortious interference with a prospective economic advantage requires a plaintiff to "prove a business relationship with identifiable customers." *Id*. (quotations omitted).

Plaintiffs, however, allege only vague relationships with unknown third parties, and fail to allege interference with a business relationship with any identifiable person. *BPI Sports, LLC v. Labdoor, Inc*., No. 15-62212-CIV-BLOOM, 2016 WL 739652, at *3 (S.D. Fla. Feb. 25, 2016). Moreover, the Amended Complaint is entirely void of any plausible allegation that the TikTok Defendants knew anything of these supposed relationships. Thus, Plaintiffs' claim against the TikTok Defendants for interference with prospective economic advantage should be dismissed.

## III.   Leave to Amend the Complaint a Second Time Should be Denied.

To the extent Plaintiffs seek leave to amend their pleading a *second* time, the request should not be granted. Here, where no amendment could cure the deficiencies in Plaintiffs' Amended Complaint given the clear application of immunity pursuant to Section 230 and Plaintiffs' inability to allege facts sufficient to allege viable claims, amendment would be a futile exercise. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) ("[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.");

*see, e.g.*, *Winter*, 2021 WL 5446733 at \*7 ("Because Plaintiffs' claim against Facebook and TikTok is barred as a matter of law by § 230(c) of the CDA, the Court finds that allowing for its amendment would be futile.").

## IV.   Conclusion.

For all the reasons set forth herein, Plaintiffs' claims against the TikTok Defendants should be dismissed with prejudice.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Defendants certify that Defendants' counsel and Plaintiffs' counsel met and conferred by telephone on July 18, 2023 and Plaintiffs oppose the relief sought in this Motion.

WHEREFORE Defendants respectfully request that the Amended Complaint be dismissed with prejudice.

DATED: July 20, 2023                       Respectfully submitted,

*/s/ Spencer M. Diamond*
SPENCER M. DIAMOND
Florida Bar No. 0091009
KING & SPALDING LLP
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
sdiamond@kslaw.com
*Attorney for Defendants*
*TikTok Inc. and ByteDance Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2023 I electronically filed the foregoing with

the Clerk of Court by using the CM/ECF system, which will send notice of electronic

filing to the following:

Patrick Trainor, Esquire
Law Office of Patrick Trainor, Esq., LLC
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
Telephone: (201) 777-3327
Facsimile: (201) 896-7815
pt@ptesq.com
*Attorney for Plaintiffs*

Robson D.C. Powers, Esquire
BURANDT, ADAMSKI, FEICHTHALER &
  SANCHEZ, PLLC
1714 Cape Coral Parkway East
Cape Coral, Florida 33904
Telephone: (239) 542-4733
Facsimile: (239) 542-9203
robson@capecoralattorney.com
*Attorney for Defendant Danesh Noshirvan*
*a/k/a @thatdaneshguy*

*/s/ Spencer M. Diamond*
Spencer M. Diamond