UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JENNIFER COUTURE and
RALPH GARRAMONE, M.D.,

    Plaintiffs,

v.   Case No.:   2:23-cv-340-SPC-KCD

DANESH NOSHIRVAN, TIKTOK
INC., BYTEDANCE INC., JOHN
DOES 1-100 and ABC
CORPORATIONS 1-100,

    Defendants.
                        /

## OPINION AND ORDER

Before the Court are Defendants TikTok and ByteDance's Motion to Dismiss (Doc. 33) and Defendant Danesh Noshirvan's Motion to Dismiss (Doc. 63). At this stage, the Court treats the factual allegations in the Amended Complaint (Doc. 9) as true and construes them in the light most favorable to Plaintiffs. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). But for the reasons below, the Court grants both motions in part and directs Plaintiffs to file a second-amended complaint.

This case stems from a dozen TikTok videos. TikTok is a video-sharing social-media platform. Like other social-media platforms, TikTok "collect[s] speech created by third parties . . . and then make[s] that speech available to

others, who might be either individuals who have chosen to 'follow' the 'post'-er or members of the general public." *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1203 (11th Cir. 2022). And, like other social-media platforms, TikTok monetizes this speech. Eligible creators with over 100,000 followers (among other requirements) participate in TikTok's monetization features. TikTok users can give creators gifts (redeemable virtual currency) and tips. And invited TikTok creators participate in a monthly live-subscription service. TikTok keeps a percentage of creator revenue from gifts, tips, and subscription fees.

Defendant Noshirvan is a TikTok creator. He makes money through TikTok gifts, tips, and subscription fees. His niche is cancel culture. Noshirvan finds a video of someone messing up. He then edits and reposts the video. In the edited video, Noshirvan overlays himself doxing the person depicted in the video—that is, he provides the person's name, contact information, employer, and other personal information. He targets the person as an antagonist, in need of accountability. Many of his millions of followers then harass the person. People pay Noshirvan for this doxing service.

That's what happened here. Someone recorded Plaintiff Jennifer Couture during an argument. And someone then provided that video to Noshirvan and paid his fee. Noshirvan went to work. He edited the video and reposted his version targeting Couture. Many of his followers berated Couture

by text and phone call. They found her family, the schools her children attended, and employers and contacted them. Over the next several months, Noshirvan posted twelve videos about Couture. He encouraged his followers to report Couture to Southwest Florida Crimestoppers. And he falsely reported to the Florida Department of Children and Families that Couture had harmed her child.

Noshirvan did not target only Couture. He also targeted Garramone Plastic Surgery (her employer and family). Garramone similarly received calls, texts, emails, and negative online reviews. Garramone responded to a negative review by stating that it was not from a former or current patient. Noshirvan then accused Garramone of slander and questioned why Garramone took out a PPP loan. Noshirvan's videos forced Garramone to terminate contracts with surgeons who worried about reputational harm. Patients canceled scheduled procedures.

Couture and Garramone sue Noshirvan, TikTok, and ByteDance (TikTok's parent corporation). They bring claims for cyberstalking, civil conspiracy, and tortious interference. (Doc. 9). TikTok moves to dismiss arguing in part that 47 U.S.C. § 230 provides it immunity from this suit. (Doc. 33). Noshirvan moves to dismiss the amended complaint as a shotgun pleading and for failure to state a claim. (Doc. 63).

First, TikTok's immunity argument.  Section 230 mandates that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c).  It then preempts state law, providing "[n]o cause of action may be brought and no liability may be imposed under any state or local law that is inconsistent with this section."  § 230(e)(3). Broken down into elements, Section 230 immunity applies if (1) TikTok is a provider of an "interactive computer service," (2) the claim is based on "information provided by another information content provider," and (3) the claims treat TikTok "as the publisher or speaker" of that information.  § 230(c). The parties agree TikTok is a provider of an interactive computer service but disagree on the rest.

TikTok argues that Plaintiffs' claims are based on information provided by another information content provider—Noshirvan's videos.  And it argues that the claims treat TikTok as the publisher of those videos.  Plaintiffs respond that TikTok is not merely a passive publisher of Noshirvan's videos because of TikTok's unique monetization features and knowledge of Noshirvan.  The Court finds Plaintiffs' arguments unpersuasive.

To start, Plaintiffs do not directly challenge TikTok's monetization features.  *Cf. Gonzalez v. Google LLC*, 2 F.4th 871, 898 (9th Cir. 2021), *vacated*

4

*on other grounds*, 598 U.S. 617 (2023) (holding Section 230 does not bar claims challenging the legality of revenue sharing).

Nor do TikTok's monetization features transform it into a developer rather than publisher of Noshirvan's content. Viewing the amended complaint in the light most favorable to Plaintiffs, they allege (at best) that TikTok promotes Noshirvan's videos generally. Afterall, Noshirvan is an eligible creator, and TikTok makes money from his videos. But Plaintiffs cannot show that TikTok "contribut[ed] materially to the alleged illegality" of the videos at issue here. *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008). TikTok's monetization features turn on the popularity of a video, not its content. And "providing *neutral* tools to carry out what may be unlawful or illicit [content] does not amount to 'development'" of that content. *Id.* at 1169.

TikTok's knowledge of Noshirvan does not change this analysis. Plaintiffs do not claim that TikTok solicited or induced Noshirvan to target them. In fact, their allegations suggest the opposite. TikTok's Community Guidelines prohibit harassing, humiliating, threatening, and doxing. (Doc. 9 ¶ 15). And TikTok once terminated Noshirvan's account in response to an unrelated video, although it ultimately reinstated his account. (Doc. 9 ¶ ¶ 56, 57).

At bottom, TikTok's role in the alleged wrongdoing was publishing Noshirvan's content. So Section 230 bars Plaintiffs' claims. *See McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *3 (11th Cir. June 12, 2023) ("Lawsuits seeking to hold a service provider like Amazon liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred.") (cleaned up). The Court dismisses with prejudice the claims against TikTok and ByteDance.

This leaves the claims against Noshirvan.[1] Noshirvan argues the Court must dismiss the cyberstalking claim because Florida Statute § 784.048 is a criminal statute that does not create a civil cause of action for damages. The text of § 784.048 confirms this reading. *See* Fla. Stat. § 784.048(2)-(9) (describing a "misdemeanor of the first degree," "felony of the third degree," when a "law enforcement officer may arrest" a violator, and "sentencing" to "state prison or county jail."). And Courts agree. *See Harvick v. Oak Hammock Pres. Cmty. Owners Ass'n Inc.*, No. 6:14-CV-937-ORL-40, 2015 WL 667984, at *5 (M.D. Fla. Feb. 17, 2015) ("there is no private right of action to enforce this

---

[1] Plaintiffs also name "John Does 1-100" and "ABC Corporations" as fictitious defendants. But federal courts rarely permit the use of fictitious defendants. *See* Fed. R. Civ. P. 10(a); *see also Entreprenuer Media, Inc. v. Rugged Entreprenuer, LLC*, No. 3:21-cv-784-MMH-PDB, 2022 WL 1665400, at *1 (M.D. Fla. May 25, 2022) (citing *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)). And Plaintiffs do not mention the fictitious defendants anywhere in the complaint. Accordingly, Plaintiffs must omit those defendants in their second-amended complaint. *See* Fed. R. Civ. P. 21 ("[O]n its own, the court may at any time, on just terms, add or drop a party.").

statute"); *Kamau v. Slate*, No. 4:11CV522-RH/CAS, 2012 WL 5390001, at *8 (N.D. Fla. Oct. 1, 2012*), report and recommendation adopted*, No. 4:11CV522-RH/CAS, 2012 WL 5389836 (N.D. Fla. Nov. 5, 2012) ("§ 748.048 is a criminal statute and does not contain any provisions for a civil cause of action."). The Court dismisses the cyberstalking claim (Count I) with prejudice.

Noshirvan argues the Court should dismiss Garramone's tortious interference claim as well. The elements of tortious interference are "(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (citation omitted). A plaintiff may allege "tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." *Id.* at 815.

Noshirvan argues Garramone's allegations are insufficient because it (1) alleges interference with the community at large, (2) fails to allege Noshirvan knew of Garramone's business relationships, and (3) fails to allege Noshirvan actually interfered with those relationships.

Garramone does not allege interference with a relationship to the community at large. Rather, Garramone alleges that, due to Noshirvan and

7

his followers' harassment and false business reviews, it was "forced to prematurely terminate contracts with surgeons, who became fearful of reputational harm by being swept into [Noshirvan's] net, and many patients terminated scheduled procedure and ended their relationship." (Doc. 9 ¶ 52). This allegation sufficiently identifies existing business relationships. *See Deligdish v. Bender*, No. 6:23-CV-417-DCI, 2023 WL 5016547, at *9 (M.D. Fla. Aug. 7, 2023) (holding allegations of interference with identifiable business relationships, although not specifically named, are sufficient). This allegation, along with other allegations in the complaint, also suffices to allege Noshirvan actually interfered with Garramone's business relationships.

But Garramone includes only conclusory allegations about Noshirvan's knowledge of the business relationships. (Doc. 9 ¶¶ 86-89). Plaintiffs claim to have facts to support the knowledge element and request that the Court take judicial notice. (Doc. 65 at 14-15). The Court declines the invitation to take judicial notice of that information and dismisses the tortious interference claim (Count IV) without prejudice.

Noshirvan also seeks dismissal of both Garramone and Couture's conspiracy claims. To state a claim for civil conspiracy, Plaintiffs must allege "(1) an agreement between two or more parties; (2) to do an unlawful act or a lawful act by unlawful means; (3) the execution of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff[s] as a result of said acts."

8

*Logan v. Morgan, Lewis & Bockius LLP*, 350 So. 3d 404, 412 (Fla. Dist. Ct. App. 2022) (citation omitted). Generally, "there is no freestanding cause of action in Florida for civil conspiracy." *Id.* (cleaned up). In other words, to properly plead civil conspiracy a plaintiff must "identify an actionable underlying tort or wrong." *Id.*

Garramone expressly references tortious interference as an underlying tort. (Doc. 9 ¶ 79). And, aside from the deficiencies in Garramone's tortious interference claim outlined above, Garramone's conspiracy claim (Count III) is sufficient. Garramone alleges Noshirvan and his followers agreed to engage in tortious interference and committed overt acts in furtherance of the conspiracy. For example, the amended complaint includes a screenshot of a conversation between Noshirvan and one of his followers. The follower asks, "so we are now working on reviews for his business right?" and Noshirvan responds "Yes." (Doc. 9 at 23). The amended complaint also includes screenshots of several fake reviews posted by Noshirvan's followers. (Doc. 9 at 24). These allegations are enough at this stage.

Garramone alludes to another potential underlying tort. But to the degree Plaintiff Garramone wishes to rely on "publication of defamatory statements" (Doc. 9 ¶¶ 79-82) to support its conspiracy claim, Garramone must allege more. *See Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1027 (Fla. Dist. Ct. App. 1981) ("To support a cause of action for conspiracy to

9

defame, it is therefore incumbent upon a plaintiff to properly allege those elements which would establish a defamation[.]"). Accordingly, the Court dismisses without prejudice Plaintiff Garramone's conspiracy claim (Count III).

Plaintiff Couture's conspiracy claim (Count II) needs more work. She does not sufficiently allege an underlying tort. Plaintiffs argue that Florida's "economic boycott exception" relieves them of the underlying-tort requirement. Under that exception, "if the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort." *Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547, 550 (Fla. 1977). Whether this narrow exception applies here is unclear. And Plaintiffs have not sufficiently alleged this exception in the amended complaint.

Moreover, the Court should not address the exception now. While Plaintiffs' cyberstalking claim fails, Couture may be able to sufficiently allege other underlying torts. For instance, she alleges that Noshirvan participated in campaigns to "damage her business and professional reputation, and to tortiously interfere with the business relationship between Jennifer Couture and her clients." (Doc. 9 ¶ 73). The amended complaint does not sufficiently develop how damage to Couture's reputation, perhaps a reference to defamation, or tortious interference serve as underlying torts supporting her

conspiracy claim. Nor does Couture sufficiently allege agreement between Noshirvan and his followers or which overt acts were committed in furtherance of the conspiracy. The Court dismisses without prejudice Plaintiff Couture's conspiracy claim (Count II).

Finally, Plaintiffs must clean up the remaining portions of their complaint. Plaintiffs misnumbered several paragraphs (after paragraph 59, the complaint erroneously begins counting at 47). (Doc. 9 at 24). Plaintiffs must correct this error. The complaint is also a shotgun pleading in that each successive count incorporates all preceding allegations. *See Keith v. DeKalb Cnty., Georgia*, 749 F.3d 1034, 1045 n. 39 (11th Cir. 2014) ("The complaint, through its incorporation into successive counts all preceding allegations and counts, is a quintessential 'shotgun' pleading—the sort of pleading we have been roundly condemning for 30 years."). Plaintiffs must omit information supporting only the dismissed claims and reorganize their complaint to direct Noshirvan to the factual allegations relevant to each surviving claim.

Accordingly, it is now

**ORDERED:**

1. TikTok's Motion to Dismiss (Doc. 33) is **GRANTED**. The Court **DISMISSES with prejudice** the claims against Defendants TikTok and ByteDance.

2. Noshirvan's Motion to Dismiss (Doc. 63) is **GRANTED in part**. The Court **DISMISSES with prejudice** the cyberstalking claim (Count I) and **DISMISSES without prejudice** the civil conspiracy claims (Counts II and II) and the tortious interference claim (Count IV).

3. Plaintiffs must remove the fictitious defendants as parties.

4. Plaintiffs must **FILE** a second-amended complaint consistent with this order **on or before December 15, 2023. Failure to file a second-amended complaint will lead the Court to dismiss and close the case without further notice.**

**DONE** and **ORDERED** in Fort Myers, Florida on November 30, 2023.

*SHERI POLSTER CHAPPELL*
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record