## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| JENNIFER COUTURE; RALPH GARRAMONE M.D. P.A. d/b/a GARRAMONE PLASTIC SURGERY, | Civil Case No.: 2:23-cv-00340 |
| Plaintiff, | HON. Sheri Polster Chappell, U.S.D.J. |
| vs. | |
| DANESH NOSHIRVAN, et al., | |
| Defendants. | |

## MOTION FOR AN ORDER COMPELLING DEFENDANT TO PRODUCE DISCOVERY MATERIALS IN RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiffs Jennifer Couture and Ralph Garramone, M.D. P.A. d/b/a Garramone Plastic Surgery (hereinafter collectively referred to as "Plaintiff") by and through the undersigned counsel, respectfully move this Court for an Order compelling defendant Danesh Noshirvan ("Defendant") to produce discovery materials in response to Plaintiff's First Request for Production of Documents. *See* ECF Nos. 78 and 88.

1.     On or about January 26, 2022, Defendant was paid a fee to dox and harass Plaintiff. Upon receipt of payment of the fee, Defendant created a series of TikTok videos posted to his TikTok account "@thatdaneshguy" to lead and participate in a campaign of online and telephonic harassment of Plaintiff.

1

Defendant used his TikTok account to incite the small cult-like subset of his followers who joined his campaign against Plaintiff.  As a result, Plaintiff was deluged with threatening and harassing communications telephonically and online. By leading and participating in the campaign of online and telephonic harassment against Plaintiff, Defendant has generated significant revenue from his cult-like followers directly through his TikTok account in the form of TikTok coins, tips, gifts, and payments to his CashApp $cashtag, which was directly linked from his TikTok Account.  Defendant also generated revenue from subscribers to his Patreon account by reposting his TikTok videos to Instagram, Facebook, Twitter, YouTube, and other social media platforms.

2.      Plaintiff requested discovery of relevant materials concerning Defendant's social media activity, including the identity of Defendant's payors, payments, and redemption of TikTok coins, tips, and gifts, persons Defendant communicated with, comments, and the fictitious native content articles that Defendant paid to publish on online news aggregators, which materials are highly relevant to the subject matter of this action.

3.      On October 12, 2023, Plaintiff scheduled an electronically stored information ("ESI") conference with counsel for all parties to disclose and identify the parties' ESI formats, to select the technology assisted review ("TAR") learning method, ESI search algorithms and method of ESI production.  During the ESI

Conference, Defendant either refused, or was unable to produce information concerning ESI formats, methods of ESI production, and refused to select the search algorithm or TAR learning method.

4.     On October 16, 2023, Plaintiff served all counsel a draft ESI protocol modeled on the Standing Order for ESI Discovery that is adopted by Florida Courts and the Civil Trial Lawyers Section of the Florida Bar.  Plaintiff requested that defendant submit edits and/or objections to the draft ESI Protocol by October 23, 2023.  Neither defendant responded or objected to the draft ESI Protocol.

5.     On October 16, 2023, in accordance with *Federal Rule of Civil Procedure 34*, Plaintiff served Defendant its First Requests for Production of Documents (the "Requests") returnable November 15, 2023.

6.     On November 13, 2023, Defendant moved the Court for a 60-day extension in time to respond to Plaintiff's Requests.  ECF No. 73.  On November 15, 2023, the Court extended the deadline for Defendant's responses to January 15, 2023.  ECF No. 79.  On January 10, 2024, Defendant filed a second request for an extension in time to respond.  ECF No. 87.  On January 12, 2024, the Court denied Defendant's motion, but granted Defendant a three-day extension, which made his responses due January 18, 2024.  ECF No. 88.

7.     On January 18, 2024, Defendant produced written responses to Plaintiff's Requests.  In his written responses, Defendant refused to produce

relevant information based on the following standing objections: (1) Defendant's belief that Plaintiff has not proven he tortiously interfered with their business or committed any other tort; (2) the parties did not agree on an ESI Protocol; (3) requests are overbroad in time, unduly burdensome, and outside the scope; and (4) seeks irrelevant information, disclosure of private information, and improper financial discovery.  On January 24, 2024, Plaintiff received a thumb drive containing Defendant's limited discovery production.

8.    Defendant's opinion concerning what Plaintiff has proven as stated in his first standing objection is not relevant to his obligation of full disclosure and does not relieve of him of this duty.  Defendant's second standing objection is the product of his refusal to participate in the ESI conference, and his subsequent failure to respond or object to Plaintiff's draft ESI protocol.  Third, Plaintiff's Requests are limited to the period of time from January 26, 2022, the date the cause of action accrued, through the present.

9.    Discovery is intended to be accomplished voluntarily and the parties should affirmatively disclose relevant information without the necessity of court orders compelling disclosure.  This is because lawyers are expected to act in good faith, follow the rules, and do their duty as officers of the court seeking the truth. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1539 (11th Cir. 1993).

10.     *Federal Rules of Civil Procedure Rules 26* and *34* require full disclosure and place the burden of production on the producing party.  *Rule 26(b)(1)* provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant" to "any party's claim or defense."  Under *Rule 34(a)(1)(A)* a party can request that any party produce, or permit the requesting party "to inspect, copy, test, or sample…any designated documents or electronically stored information, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations," that is in the receiving "party's possession, custody, or control."

11.     The "Supreme Court has stressed on multiple occasions the need to construe the Rules liberally to allow for robust discovery."  *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276-77 (11th Cir. 2021) (*citing Hickman v. Taylor*, 329 U.S. 495, 501 (1947) (the purpose of discovery is "for the parties to obtain the fullest possible knowledge of the issues and facts before trial").

A. **PLAINTIFF'S REQUESTS AND DEFENDANT'S OBJECTIONS**

12.     Defendant has withheld discoverable information, but has not produced a privilege log.  When a party withholds discoverable information they must produce a privilege log that identifies the documents withheld and the privilege invoked.  The privilege log must for "each document [] set forth specific facts that, if credited, would suffice to establish each element of the privilege or

immunity that is claimed," Defendant's burden to prove withheld materials are privileged "cannot be discharged by mere conclusory or ipse dixit assertions." *Young v. Hartford Ins. Co. of Midwest*, 2020 U.S. Dist. LEXIS 99428 *13 (M.D. Fla. May 7, 2020).

13.    Plaintiff's Request Number 1 requested production of "all videos" Defendant posted on "TikTok and all other social media platforms from January 26, 2022, through the present," to include production of all comments posted to each video, including private comments, and name of the account who posted the comment.  Defendant objected to Request Number 1 on the basis that Plaintiff is "harassing" him, because his videos are posted online, therefore, Plaintiff can retrieve the videos themselves.  Further, Defendant objected that the request was irrelevant, not reasonably calculated to lead to admissible evidence, and unduly burdensome.  Defendant limited his obligation to produce by stating "will re-produce any video broadcast discussing" Plaintiff and "other video broadcast."

14.    Defendant has not produced videos he posted to his other social medial accounts, such as YouTube and Patreon as requested by Request Number 1.

15.    Plaintiff's Request Number 2 is similar to Number 1, except that it is limited to production of videos Defendant posted to TikTok since January 26, 2022.  Defendant objected on the grounds that this request was "overly broad in time and scope, harassing, unduly burdensome, publicly available, and not

reasonably calculated to lead to admissible evidence," and further that this might lead to the disclosure of private information and violate privacy rights of third parties."

16.     Defendant's TikTok videos are the primary medium he used to target Plaintiff and where he communicates with followers who participate in his campaigns.  This information is highly relevant to this action.  Defendant has not produced all his TikTok videos and comments posted to each video, nor has he identified the Creators who posted comments, and has not produced his "TikTok Live" videos with comments.  Defendant's privacy concerns of third-persons are misplaced, social media is a public forum where commenters have no expectation of privacy.

17.     Plaintiff's Request Number 3 requests the identity of TikTok creators who posted comments to Defendant's videos about Plaintiff.  Defendant stated that he will determine whether comments are relevant to Plaintiff's claims, and to the "disclosure of private personal information" because it may violate the commenters privacy rights.  Social media is a public forum where commentors have no expectation of privacy.  Defendant has not produced a privilege log or disclosed his method of determining relevancy.

18.     Plaintiff's Request Number 4 requested the fictitious news articles "native content" Defendant paid to publish, which intensified and perpetuated the

threats and harassment Plaintiff received.  Defendant objected on the grounds that this is request is overly broad, duplicative of open-source information, Plaintiff's claims are not reasonably calculated to lead to admissible evidence.  The native content is highly relevant, but Defendant has not produced the native content, nor receipts or publication confirmation that identifies where he paid to publish.

19.     Further, in response to Request Number 4 and throughout, Defendant asserts an improper evidentiary admissibility standard as his basis to withhold requested information.  However, requested "information need not be admissible to be discoverable." *Fed. R. Civ. P. 26(b)(1)*.  Next, Defendant objected on the basis that it sought improper financial discovery, because "how much money Noshirvan makes is irrelevant to, and outside the scope of, the pleadings."  Defendant's tip information is publicly viewable in TikTok.

20.     Request Number 4 has nothing to do with how much money Defendant makes.  The amount of the fee Defendant received and the identity of the person who paid Defendant to commence a campaign of online and telephonic harassment and threats against Plaintiff is highly relevant, as are the identities of the participants who paid Defendant TikTok tips, gifts, and $cashtag payments during his campaign of online and telephonic threats and harassment against Plaintiff.  Defendant withheld information requested by Request Number 4, but has not produced a privilege log.

21.     Request Number 5 requested all payments Defendant received as tips, gifts, cash, Live subscription fees through TikTok from January 26, 2022, through the present" and the payor's identifying information, i.e., first name, last name, his/her Creator/user name, account identification number, email address, and phone number (*e.g.*, mobile, VOIP).  Defendant objected to Request Number 5 on relevance, evidentiary admissibility, financial discovery, and that it requested "disclosure of trade secret information, i.e., processing payments, token exchanges, etc.," which is apparently owned by TikTok and online payment services, and "disclosure of private or confidential information concerning a third party." Further, Defendant is improperly objecting on behalf of a third-party.

22.     Defendant can easily produce the information in Request Number 5 and all other requests for payments or cash redemptions by producing the IRS Form 1099-NEC and/or 1099-MISC he is issued by TikTok and others who paid him more than $600.00 in 2022 and 2023.  Defendant withheld information requested by Request Number 5, but has not produced a privilege log.

23.     Request Number 6 requested "Receipts for all payments paid to Defendant through all monetization and crowdfunding services from January 26, 2022, through the present," and the payor's identifying information.  Defendant objected on relevance, evidentiary admissibility, that it improperly sought financial

discovery, and required disclosure of trade secret information.  Defendant withheld information requested by Request Number 6, but has not produced a privilege log.

24.     The payment information requested in Requests Numbers 4, 5, and 6, the identity of the payors, and the amounts of the payments he received while harassing and threatening Plaintiff are highly relevant to Plaintiff's claims and Defendant's objection on behalf of a third-party is improper.

25.     Request Number 7 requested "receipts for all redemptions Defendant made through the TikTok exchange from January 26, 2022, through the present." Defendant objected on the grounds it was improper financial discovery, not admissible, and "how much money Noshirvan makes is outside the scope of the pleadings, and irrelevant to the claims made therein."  Defendant's objection on the grounds that discovery is not admissible is improper, admissibility is irrelevant.

26.     Here, Defendant redeems TikTok coins, tips, and gifts, he receives from his videos, and TikTok Live Events for real cash.  The identity of the payors, sums paid, and date of payments is relevant to Plaintiff's claims.  Defendant withheld information requested by Request Number 7, but has not produced a privilege log.

27.     Request Number 14 requested all documents concerning enforcement actions TikTok has levied against @thatdaneshguy.  Defendant objected on the grounds it was overbroad in time and scope, harassing, irrelevant, outside scope of

pleadings, and not likely to lead to admissible evidence.  Defendant's objection on the grounds that discovery is not admissible is improper, admissibility is irrelevant. Defendant primarily utilized TikTok account @thatdaneshguy to lead and participate in a campaign of online and telephonic harassment of Plaintiff. Whether an enforcement action was levied against @thatdaneshguy for similar conduct is highly relevant to Plaintiff's claims.  Defendant withheld information requested by Request Number 14, but has not produced a privilege log

28.    Request Number 15 requested all documents concerning reinstatement of @thatdaneshguy subsequent to an enforcement action.  Whether @thatdaneshguy was reinstated following an enforcement action for similar conduct is highly relevant to Plaintiff's claims.  Defendant withheld information requested by Request Number 15, but has not produced a privilege log.

29.    Request Number 16 requested the text of all communications between Defendant and TikTok moderators from January 26, 2022, through the present. Defendant objected by invoking an improper evidentiary standard, and that the request was overbroad in time and scope, vague, harassing, relevance, outside the scope of the pleadings.

30.    Request Number 16 begins with the date the cause of action accrued through the present.  Whether Defendant communicated with TikTok moderators concerning his conduct or content is relevant to Plaintiff's claim.  Defendant

withheld information requested by Request Number 16, but has not produced a privilege log.

31.     Request Number 17 requested the text of all communications between Defendant and any non-moderator TikTok employees, from January 26, 2022, through the present.  Defendant objected by invoking an improper evidentiary standard, in addition to objecting that it was overbroad in time and scope, vague, harassing, relevance, outside the scope of the pleadings, and not reasonably calculated to lead to admissible evidence.

32.     Request Number 17 begins with the date of the cause of action accrued through the present.  Whether Defendant communicated with TikTok moderators concerning his conduct or content is highly relevant to Plaintiff's claim.  Defendant withheld information requested by Request Number 17, but has not produced a privilege log.

33.     As it relates to Request Numbers 24 & 25 below since this complaint was filed in May 2023, Defendant has tried to derail this action by publishing numerous TikTok videos wherein he demanded other persons with large social media followings to use their platform to help him derail this action.  Moreover, during the same time, Defendant has posted, or had posted false and salacious allegations about Plaintiff and Plaintiff's counsel on Instagram account https://www.instagram.com/bullyville and websites https://www.bullyville.com

*aka* https://jamesmcgibney.com/isanyoneup.  In his videos Defendant incited his followers to call Plaintiff's counsel's office to demand that I withdraw this complaint, and they have called.

34.     Request Number 24 requested the "text of all communications, including, but not limited to, email messages, chats, text messages, phone conversations, encrypted messaging applications, social media direct messages and all other forms of communication between Defendant and James McGibney, who is affiliated with Instagram account https://www.instagram.com/bullyville and websites https://www.bullyville.com *aka* https://jamesmcgibney.com/isanyoneup in some manner.  For each communication include the method of communication, *e.g.*, email address, phone number (*e.g.*, mobile, VOIP), social media application(s) message, direct message.

35.     Defendant objected to Request Number 24 by claiming that James McGibney is a minister, and that his communications with James McGibney are spiritual counsel and advice and protected by the clergy-penitent privilege. Further, Defendant objected on the grounds that his response to this request requires "disclosing discussions containing trade secrets" that he had James McGibney.  Defendant withheld 137 written communications he had with James McGibney, but he has not produced a privilege log.

36.     Plaintiff Request Number 25 requested the text of all communications, including, but not limited to, email messages, chats, text messages, phone conversations, encrypted messaging applications, social media direct messages between Defendant and Instagram account "@bullyville" found at https://www.instagram.com/bullyville.  Defendant objected under the clergy-penitent privilege and on the grounds that his response to this request requires "disclosing discussions containing trade secrets" that he had James McGibney. Defendant withheld 137 written communications he had with James McGibney, but he has not produced a privilege log

37.     In order to receive the clergy-penitent privilege the party must satisfy four elements: (1) communication must be to a member of the clergy as defined in ¶ 90.505, Fla. Stat. (2023) (A "member of the clergy" is a priest, rabbi, practitioner of Christian Science, or minister of any religious organization or denomination usually referred to as a church, or an individual reasonably believed so to be by the person consulting him or her); (2) confider must make communication for the purpose of seeking spiritual counseling and advice; (3) the clergy must receive the communication on the usual course of his or her practice or discipline; and (4) the communication must be private. *Nussbaumer v. State*, 882 So. 2d 1067, 1075 (Fla. 2d DCA 2004).

38.    The clergy-penitent privilege does not apply to Request Numbers 24 and 25, or any of the 137 written communications Defendant had with James McGibney/Bullyville.  James McGibney is not a minister who is entitled to clergy-penitent privilege, he is a marriage officiant with the Universal Life Church, an online church that sells marriage officiant ordainments online.  The clergy-penitent privilege does not apply to communications between public commercially available social media accounts and websites Instagram account "@bullyville" found at https://www.instagram.com/bullyville, or https://www.bullyville.com *aka* https://jamesmcgibney.com/isanyoneup.  Further, Defendant's objections that his discussions with McGibney concerned alleged "trade secrets," contradict his claim that his discussions with McGibney are not spiritual counsel and advice, and are not the type of communications protected by the clergy-penitent privilege.

39.    Lastly, as further evidence that Defendant's objections to Request Numbers 24 and 25 are frivolous, on January 15, 2024, I received an email from *****@bullyville.com purporting to be from James McGibney, who demanded that I withdraw my Response in Opposition to Defendant's Second Request for a Motion to Extend Time to Respond (ECF No. 89).  *See* Exhibit A.  The following day, January 16, 2024, a courier hand delivered to my office a letter dated January 15, 2024, that did not have an envelope, bearing what appears to be the Bullyville letterhead.  The text of the letter is identical to the email that I received and repeats

15

the demand that I withdraw my filing at ECF No. 89.  *See* Exhibit B.  The email and letter do not state that McGibney is Defendant's spiritual adviser, and/or that Defendant and McGibney/Bullyville have a business relationship that implicates trade secrets.  Rather, the email and letter state that the Bullyville Instagram and websites only "repost[] videos that are already in the public domain," but does not acknowledge the 137 communications between Defendant and McGibney. Information in the public domain is not protected by the clergy-penitent privilege.

## B. DEFENDANT REFUSES TO PRODUCE READILY AVAILABLE BUSINESS RECORDS

40.     In addition to his standing objections, Defendant objected to Request Numbers 8, 9 10, 11, 12, 13, 20, 21, 22, 23, 27, 28, and 29 on the grounds that these requests require that he produce nonexistent documents by making a list that he does not have in his possession.

41.     Defendant can comply with these requests by producing business records that are already in his possession, and/or that he has ready access to directly through his account profiles in TikTok and other social media platforms. Defendant refuses to produce the following relevant information:

a.     Request Number 8 requested a list of Defendant's TikTok followers. This request does not require Defendant to create any documents.  Although Defendant is an expert level user of the TikTok app, anyone can download his or

her TikTok follower data directly from the TikTok Creator Portal[1] under Followers and once the data is downloaded it can be exported and produced.

b.   Request Number 9 requested a list of TikTok followers that Defendant purchased.  No new document is required.  Since Defendant did not deny that he purchased TikTok followers, he can follow the same steps as in Request Number 8 and once Defendant downloads his follower data he can identify which followers he purchased.

c.   Request Number 10 requested a list of Creators who tagged Defendant in TikTok videos.  This request does not require Defendant to create a new document.  The TikTok Creator Portal has a Creator's inbox which has separate tabs labeled "all activity," "likes," "comments," "mentions and tags," and "followers."  TikTok tracks every time a Creator is mentioned or "tagged" and every time Defendant is tagged in another video TikTok sends a notification to Defendant's inbox's "mentioned and tagged" tab.  Defendant can download his TikTok data from his Creator Portal and export the TikTok data once downloaded.

d.   Request Number 12 requested a list of the Discord channels Defendant posted comments on.  This request does not require Defendant to create

---

[1] TikTok Creator Portal, Understanding Your Analytics, Overview, Content, Followers, https://www.tiktok.com/creators/creator-portal/en-us/tiktok-content-strategy/understanding-your-analytics/ (last viewed Jan. 26, 2024)

a new document.  Defendant can reproduce the notifications he received from Discord for each Discord channel he joined or created.

      e.  Request Number 13 requested a list of enforcement actions, e.g., suspensions, bans, community guidelines violations that TikTok levied against @thatdaneshguy.  This request does not require Defendant to create a new document.  TikTok sends notification to a Creator's Inbox every time an enforcement action is taken.  Defendant can produce the notifications that he received in his TikTok inbox concerning the enforcement actions against him.

      f.  Request Number 20 requested a list of all TikTok accounts that Defendant has created, including each account's Creator name, account identification number, email address, and phone number.  This request does not require Defendant to create a new document.  To comply, Defendant can produce videos he posted with his alias TikTok accounts and on other social media accounts.  These account's names' are visible on the videos or content Defendant posted with those accounts.

      g.  Request Number 21 requested a list of all TikTok accounts that Defendant has used or uses to post content to TikTok, including each account Creator name, account identification number, email address, and phone number (*e.g.*, mobile, VOIP).  This request does not require Defendant to create a new document.  To comply, Defendant can produce videos he posted with alias

accounts on TikTok and other social media accounts.  These account's names' are visible on the videos he posted.

h.   Request Number 22 requested a list of all accounts on all social media platforms other than TikTok that Defendant has created, including each account's username, account identification number, email address, and phone number (*e.g.*, mobile, VOIP).  This request does not require Defendant to create a new document.  To comply, Defendant can produce videos he posted with alias accounts on TikTok and other social media accounts.  These account's names' are visible on the videos or other content posted on these accounts.

i.   Request Number 23 requested a list of all accounts on all social media platforms other than TikTok that Defendant has used or uses to post content, including each account's username, account identification number, email address, and phone number (*e.g.*, mobile, VOIP).  This request does not require Defendant to create a new document.  Defendant can produce the videos, messages, Tweets, or other content that he posted on these other social media platforms.  These account's names' are visible on the videos or other content posted on these accounts.

j.   Request Number 27 requested a list of all subscribers to all of Defendant's Patreon accounts with identifying information.  This request does not require Defendant to create a new document.  First, Defendant downloads this

information every month when he sends acknowledgements/thank you notes to his monthly Patreon subscribers.  Patreon enables its users like Defendant to export customer details and transaction information, which Patreon refers to as "sales." From Defendant's Patreon account profile, he accesses "Audience" then the tab marked "sales" and then "download CSV button" to download his sales, transactions, and current and past Patreon subscribers.  Moreover, Patreon provides Defendant this data with his IRS Form 1099, which he must receive by January 31, 2024.

k.  Request Number 28 requested a list of all persons who donated to Defendant's GoFundMe account beginning May 25, 2023, including each payor's identifying information.  This request requires Defendant to reproduce his GoFundMe donor data that he has access to from his profile.  Moreover, donor information will be included in the required tax records GoFundMe must produce related to Defendant's GoFundMe drives.

l.  Request Number 29 requested a list of all persons who made a payment to Defendant through all other monetization and crowdfunding services, such as Buymeacoffee, Venmo, CashApp, PayPal, since January 26, 2022, with each payor's identifying information.  Defendant can access his payment records through his profile in each of these mobile payment services.  Moreover, each

mobile payment service provides earnings information in the tax disclosures they are required to produce.

WHEREFORE, Plaintiff respectfully requests that the Court grant this motion and enter an Order compelling Defendant to produce the documents, things, and information described above and as requested in Plaintiff First Request to Produce, for good cause shown.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for Plaintiff certifies that on January 18, 2024, I requested a meet and confer with counsel for Defendant Danesh Noshirvan to discuss his written response to Plaintiff First Request for Production, but he advised he was not available to meet and confer until February 9, 2024.  On January 26, 2024, counsel for Plaintiff called Defendant's counsel on the telephone in attempt to meet and confer, counsel for Defendant stated he has no position on the motion and ended the phone call by hanging up.


January 26, 2024            _____
                            Patrick Trainor, Esq.
                            LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC
                            19 Union Avenue, Suite 201
                            Rutherford, New Jersey 07070
                            P: (201) 777-3327
                            F: (201) 896-7815
                            pt@ptesq.com
                            *Attorney for Plaintiffs*

21

# EXHIBIT A

| | |
|---|---|
| **From:** | James McGibney |
| **To:** | Patrick Trainor, Esq. |
| **Subject:** | Civil Case No.: 2:23-cv-00340 |
| **Date:** | Monday, January 15, 2024 10:06:57 AM |

Hello Mr. Trainor,

I hope this email finds you well. I was made aware of your docket filing 89, and it appears that you are requesting discovery about my entities based upon gross misrepresentation of fact. You allege that Noshirvan publishes, uploads, downloads, and reposts videos to various social media accounts. You have erroneously included my website and instagram accounts: https://www.bullyville.com aka https://jamesmcgibney.com/isanyoneup and https://www.instagram.com/bullyville.

Noshirvan has never uploaded any of his videos to https://www.instagram.com/bullyville or https://www.bullyville.com aka https://jamesmcgibney.com/isanyoneup, nor is he an administrator for any of those entities. Furthermore, none of his videos have ever appeared on https://www.Bullyville.com, nor https://www.Jamesmcgibney.com. Bullyville only reposts videos that are already in the public domain.

Secondly, you seem to imply that "Bullyville's" reposts of public information caused the threats and harassment" to the Plaintiffs and that there is a connection between the parties. I am unaware of any such connection, threat, or harassment. Furthermore, neither I nor my entities have control of what other people say.

I am respectfully requesting that you retract the gross misrepresentation of facts within filing docket #89. As an officer of the court, it is incumbent upon you to be candid with the tribunal. Failure to remedy these numerous misrepresentations will require me to hire an attorney to apprise the tribunal of your known misrepresentations. If I am forced to seek counsel to explain your fraud upon the court, I will request that the court award me all attorney fees incurred and that you be sanctioned.

# EXHIBIT B



January 15, 2024

From: James McGibney

To: Attorney Patrick Trainor

SUBJ: Civil Case No.: 2:23-cv-00340

Hello Mr. Trainor,

I hope this email finds you well. I was made aware of your docket filing 89, and it appears that you are requesting discovery about my entities based upon gross misrepresentation of fact. You allege that Noshirvan publishes, uploads, downloads, and reposts videos to various social media accounts. You have erroneously included my website and Instagram accounts: https://www.bullyville.com aka https://jamesmcgibney.com/isanyoneup and https://www.instagram.com/bullyville.

Noshirvan has never uploaded any of his videos to https://www.instagram.com/bullyville or https://www.bullyville.com aka https://jamesmcgibney.com/isanyoneup, nor is he an administrator for any of those entities. Furthermore, none of his videos have ever appeared on https://www.Bullyville.com, nor https://www.Jamesmcgibney.com. Bullyville only reposts videos that are already in the public domain.

Secondly, you seem to imply that "Bullyville's" reposts of public information caused the threats and harassment" to the Plaintiffs and that there is a connection between the parties. I am unaware of any such connection, threat, or harassment. Furthermore, neither I nor my entities have control of what other people say.

I am respectfully requesting that you retract the gross misrepresentation of facts within filing docket #89. As an officer of the court, it is incumbent upon you to be candid with the tribunal. Failure to remedy these numerous misrepresentations will require me to hire an attorney to apprise the tribunal of your known misrepresentations. If I am forced to seek counsel to explain your fraud upon the court, I will request that the court award me all attorney fees incurred and that you be sanctioned.

# James McGibney