IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JENNIFER COUTURE; RALPH
GARRAMONE M.D. P.A. d/b/a
GARRAMONE PLASTIC SURGERY,   Case No. 2:23-cv-00340-SPC-KCD

Plaintiffs,

vs.

DANESH NOSHIRVAN a/k/a
@THATDANESHGUY

Defendant.
_____/

**DEFENDANT, DANESH NOSHIRVAN a/k/a @THATDANESHGUY's, RESPONSE IN OPPOSITION TO PLAINITFFS' MOTION TO COMPEL DEFENDANT TO PRODUCE DISCOVERY MATERIALS IN RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND MOTION FOR A PROTECTIVE ORDER**

Pursuant to Local Rule 3.01(b) defendant, Danesh Noshirvan ("Noshirvan"), by and through his undersigned counsel, files this Response in Opposition to Plaintiffs' Motion To Compel Defendant to Produce Discovery Materials in Response to Plaintiff's First Request For Production of Documents (Doc. 90), and Motion for Protective Order.

I.   INTRODUCTION

Plaintiffs, Jennifer Couture ("Couture") and Ralph Garramone M.D. P.A. D/B/A Garramone Plastic Surgery ("GPS")(collectively "Plaintiffs"), initially filed a

their original and First Amended Complaint alleging claims of: (1) cyberstalking and online harassment, (2) civil conspiracy (without expressly stating an underlying tort); and (3) interference with a prospective economic advantage against Danesh Noshirvan ("Noshirvan"), Tiktok, Btyedance, and fictitious people and entities. (D.E. 1 and 9). On November 30, 2023, this Court dismissed all counts against Tiktok and Bytedance with prejudice. (D.E. 81). The Court dismissed Plaintiffs' Count I for cyberstalking and online harassment against Noshirvan with prejudice. The remaining counts against Noshirvan were dismissed without prejudice. *Id.* at p. 12. The Court further ordered Plaintiffs to "omit" the fictitious defendants, *Id.* at p.7, Fn. 1. Finally, Plaintiffs were instructed by the Court to "omit information supporting only the dismissed claims (i.e., cyberstalking and harassment) and reorganize their complaint to direct Noshirvan to the <u>factual allegations</u> relevant to each surviving claim." *Id.* at p. 11.

On December 15, 2023, Plaintiffs filed as Second Amended Complaint ("SAC"). In the SAC, Plaintiffs again allege civil conspiracy and interference with a prospective business relationship. (D.E. 81). However, the SAC is merely a poorly re-framed version of Plaintiffs dismissed cyberstalking and online harassment claim. (See D.E. 84). No underlying facts have been plead – as required by Court Order. Rather Plaintiffs allege foundational facts – like where the "information" allegedly came from, but do not allege facts identifying the underlying basis of their claims - i.e., the allegedly disclosed information. *Id.* To make matters even worse, Plaintiffs

did not incorporate paragraphs 1-50 into any currently pending count. Thus, Noshirvan is left guessing what allegations if any, belong to each of the remaining counts. (See D.E. 83).

To matters even more confusing, the SAC alleges that "Danesh participated and lead a conspiracy … to earn profits from campaigns of online and telephonic harassment." (D.E. 83, ¶52 and 59). In Count I, Plaintiffs allege that Couture "suffered damages as … a result of … online and telephonic cyberstalking campaigns." *Id.* at ¶57. In Count II, Plaintiffs utilize "buzz" words, which appear to indicate they allege underlying tort claims of defamation and tortious interference with a prospective business relationship. *Id.* at ¶¶60,62-4. However, Garramone only claims damages stemming from alleged defamatory statements in Count II. *Id.* at ¶64. In Count III, Plaintiffs allege use of "private and confidential information", fictitious reviews, and defamatory statements. However, Plaintiffs do not state the factual verbiage or quote the "private and confidential information" or defamatory statements. And the allegation that Noshirvan commented to another online user about fictitious reviews was factually refuted. (See D.E. 84, p.17). With this framework, Noshirvan must guess as to the legal basis in which Plaintiffs' claim to have recourse. Based upon this backdrop, Noshirvan in good faith, "interpreted the remaining counts as conspiracy to defame and tortious interference by way of defamatory statements" from (See **Exhibit 1**).

## II.     PROCEDURAL DEFICIENCIES

### a. **Plaintiffs failed to comply with Court's Civil Action Order and Local Rule 3.01(g)'s initial meet and confer**

Plaintiffs did not properly discharge their good faith duty meet and confer under this Court's Civil Action Order and Local Rule 3.01(g) prior to filing their motion to compel. On January 18, 2024, (the day Noshirvan's discovery responses were served), Plaintiffs' Counsel called to schedule a "meet and confer." At that time, Plaintiffs' Counsel was asked to wait until he received the Jump Drive with 4.37 GB of data to schedule the meet and confer. Plaintiffs' Counsel agreed. The Jump Drive was received by Plaintiffs' Counsel on January 24, 2024. See D.E. 90, ¶7. On January 26, 2024, Plaintiffs' Counsel, without warning or a scheduled meeting, abruptly called the undersigned's office in what appeared to be a panic-stricken manner and attempted to impose a "meet and confer" at that time. The undersigned advised that he was not immediately available and requested Plaintiffs' counsel to identify in writing, "the area(s) or scope of what is to be discussed", prior to the actual meet and confer. (See **Exhibit 2**, p. 1). In response, Plaintiffs' counsel got angry and started yelling. The phone call was then terminated. Shortly thereafter, Plaintiffs' counsel filed Plaintiffs' Motion to Compel and sent email containing the document. (See Ex. 2, p.2).

This Court's Civil Action Order, paragraph 8.a., provides:

> Before filing most motions, the movant must confer with the opposing party in a good faith effort to resolve the issue(s). See Local Rule 3.01(g). To properly discharge this obligation, movants must confer with the parties to the action and any non-party against which relief is requested. The court strictly enforces this motion-related conference requirement to foster communication between the parties, narrow or resolve issues without court involvement, and ensure that disputes are neither under- nor overstated when first presented to the court for resolution. Failure to comply with Local Rule 3.01(g) may cause the court to summarily deny the motion.

(D. E. 4)

The Civil Discovery Handbook section A. 2., defines the term "confer" in Rule 3.01(g) to mean a ***substantive discussion***. Civil Discovery Handbook available online at https://www.flmd.uscourts.gov/civil-discovery-handbook/chapter01/a-courtesy-and-cooperation-among-counsel. Plaintiffs abrupt January 26, 2024, telephone communication does not constitute a substantive discussion. Plaintiffs' Counsel never identified the areas or scope of the discussion regarding Noshirvan's 31-page discovery response. The extent of the conversation consisted of Plaintiffs' Counsel stating "we are filing a motion to compel. What is your position?" The undersigned responded by advising he was currently unavailable to discuss in depth, a discovery motion that had not been provided to him for review and requested that Plaintiffs' counsel either send the motion or a writing outlining Plaintiffs issues with the discovery response. Plaintiffs' counsel did neither and simply filed the motion as a gotcha tactic. (See Ex. 2).

> b. **Plaintiffs certified compliance with Local Rule 3.01(g)(3), but failed to diligently attempt to contact the undersigned for three days**

Local Rule 3.01(g)(3), provides:

Unavailability. If the opposing party is unavailable before the motion's filing, the movant after filing ***must try diligently for three days to contact the opposing party***. Promptly after either contact or expiration of the three days, the movant must supplement the motion with a statement certifying whether the parties have resolved all or part of the motion. Failure to timely supplement can result in denial of the motion without prejudice. The purposeful evasion of a communication under this rule can result in a sanction.

Local Rule 3.01(g)(3)(emphasis added).

On January 31, 2024, Plaintiffs' counsel certified that he "attempted to meet on confer" with the undersigned. Plaintiffs' counsel then certifies that he "called and emailed" the undersigned 3-4 days later. (See D.E. 91)

Rule 3.01(g)(3) expressly requires a party to attempt to contact an opposing party on three separate occasions. Plaintiffs' Counsel's certification is patently deficient. More importantly, Plaintiffs' Counsel did not diligently perform the act of attempting to contact the undersigned on three separate occasions. (See Ex. 2).

Moreover, Plaintiffs' Counsel misrepresented the nature of the January 30, 2024, communication. On January 30, 2024, Plaintiffs' Counsel sent the following email: "Good afternoon Nick. I left you a voicemail to discuss *Noshirvan v Couture*, 2:23-cv-01218. I am filing a motion to dismiss with a motion for sanctions …. If you wish to discuss please call me." Notably, a motion to dismiss was filed in *Noshirvan*

*v Couture*, 2:23-cv-01218 on January 30, 2024. At no time, in Plaintiffs' Counsel's January 30, 2024, email or voicemail, did he ever mention discussing a "motion to compel" in *Couture v. Noshirvan*, 2:23-cv-00340. There were no other communications between counsel that day. (See Ex. 2). Yet, Plaintiffs' Counsel certified that he " called and emailed" "but he was not available." (D.E. 91). In light of Plaintiffs' Counsel's actions, a letter was sent to him on February 02, 2024. (See Ex. 2). In that letter, the undersigned identified multiple deficiencies or improprieties, and requested that the Plaintiffs' motion be withdrawn. Plaintiffs' Counsel responded by refusing to withdraw the motion to compel.

### III. NOSHIRVAN'S DISCOVERY RESPONSE

#### a. **A Privilege Log was Timely Served**

On January 18, 2024, Noshirvan served a 31-page response to Plaintiffs' First Request for Production including a Privilege Log to Plaintiffs and mailed a "jump drive" containing **4.37 GB** of data ("Response") (**See Exhibit 3**). A privilege log was/is attached to Noshirvan's PDF Response at page 30-1. Plaintiffs' Counsel was advised, via email, several times that Noshirvan, did in fact, provide a Privilege Log and that his statements in Plaintiffs' Motion to Compel were inaccurate, misleading, or misrepresentations. (See Ex. 2; Cf. D.E. 90, ¶¶ 12, 17, 20, 22, 23, 27, 28, 30, 32, 35, and 36)). Plaintiffs' Counsel responded by simply refusing to acknowledge the existence of the Privilege Log. Plaintiffs' Counsel's denial or refusal to acknowledge actual facts – does not – change the fact that a Privilege Log was provided. Nor does

it relieve Plaintiffs' Counsel from his duty to provide accurate allegations and information to this Court.  Simply claiming that  a party "has not produced a privilege log" when one has been produced is a completely inaccurate statement and improper.

> b. **Plaintiffs' SAC Shapes The Permissible Scope Of Discovery, And Their Discovery Requests Do Not Comport With The SAC, Therefore A Protective Order Is Necessary**

The Federal Rules of Civil Procedure permit parties to obtain discovery of any nonprivileged matter relevant to the parties claims and defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); see also, e.g., *United States ex rel. Jacobs v. CDS, P.A.*, No. 4:14-cv-00301-BLW, 2016 WL 4146077, at *2 (D. Idaho Aug. 3, 2016) ("The allegations of the complaint logically shape the scope of discovery...."). Factors used to determine proportionality under this standard are the importance of the issues at stake, the amount in controversy, the parties' access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden outweighs the likely benefit. Fed. R. Civ. P. 26(b)(1). District courts have broad discretion to control discovery and limit burdensome and oppressive requests. *Fiederer v. Healing Hearts Home Care, Inc.*, No. 2:13-cv-1848-APG-VCF, 2014 WL 4666531, at *3 (D. Nev. Sept. 18, 2014); Fed. R. Civ. P. 26(b)(2)(C)(i).

The party moving under rule 37 to compel discovery must demonstrate that the request satisfies Rule 26's relevance requirement. *See, e.g., Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). The party resisting discovery "has the burden

of clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing, inter alia, *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). "Discovery of matters 'not reasonably calculated to lead to discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." *Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1353 (S.D. Fla. 2000); *see Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570 (11th Cir.1992) ("[d]iscovery should be tailored to the issues in the particular case").

Similarly, Rule 26 permits a party to move the court for a protective order limiting the scope of discovery to protect that party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1)(D).

First, Plaintiffs' in their motion, failed to carry their burden and show that the requested discovery is within the scope of the pleadings. (See D.E. 90, ¶¶1-2). However, paragraphs 1-2 in the motion make clear that Plaintiffs are litigating this as if it had a valid claim for civil conspiracy for "online and telephonic harassment." *Id.* at ¶1. In fact, Plaintiffs motion does not even address "defamatory statements" or the underlying tort for interference with a prospective business relationship. Instead, Plaintiffs seek to avoid their burden of proving that the matters requested are relevant to the SAC by improperly shifting the burden to Noshirvan to support his objections and claims of privilege.

Second, on the first page of the Response, Noshirvan provided "standing objection and instructions." (See Ex. 3). The standing objections were incorporated

by reference into each applicable discovery request. (See Ex. 3). In the instructions, Noshirvan advised that he "is unable to accurately assess the scope of the pleadings." *Id.*; See D.E. 83-4. "However, in an effort to answer discovery in good faith, Noshirvan will interpret the remaining counts as conspiracy to defame and tortious interference by way of defamatory statements."  Noshirvan's standing objections advised Plaintiffs that "[a]ll of the events" alleged in the SAC "occurred between January 06, 2022, through August of 2022. (See SAC p.4, ¶¶9,10,12. P. 10, ¶¶26,28. P.11, ¶¶31-3, 35. P. 13, ¶40. P. 16, ¶45). Therefore, Noshirvan's "overbroad in time" objection related to discovery request for items that occurred after the events alleged in the SAC. Noshirvan's objection as to "overbroad in scope" is based upon Noshirvan's good faith interpretation of the currently pending counts  -  civil conspiracy to defame and tortious interference by way of defamatory statements. Noshirvan's objection to "outside the scope of the pleadings" is based upon the fact that Plaintiffs did not incorporate paragraphs 1-50 into Counts 1-3 in the SAC. Noshirvan's "relevance" objection is based upon similar considerations and is intended to address the  redundant, immaterial, impertinent, or scandalous matters improperly alleged in the Second Amended Complaint such as allegations of harassment and cyberstalking (SAC ¶¶7, 13, 14, 15, 22-5, 29, 31, 43-4, 47-8), monetization issues SAC ¶ 7, 21, 28, 30, 39, 49), improper character allegations not reasonably calculated to lead to admissible evidence SAC ¶¶ 7, 15, 36-9, 49, 50).

Plaintiffs allege in their motion to compel that their discovery requests concerning Noshirvan's "social media activity," "the identity of payors payments," "redemption of TikTok coins, tips, and gifts," "persons Defendant communicated with," "comments," and "fictitious native content articles" are relevant to the SAC. (Doc. 90 ¶2). However, Plaintiffs introduction statement proves they are still under the assumption that the SAC includes a civil conspiracy claim for cyberstalking and harassment. (D.E. 90 at ¶1). The SAC does not. This Court dismissed Plaintiffs dismissed cyberstalking and harassment count with prejudice. *Id.* Plaintiffs' failure to remove "all allegations of cyberstalking and harassment" as ordered by this Court does not change the fact that the count was dismissed with prejudice. Nor does intentional inclusion of dismissed claims in the SAC, revive those dismissed claims.

In summary, Plaintiffs' SAC failed to (1) remove "all allegations of cyberstalking and harassment" and "identify the factual basis for each remaining count" as required by Court Order, (2) provide the factual defamatory statements, (3) provide factual statements of what "private and confidential information" was allegedly disclosed, (4) provide an actual underlying tort for a civil conspiracy, (5) provide any plausible allegations that Noshirvan tortiously interference with GPS's business, (6) provide pre-suit notice of a defamation claim as required by F. S. §770.01, and (7) incorporate paragraphs 1-50 in any of the currently pending counts (See D.E 84 compare with 83).

As previously stated, Noshirvan must guess what Plaintiffs' current claims are. A review of the SAC indicates Plaintiffs do not know either. (See Ex. 1; D.E. 84). In Response to Noshirvan's Motion to Dismiss (D.E. 86), Plaintiffs recite this Court's summary of allegations based on the First Amended Complaint. *Id.* at p. 1-3 compare with D.E. 81.  Plaintiffs then rehash their cyberstalking and harassment arguments, which were previously dismissed with prejudice. *Id.* at p. 5-7 (rearguing "economic boycott: exception). Plaintiffs then admit that the alleged fake reviews were in fact opinions;  not defamatory statements.  *Id.* at p. 8. Specifically, Plaintiffs stated "[the review site statements were posted by Danelanders, whose **opinion** was based on personal experience as current or former patients…." *Id.* at p. 8. (emph. added).

Plaintiffs SAC claims sound in cyberstalking, harassment, or undisclosed defamatory statements. Noshirvan has argued "that communication of truthful information does not constitute improper interference with another's contractual relationships" and the single publication rule bars Plaintiffs improper interference claim because the underlying alleged interference is alleged defamatory statements. (See D.E. 84, p. 9-10, 14-5). Plaintiffs failed to rebut same in their response. (See D.E. 86). Discovery may not exceed well-pleaded facts in the operative complaint – i.e., the SAC. *See Lacey v. Maricopa Cnty*., 693 F.3d 896, 927 (9th Cir. 2012) ("[T]he general rule is that an amended complaint supersedes [sic] the original complaint and renders it without legal effect."). To date, Plaintiffs have no well-pleaded facts, and the SAC is currently pending this Court's ruling on Noshirvan's motion to dismiss.

(See D.E. 83-4). Put simply, Noshirvan acted in good faith interpreting the SAC in manner in which he did and producing 4.37 GB of data.

To make matters worse, Plaintiffs' Counsel refused to "meet and confer" in accordance with this Court's Civil Action Order and Local Rule 3.01(g). A proper meet and confer could have possibly allowed the parties define the scope of the SAC without Court intervention.

### c. **Trade Secret**

Fed. R. Civ. P. 501 requires state law privilege to be applied in diversity jurisdiction cases. (See committee notes). In this case, Florida Trade Secret Privilege stated that "a person has a privilege to refuse to disclose, and to prevent other persons from disclosing, a trade secret owned by that person if the allowance of the privilege will not conceal fraud or otherwise work injustice." §90.506, Fla. Stat. (2024). Trade secrets are defined in Florida's Uniform Trade Secrets Act as information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *Sea Coast Fire, Inc. v. Triangle Fire, Inc.*, 170 So. 3d 804, 808 (Fla. 3d DCA 2014).

Here, James McGibney's undisputed declaration explained that the conversations subject to trade secret privilege contained confidential information that

is not publicly available and provides real potential economic value up publication of the televised docuseries. (See **Exhibit 4**). Mr. McGibney's unrebutted testimony is enough to find that the communications are privileged trade secrets under Florida's Uniform Trade Secrets Act. *See Sea Coast Fire, Inc.*, 170 So. 3d at 808.

In that same vein, Plaintiffs have not met their high burden to force Noshirvan to disclose trade secrets. *Gulfcoast Spine Inst., LLC v. Walker*, 313 So. 3d 854, 859 (Fla. 2d DCA 2021).

    d.  **Clergy Privilege**

Section 90.505, Florida Statutes expressly defines "clergy" as <u>a minister of any religion</u> and makes "confidential" spiritual counsel and advice from the member of the clergy. §90.505, Fla. Stat. (2024)(Emph. added). Confidential communications between a person and a minister, made for the purpose of seeking spiritual counseling or advice are protected under Florida law. *Id.* The clergy-penitent privilege is not restricted to face-to-face communications.

James McGibney uncontested testimony shows that certain private communications were intended to remain confidential and were for the purpose of seeking spiritual advice or counseling in the usual course of his practice. (See Ex. 4)

Plaintiffs take issue with the form of the communication. See D.E. 90, p.12-6. They simply argue that because the communication occurred through an instant messenger, that the communication did not occur "in the usual course" of practice. However, §90.505, Florida Statute does not expressly limit the clergy privilege to

face-to-face matters. Therefore, as long as the elements are met, the form of the communication is irrelevant.

Next, Plaintiffs take issue with the church James McGibney is associated with as a minister. See. D.E. 90, p. 15. However, Plaintiffs and their counsel do not get to choose which religions are valid and which are not. The Free Exercise Clause guarantees "first and foremost, the right to believe and profess whatever religious doctrine one desires." *Malicki v. Doe*, 814 So. 2d 347, 354 (Fla. 2002). The protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 532, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). The First Amendment provides churches with the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Malicki*, 814 So. 2d at 356. Put simply, James McGibney and Noshirvan are protected under the law to worship as they see fit. Plaintiffs' Counsel's argument about the "quality" or "type" of the church, if adopted by this Court, would likely violate the Free Exercise Clause and religious equal protection rights.

Next, Plaintiffs argue that because a letter sent by James McGibney only told Plaintiffs' Counsel to stop misrepresenting facts to the Court, instead of addressing the privileged communications, it somehow invalidates the privilege. Plaintiffs argument is a fallacy. *Post hoc ergo propter hoc*.

Lastly, disclosure of the protected communications prejudicial effect would greatly outweigh any probative value the communication would ever have. The protected communications are not likely to lead to admissible evidence as all communications <u>after</u> the events alleged in the SAC.

### IV. Specific response to paragraphs

a. For Request number 1, Plaintiffs allege Noshirvan did not produce videos from Patreon and YouTube. D.E. 90 p.6. Noshirvan produced Tiktok videos discussing Plaintiffs. Noshirvan Patreon account is closed and has been for sometime. Noshirvan's YouTube account is simply reposted Tiktok posts and is publicly available. (See Ex. 3)

b. For Request number 2, Plaintiffs allege Noshirvan did not produce "all videos" "posted on TikTok" "from January 26, 2022, through the present." D.E. 90 p.6. Noshirvan videos discussing Couture, Garramone, or the Surgery Center and made multiple objections to the remainder. (See Ex. 3)

c. For Request number 3, Plaintiffs allege Noshirvan did not produce private creator information. D.E. 90 p.7. Noshirvan produce "creator" comments attached to the videos produced and made multiple objections to the remainder. (See Ex. 3)

d. For Request number 4, Plaintiffs allege Noshirvan did not produce "native [digital]content" "where Plaintiff was the subject matter." D.E. 90 p.7. Noshirvan produced published Tiktok videos discussing Plaintiffs. (See Ex. 3)

  e. For Request number 5, Plaintiffs allege Noshirvan did not produce the requested improper financial information. See D.E. 90, p. 9. However, Plaintiffs' omit Noshirvan's 8th standing objection: "improper financial discovery" in contravention of section 768.72, *Florida Statutes. Fed. Ins. Co. v. Perlmutter*, 48 Fla. L. Weekly D2320 (Fla. 4th DCA Dec. 13, 2023); *see Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1340 (11th Cir. 2001)(§768.72 has a discovery component which states that "[n]o discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted).

  f. For Request number 6, Plaintiffs allege Noshirvan did not produce the requested improper financial information. See D.E. 90, p. 9. However, Plaintiffs' 8th standing objection supra. (See Ex. 3)

  g. For Request number 7, Plaintiffs allege Noshirvan did not produce the requested improper financial information. See D.E. 90, p. 10. However, Plaintiffs' 8th standing objection supra. (See Ex. 3)

  h. For Request number 14-6, Plaintiffs allege Noshirvan did not produce enforcement actions levied by TikTok and other platforms. D.E. 90, p.11. Noshirvan raised numerous objections including not reasonably calculated to lead to admissible evidence. (See Ex. 3)

  i. For request numbers 16, Plaintiffs allege Noshirvan did not produce

"all text communications between Defendant and TikTok." D.E. 90, p.11. Noshirvan produced any communications that directly discussed Plaintiffs to the extent it exists and made multiple objections to the remainder. (See Ex. 3)

      j.   For request numbers 16, Plaintiffs allege Noshirvan did not produce "all text communications between Defendant and any … TikTok employees, from January 26, 2022, through the present." D.E. 90, p.12. Noshirvan produced communications that directly discussed Plaintiffs and made multiple objections to the remainder. (See Ex. 3)

      k.   For request numbers 24-6, Noshirvan's privilege arguments are above. See also Exhibit 3. Noshirvan also argues that Plaintiffs seek to abridge free speech of others with conclusory claims of false posts on Instagram that occurred well <u>after</u> the events alleged in the SAC.  D.E. 90, p.12.

      l.   For requests 8-13, 20-3, and 27-9, Plaintiffs improperly sought interrogatories in a request for production. See D.E. 90, p. 16-20. Specifically, Plaintiffs requested a "a list" of various items. Noshirvan stated that "a party may not be compelled to compile or produce nonexistent documents." *Elkins v. Syken*, 672 So. 2d 517, 521 (Fla. 1996). Noshirvan does not currently have a "list" in his possession. Noshirvan also raised other objections that Plaintiffs omitted. (See Ex. 3)

      **V.**    **Request for a Hearing**

Noshirvan respectfully requests a hearing to clarify issues surrounding Plaintiffs motion and this Response, address arguments of counsel, and present evidence of noncompliance with Local Rule 3.01(g) and this Court's Order.

## VI. REQUEST FOR RELIEF

Accordingly, the Court should deny Plaintiffs' Motion to Compel/overrule objections in its entirety, or grant Noshirvan's request for a protective order 1) forbidding the disclosure or discovery, 2) forbidding inquiry into certain matters, 3) limiting the scope of disclosure or discovery to certain, 4) require that trade secret or other confidential information not be revealed, or alternatively, allow a hearing on the matter.

Respectfully submitted,

Nicholas A. Chiappetta, Esq.
**Chiappetta Trial Lawyers**
Attorneys for Mr. Noshirvan
8401 Lake Worth Rd., Suite 130
Lake Worth, FL 33467
Direct: (561) 768-4500
Fax:    (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that the undersigned and Plaintiffs' counsel met and conferred via telephone on February 07, 2024, and that Plaintiffs oppose the relief requested by Noshirvan in his Motion for Protective Order.

## CERTIFICATE OF SERVICE

      I hereby certify that on February 08, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Patrick Trainor, Esquire
Law Office of Patrick Trainor, Esq., LLC
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
Telephone: (201) 777-3327
Facsimile: (201) 896-7815
pt@ptesq.com
*Attorney for Plaintiffs*

                                      */s/ Nicholas A. Chiappetta*
                                      Nicholas A. Chiappetta