# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

| | |
|---|---|
| JENNIFER COUTURE; RALPH GARRAMONE M.D. P.A. d/b/a GARRAMONE PLASTIC SURGERY,<br><br>Plaintiff,<br><br>vs.<br><br>DANESH NOSHIRVAN, et al.,<br><br>Defendants. | Civil Case No.: 2:23-cv-00340<br><br>Hon. Sheri Polster Chappell, U.S.D.J.<br><br>**OPPOSED MOTION** |

**PLAINTIFF'S MOTION FOR AN ORDER COMPELLING PRODUCTION OF DOCUMENTS WITHHELD IN DEFENDANT'S AMENDED PRIVILEGE LOG AND REQUEST FOR IN CAMERA REVIEW**

Plaintiffs Jennifer Couture and Ralph Garramone, M.D. P.A. d/b/a Garramone Plastic Surgery (hereinafter collectively referred to as "Plaintiff") by and through the undersigned counsel, respectfully move this Court for an Order compelling defendant Danesh Noshirvan ("Defendant") to produce documents withheld in his amended privilege log and request for *in camera* review.

## INTRODUCTION

1.  On October 16, 2023, pursuant to *Rule 34 of the Federal Rules of Civil Procedure 34*, Plaintiff served its First Requests for Production of Documents (the "Requests") upon Defendant returnable November 15, 2023. On November 15, 2023, Defendant was granted a 60-day extension to respond to Plaintiff's

Requests to January 15, 2024. On January 11, 2024, Defendant's time to respond was extended by three days to January 18, 2024.

2. On January 18, 2024, Defendant produced written responses and objections to Plaintiff's Requests, which included a one line privilege log to withhold 137 communications that he exchanged with nonparty James McGibney. The communications were described as "[c]orrespondence between James McGibney or Bullyville.com and Noshirvan," and the privilege claimed was "[c]ommunications with Clergy and Trade secrets." *See Defendant's Brief in Opposition to Plaintiff's Motion to Compel, Exhibit 3*, ECF No. 92-3 at 30.

3. Plaintiff additionally withheld documents for Requests numbers 3-7 and 14-17 by claiming production of responsive documents would violate the privacy rights of third-parties who posted comments to social media, but Defendant did not include these withheld materials in his privilege log.

4. On January 26, 2024, Plaintiff filed an opposed motion to compel Defendant to produce documents. ECF No. 90. On March 15, 2024, a discovery hearing was conducted before the Honorable Kyle C. Dudek who read into the record the legal standards for the clergy-penitent privilege and the Florida trade secrets privilege. At the hearing, Magistrate Dudek ordered Defendant to produce on or before March 29, 2024, an amended privilege log that lists each withheld document and the privilege claimed for each withheld document. ECF No. 104.

5.      On March 29, 2024, Plaintiff received Defendant's amended privilege log which includes seventy-eight (78) rows of information that Defendant claims "5th Amendment" privilege and/or "trade secrets [under Fla. Stat.] §90.506" privilege to withhold production.  Attached to Defendant's amended privilege log is an explainer with case citations that he claims supports the privileges claimed.  Defendant's Amended Privilege Log is annexed hereto as **Exhibit A.**

6.      In his amended privilege log, Defendant waived the clergy-penitent privilege that he claimed in his original privilege log.

7.      On April 2, 2024, the parties conferred by telephone to discuss the amended privilege log and disagreements concerning the privileges claimed and relevance of cases Defendant cited to justify his privilege claims.

## MEMORANDUM OF LAW

Defendant's amended privilege log contains six (6) columns and 78 rows.  The columns are labeled "Drafter/Recipient," "Item," "Description," "Date," "Privilege," and "Elements."  The amended privilege log uses the term "items" which is used interchangeably herein with "documents" and "materials."  James McGibney is identified as the "drafter" of every entry in the amended privilege log and "Danesh Noshirvan" the "recipient."  A line numbered version of Defendant's amended privilege log is annexed hereto as **Exhibit B**.

Of the 78 rows in the amended privilege log, Defendant claims fifty-eight (58) are protected by the *Fifth Amendment* right against self-incrimination. *See* Exhibit A. Defendant describes these 58 items as "a series of testimonial text communications. To be discussed at hearing[]," but Defendant did not describe the hearing where these text communications will be discussed. Defendant's reason for withholding these items is that Defendant "maintains a reasonable belief that it might be used against him as an accused in a criminal prosecution." *Id.*

Defendant claims an additional twelve (12) entries are jointly privileged by his *Fifth Amendment* privilege and Florida's trade secrets privilege under *Fla. Stat. § 90.506*. *Id.* During the meet and confer, counsel for Defendant acknowledged that Defendant is not under criminal investigation, that a grand jury has not been empaneled to investigate Defendant's conduct, and that no criminal charges are currently pending against Defendant. Counsel for Defendant also claimed not to have any knowledge of crimes committed by defendant.

Defendant's amended privilege log contains generic descriptions of the items withheld and reasoning for withholding these items. For instance, the items are described as a "screenshot" with a numeric modifier or just a numeric description. However, privilege logs must for "each document [] set forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed," Defendant's burden to prove withheld materials are

4

privileged "cannot be discharged by mere conclusory or ipse dixit assertions." *Young v. Hartford Ins. Co. of Midwest*, 2020 U.S. Dist. LEXIS 99428 *13 (M.D. Fla. May 7, 2020).

## LEGAL STANDARD

### A. Fifth Amendment Privilege

In spite of the lack of any evidence that Defendant's liberty is jeopardized by a real criminal proceeding, Defendant invokes a blanket assertion of *Fifth Amendment* privilege. The Fifth Amendment privilege against self-incrimination protects a person against being incriminated by his own compelled testimonial communications. *United States v. Argomaniz*, 925 F.2d 1349, 1352 (11th Cir. 1991) (*quoting Fisher v. United States*, 425 U.S. 391, 409, (1976)) (internal quotations omitted). The Fifth Amendment may only be asserted when there is a substantial, real hazard of self-incrimination. *United States v. Reis*, 765 F.2d 1094, 1096 (11th Cir. 1985). It only prevents compelled explicit or implicit disclosures of incriminating information. *Doe v. U.S.*, 487 U.S. 201, 212 (1988).

The Fifth Amendment privilege does not prevent the disclosure of all types of potentially incriminating evidence. *C&M Inv. Grp., Ltd. v. Campbell*, 2011 U.S. Dist. LEXIS 175378 *5 (M.D. Fla. Mar. 7, 2011) (*citing Fisher v. United States*, 425 U.S. 391, 408 (1976)). Thus, a person may be compelled to produce specific documents even though they contain incriminating assertions of fact if the creation

5

of those documents was voluntary so that the documents cannot be said to contain compelled, testimonial communication. *Id. citing Fisher*, 425 U.S. at 409-10. A blanket refusal to produce records or to testify does not support a Fifth Amendment claim. *United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir.1969).

Where a privilege has been claimed the burden is on the party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship. *CSX Transp. Inc. v. Admiral Ins. Co.*, 1994 U.S. Dist. LEXIS *4 (M.D. Fla. Jul 20, 1995) (*citing Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 470 (S.D.N.Y. 1993) (*quoting von Bulow v. von Bulow,* 811 F.2d 136, 144 (2d Cir.)). The central standard for the privilege's application has been whether the claimant is confronted by substantial and real and not merely trifling or imaginary, hazards of incrimination. *In re Scientific-Atlanta, Inc.*, 2008 U.S. Dist. LEXIS 59185 *5 (M.D. Fla. Jul. 24, 2008).

Furthermore, the Fifth Amendment privilege can be waived. *Wicker v. Paramatma*, 2020 U.S. Dist. LEXIS 266086 *10 (N.D. Ga. Mar. 9, 2020). As a matter of longstanding precedent "[d]isclosure of facts waives the privilege as to details" such that once facts are "voluntarily revealed the privilege cannot be invoked to avoid disclosure of the details." *Rogers v. United States*, 340 U.S. 367, 373 (1951).

Here, counsel for Defendant acknowledged during the meet and confer that Defendant is not facing any real criminal hazards as required to invoke the Fifth Amendment. Defendant waived his Fifth Amendment privilege because he has previously admitted leading and directing a campaign of online and telephonic harassing and threatening communications against Plaintiff, which he described as "satire." *Defendant's Motion to Dismiss Second Amended Complaint*, (Def. SAC.) at 3, ECF No. 84. For example, while Plaintiff was being bombarded with hundreds of harassing communications, Defendant contacted Couture directly and warned her the "fun hasn't even started yet," and much worse was to come with the help of his "1.3 million fams[ily]." Second Amended Complaint ("SAC") at 8-9 ¶ 22, fig. 7 ECF No. 83. Moreover, in his motion to dismiss Plaintiff's *Second Amended Complaint*, Defendant described his conduct as "Noshirvan's news report," and described himself as a "new age shock jock, journalist, and social media entertainer" whose "viewers do online research and submit readily available public information about the bad actors" to him as "tips," which he uses to create more content based on these tips. *Def. SAC.* at 3-4, ECF No. 84.

Defendant's waiver of the Fifth Amendment privilege is consistent with *Rogers'* long standing precedent that waiver is accomplished by virtue of Defendant's disclosure that with help of his "1.3 fams" he would continue to drive harassing and threatening communications at Plaintiff and his voluntary revelation

7

that he receives and shares "tips" from third-parties that he uses to create content about his target is a waiver of his Fifth Amendment privilege. Moreover, in the amended privilege log Defendant describes the withheld information as "to be discussed at hearing," but does not identify this hearing.

Furthermore, Defendant's Fifth Amendment privilege claim lacks credibility, because it contradicts his previous claim that his communications with James McGibney were for "spiritual counseling" and conflict with the affidavit of James McGibney that Defendant presented with his opposition to Plaintiff's motion to compel. *See Defendant's Brief in Opposition to Plaintiff's Motion to Compel* at 14, ECF No. 92-4. In his affidavit James McGibney swore under penalty of perjury that the communications he exchanged with Defendant were privileged, because they were for "spiritual advice…and spiritual counseling." *See Defendant's Brief in Opposition to Plaintiff's Motion to Compel*, Exhibit 4 at 3 ¶¶ 15-17, ECF No. 92-4. The irony of Defendant's waiver of the clergy-penitent privilege for communications with McGibney that he now claims will subject him to criminal jeopardy if disclosed cannot be overstated. Repudiation of McGibney's sworn testimony begs the question as to whether Defendant knowingly submitted a false affidavit when he submitted McGibney's affidavit. Id.

Moreover, in his explainer Defendant cites *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1086 (5th Cir. 1979) as permitting his claim of Fifth

8

Amendment privilege, however, as was discussed with Defendant's counsel during the meet and confer, the facts in this case are inapposite to Wehling. In *Wehling* a trade school operator was plaintiff in a libel action against a broadcaster who reported that Wehling misappropriated student loan money from his schools, invoked Fifth Amendment privilege to withhold documents from defendant during discovery in the libel action. The court found Wehling reasonably believed he was subject to criminal prosecution and only sought an approximate three year stay of discovery until the statute of limitations on his criminal charges expired, and that he did not seek to permanently bar production of the requested information. *Wehling*, 608 F.2d at 1084-1089. In contrast, where Wehling sought a temporary stay, Defendant seeks a permanent bar and there is no indication that Defendant is subject to criminal jeopardy. Defendant's counsel acknowledged Defendant is not under criminal investigation, or that a grand jury has been convened to investigate Defendant, nor are there any criminal charges currently pending against him. This is simply a blanket assertion of Fifth Amendment privileges to frustrate discovery and to withhold discovery in perpetuity.

  **B. <u>FLORIDA TRADE SECRETS - § 90.506</u>**

  In his privilege log Defendant improperly withheld twelve items jointly under the Fifth Amendment and Trade Secrets privilege and eight (8) rows that are only withheld under the Florida trade secrets privilege. The joint Fifth

9

Amendment privilege and Florida trade secrets privilege items are described as: (a) "a series of testimonial text communications. To be discussed at hearing[];" and (b) "text message discussion regarding confidential information related to the production of a television show." The reason provided for withholding these items is Defendant: (a) "maintains a reasonable belief that it might be used against him as an accused in a criminal prosecution," and (b) "[t]he screenshot contains techniques and processes related to a docuseries. There is actual and potential economic value as the process and episode's content is not generally known." *Id.*

The eight standalone rows are described as either "internal text message discussion regarding confidential information related to the production of a television show" that were withheld because "the screenshot contains mockup scene content, and the methodological breakdown of a televised episode. The content includes techniques, processes, and methods in the form of a compilation. There is actual and potential economic value as to the episode's content is not generally known." *See* Exhibit B, Plaintiff's numbered amended privilege log numbers 2, 3.

Or they were described as "Internal text message discussion regarding confidential information related to the production of a television show," that were withheld because the "the screenshot contains content including techniques and processes to maneuver social media. there is actual and potential economic value

10

as a content creator. the screenshot contain nonpublic information." *Id. at* numbers 22, 68, 69.

The other items withheld under the trade secret privilege are described as "text message discussion regarding confidential processes related to social media," that were withheld because "The screenshot includes discussion about methods, techniques, and processes, for social media that are not openly known. There is actual and potential economic value associated therewith." *Id.* at number 15. Or a "text message discussion regarding confidential information related to the production of a television show" that is withheld because the "screenshot contains content including techniques and processes to maneuver social media. there is actual and potential economic value as a content creator. the screenshot contain nonpublic information." *Id.* at number 52. Or withheld because "the screenshot contains processes or methods related to a docuseries. there is actual and potential economic value as the process and episode's content is not generally known." *Id.* at number 53. Defendant's descriptions and reasoning are insufficient.

Florida's trade secrets privilege states "a person has a privilege to refuse to disclose, and to prevent other persons from disclosing, a *trade secret owned by that person* if the allowance of the privilege will not conceal fraud or otherwise work injustice." *Fla. Stat. § 90.506* (emphasis added). A "trade secret" as defined in Florida's *Uniform Trade Secrets Act* defines "means "information, including a

11

formula, pattern, compilation, program, device, method, technique, or process that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Fla. Stat. § 688.002(4)(a)-(b)*.

Entitlement to trade secret protection first requires the party opposing the requested production to show good cause by establishing "that the information sought is a trade secret and that its disclosure may be harmful." *Rodriguez v. Progressive Select Ins. Co.*, 2023 U.S. Dist. LEXIS 148422 *12 (M.D. Fla. Jun. 2, 2023). In order to invoke the trade secret privilege the person invoking the privilege must be the owner of the trade secret, must economically benefit from the trade secret, must show that the information would be valuable to his competitors, and must show that he routinely takes steps to protect the secrecy of the trade secret. *Fla. Stat. § 688.002(4)(a)-(b)*.

Defendant cannot satisfy these elements. Defendant: (1) does not own the television show he seeks to shield; (2) Defendant has already stated he does not economically benefit from the items he seeks to withhold (*see* Def. SAC. at 4) or that the items he seeks to withhold are closely held secrets that possess substantial economic value to him; (3) Defendant has not identified competitors that value the

12

items he seeks to withhold; and (4) Defendant has not shown that he constantly takes steps to protect the propriety of this information.

Normally courts conduct an in camera review or materials withheld to determine whether the constitute trade secrets, but here, an in camera review is not necessary, because Defendant has only put forth generalized objections and he does not own the purported trade secret he is attempting to withhold.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order compelling Defendant to produce the items withheld in his privilege log.

## **LOCAL RULE 3.01(g) CERTIFICATION**

Counsel for Plaintiff certifies that on April 2, 2024, he telephonically conferred with Defendant's counsel to discuss Defendant's amended privilege log and differences concerning the cases cited in Defendant's explainer attached to his amended privilege log. Counsel for Defendant opposes this motion.

April 4, 2024

_____
Patrick Trainor, Esq.
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorney for Plaintiffs*

## CERTIFICATION

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are knowingly and/or willfully false, I am subject to punishment.

Dated:  April 4, 2024

_____
Patrick Trainor, Esquire (Attorney ID 242682019)
**Law Office of Patrick Trainor, Esq., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorneys for Plaintiff*

## CERTIFICATION OF SERVICE

I hereby certify that on April 4, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Nick Chiappetta
Chiappetta Trial Lawyers
2101 Vista Pkwy, Suite 258
West Palm Beach, Florida 33411
P: (561) 768-4500
F: (561) 7686-4600
nick@chiappettalegal.com
*Attorney for Defendant Danesh Noshirvan*

Dated:  April 4, 2024                   _____
                                        Patrick Trainor, Esq.