UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RALPH GARRAMONE, M.D.,

    Plaintiff,

v.                                                Case No.: 2:23-cv-340-SPC-KCD

DANESH NOSHIRVAN,

    Defendant.
_____/

## ORDER

Before the Court is Plaintiff's Second Motion to Compel Production of Privilege Log Withheld Documents. (Doc. 110.)[1] Defendant has responded in opposition. (Doc. 114.) For the reasons below, Plaintiff's motion is granted.

## I. Background

Plaintiff seeks production of the documents identified in Defendant's latest privilege log. (Doc. 110.) The privilege log has seventy-eight entries and asserts two privileges: Fifth Amendment privilege and Florida's trade secrets privilege under Fla. Stat. § 90.506. (Doc. 110-1.)

Defendant claims that most entries are protected by his Fifth Amendment right against self-incrimination. (Doc. 110-1.) He worries these

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

messages could support cyberstalking charges. (Doc. 114 at 10.) Defendant also identifies twenty entries he believes are protected by Florida's trade secrets privilege. (Doc. 110-1.) He argues producing these messages would reveal techniques, methods, and processes he uses to navigate social media and produce docuseries and television shows. (Doc. 110-2.)

The Court could not assess the applicability of either privilege without viewing the documents. Thus, it ordered Defendant to provide copies for in camera inspection. (Doc. 119, Doc. 124.)

## II. Legal Standard

The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. Although the Fifth Amendment refers to criminal prosecutions, a party may raise the privilege to oppose discovery requests in a civil suit. *McCarthy v. Sherwin-Williams Co.*, No. 2:05-CV-61-FTM-33SPC, 2005 WL 8159482, at *2 (M.D. Fla. Mar. 4, 2005). When they do, it is their burden "to justify invocation of the privilege." *Doe No. 2 v. Epstein*, No. 08-80811-CIV, 2009 WL 10667852, at *2 (S.D. Fla. Aug. 4, 2009).

"To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating and compelled." *Tropical Mktg. & Consulting, LLC. v. Glock, Inc.*, No. 6:12-CV-1388-ORL-36, 2012 WL 5431002, at *5 (M.D. Fla. Nov. 7, 2012). The party raising the privilege must also show there is "a

2

substantial and real hazard of self-incrimination." *Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364, 1369 (S.D. Fla. 2012). While they need not be under investigation, indictment, or arrest, it is not enough to declare "he would incriminate himself if forced to" answer the discovery. *Hoffman v. United States*, 341 U.S. 479, 486 (1951).

Whether a party can show he faces a "substantial and real hazard of self-incrimination . . . depends on the answers to two questions." *United States v. Belcik*, No. 8:15-MC-2-T-23MAP, 2016 WL 3922829, at *3 (M.D. Fla. July 20, 2016). "First, given [the party]'s circumstances, is his hazard for self-incrimination implicit from . . . the particular document the [motion] demands; or, alternatively, would . . . his production of a specific document furnish a link in the chain of evidence needed to prosecute [him] for a federal crime?" *Id*. "Second, did he properly invoke the privilege?" *Id*.

Trade secrets are also privileged. *See* Fla. Stat. § 90.506. In Florida, "[a] person has a privilege to refuse to disclose, and to prevent other persons from disclosing, a trade secret owned by that person if the allowance of the privilege will not conceal fraud or otherwise work injustice." *Id*. "The privilege may [also] be claimed by the person or the person's agent or employee." *Id*.

"[W]hen the trade secret privilege is asserted, [t]he party resisting discovery has the burden . . . [of] showing that the information sought is a trade secret and that disclosure may be harmful." *Hands on Chiropractic PL v.*

3

*Progressive Select Ins. Co.*, No. 618CV192ORL37DCI, 2018 WL 6983622, at *4 (M.D. Fla. Nov. 20, 2018). "[B]ut the privilege is not absolute." *Sea Coast Fire, Inc. v. Triangle Fire, Inc.*, 170 So. 3d 804, 806 (Fla. Dist. Ct. App. 2014). Information constituting trade secrets can be obtained in discovery if "there is a reasonable necessity for production[.]" *Id.* at 808.

### III. Discussion

#### A. Fifth Amendment Privilege

Defendant identifies over fifty entries he believes are protected by the Fifth Amendment. (Doc. 110-2.) Each time he invokes the privilege, Defendant claims to "maintain[] a reasonable belief that [the communication] might be used against him as an accused in a criminal prosecution." (*Id.*) It appears the source of this "reasonable belief" is that "Plaintiff, through its agent, Joseph A. Camp, expressed that a partial goal of this litigation is to obtain, and use, information to get [Defendant] arrested." (Doc. 114 at 7-8.)

As mentioned, "[t]o qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating and compelled." *Tropical Mktg. & Consulting, LLC.*, 2012 WL 5431002, at *5. If any of those elements are missing, the communication is not protected.

The Court has reviewed the messages Defendant believes are protected by the Fifth Amendment. Some, like Items 134144 and 134954, raise concerns of self-incrimination. But most depict general, non-incriminatory

4

conversations between Defendant and James McGibney, who runs a website called BullyVille. Possibly incriminatory messages are the exception here, not the rule.

But self-incrimination, on its own, does not justify Fifth Amendment protection. "[A] person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not compelled within the meaning of the privilege." *United States v. Hubbell*, 530 U.S. 27, 35-36 (2000). Voluntary statements, like the messages here, are not compelled speech.

Consider *United States v. Guia-Lopez*, where a search of the defendant's phone revealed incriminating texts. No. 22-50234, 2023 WL 5236764, at *1-*5 (5th Cir. Aug. 15, 2023). He argued this evidence should have been suppressed because it "qualif[ied] for Fifth Amendment protection," reasoning the messages were "testimonial and . . . contain[ed] incriminating information." *Id*. at *4. The Fifth Circuit disagreed, finding the text messages were "not themselves … afforded Fifth Amendment protection." *Id*. at *5. In reaching this result, the court noted that "the text messages were not compelled in the sense that the Government did not compel [the defendant] to write, send, or record th[e] text messages." *Id*. at *5.

The Fifth Circuit's reasoning flowed from the Supreme Court's decision in *Hubbell*, which found documents responsive to a subpoena "could not be said

5

to contain compelled testimonial evidence" because they "had been voluntarily prepared prior to the issuance of the summonses[.]" *Hubbell*, 530 U.S. at 36. Thus, "[p]reviously created" personal documents are generally unprotected by the Fifth Amendment. *G.K. v. D.M.*, No. CV 21-2242, 2022 WL 19403387, at *2-3 (E.D. La. Nov. 15, 2022).

Defendant seeks Fifth Amendment protection for social media messages that predate Plaintiff's discovery request. Like the defendant in *Guia-Lopez*, Defendant believes the messages are testimonial and may have incriminating information that could "be used against him as an accused in a criminal prosecution." (Doc. 110-2.) But regardless of Defendant's belief, "the Government did not compel [him] to write, send, or record the[m]." *Guia-Lopez*, 2023 WL 5236764, at *5. Thus, Defendant's Fifth Amendment claim is missing a key element: government compulsion. *Hubbell*, 530 U.S. at 35-36; *Tropical Mktg. & Consulting, LLC.*, 2012 WL 5431002, at *5. "A person cannot avoid complying with a subpoena simply because a document contains incriminating information if the creation of the document was not compelled within the meaning of the privilege." *Tropical Mktg. & Consulting, LLC.*, 2012 WL 5431002, at *5.

That said, the Fifth Amendment does shield parties from producing documents where "the act of production" would be compelled self-incrimination. *Hubbell*, 530 U.S. at 37. "The act of production doctrine . . .

6

applies when the act of producing evidence itself, without regard to content, has communicative aspects of its own." *G.K.*, 2022 WL 19403387, at *3. While Defendant cites the "act of production doctrine" in his brief, he does not explain how incrimination arises from production apart from the content of the messages. (Doc. 114 at 7.) His conclusory argument cannot justify the privilege. *Belcik*, 2016 WL 3922829, at *3; *Epstein*, 2009 WL 10667852, at *2.

Finally, the "act of production doctrine does not generally protect the contents of privately held documents." *G.K.*, 2022 WL 19403387, at *2. The social media messages Defendant seeks to shield here are personal documents, such as a journal or diary, that Defendant shared with McGibney. This means the act of production doctrine does not protect them. *Id.*

**B. Trade Secrets Privilege**

Defendant claims twenty messages depict techniques, methods, and processes related to unpublished docuseries, television shows, and social media. (Doc. 110-2.) Information that depicts a "method, technique, or process" can be a trade secret. Fla. Stat. § 688.002(4). But that information must derive independent economic value "from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use[.]" *Id.* § 688.002(4)(a).

Like the messages where Defendant claims Fifth Amendment protection, the messages he seeks to withhold under the trade secrets privilege largely

7

depict general conversations between himself and McGibney. For example, they discuss Defendant's birthday (Item 135057), the suspension of a social media account (Item 135133, Item 134359), the benefits of an Instagram business account (Item 134116), clearance of an unrelated tv show (Item 135159), how much screentime Defendant will have in an unreleased docuseries (Item 135753), and Plaintiff's fidelity (Item 135608). They also include requests to share stories and posts (Item 134113, Item 135407), public records (Item 135111), and photos and messages Plaintiff sent to third parties (Item 135424, Item 135442). These are not trade secrets.

Parts of Items 134113, 135057, 133751, and 133755 could reveal trade secrets. But it is Defendant's burden to prove their privileged status. *Hands on Chiropractic PL*, 2018 WL 6983622, at *4. And on this score, he provides only conclusory assertions. (Doc. 110-2, Doc. 114.)

For example, the second message in Item 134113 and first message in Item 135057 discuss logistics of a future documentary. But these messages would be McGibney's trade secrets, not Defendant's. Defendant asserts he is "either a partial owner or agent of the content for purposes of the media production," and thus may claim the privilege on McGibney's behalf. (Doc. 114 at 14.) These arguments, however, are conclusory and unsupported.

"To be an agent, one must be employed or authorized to act for [the principal], or transact for [the principal], or entrusted with another's business."

8

*Fed. Trade Comm'n v. Acquinity Interactive, LLC*, No. 14-60166-CIV, 2021 WL 4840585, at *5 (S.D. Fla. Sept. 29, 2021). Defendant provided two messages that suggest McGibney intended to hire him "for a couple of things." (Item 133729, Item 133800.) However, it is unclear whether this agent-principal relationship ever came to fruition. (*See* Item 133812, Item 135322, Item 135746.) What is more, the scope of Defendant's alleged agency is unknown. Defendant has not shown he is empowered to assert a trade secret privilege on McGibney's behalf.

Defendant's strongest claim for trade secret protection relates to Items 133751 and 133755. But it is impossible to tell whether the embedded videos depict techniques, methods, or processes related to making docuseries or television shows from the still frames Defendant provided. At any rate, the Court cannot say the items are privileged because Defendant has not explained whether their contents are generally known or readily ascertainable by others or shown that their disclosure would be harmful. At bottom, Defendant has not done enough to assert the trade secrets privilege over any of the messages.

Accordingly, it is now **ORDERED**:

9

1. Plaintiff's Second Motion to Compel Production of Privilege Log Withheld Documents (Doc. 110) is **GRANTED**.[2]

2. Within fourteen days of this order, Defendant must produce the withheld documents identified on his privilege log (Doc. 110-1).

**ENTERED** in Fort Myers, Florida on May 7, 2024.

_____
Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

---

[2] If a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must . . . require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5). Plaintiff does not ask for expenses. Nor has he provided any documentation to issue such an award. Accordingly, the Court cannot order expenses at this time. *See, e.g.*, *CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp.*, No. 219CV442FTM29MRM, 2020 WL 9172016, at *3 (M.D. Fla. May 1, 2020).