## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

JENNIFER COUTURE; RALPH
GARRAMONE M.D. P.A. d/b/a
GARRAMONE PLASTIC SURGERY,

        Plaintiff,

    vs.

DANESH NOSHIRVAN, et al.,

        Defendants.

Civil Case No.: 2:23-cv-00340

Hon. Sheri Polster Chappell, U.S.D.J.

**OPPOSED MOTION**

**PLAINTIFF'S THIRD MOTION FOR AN ORDER COMPELLING
DEFENDANT TO PRODUCE DOCUMENTS IN COMPLIANCE WITH
THIS COURT'S PRIOR ORDERS AT DOCUMENT NUMBERS 104 & 131
THAT DEFENDANT CONTINUES TO WITHHOLD**

**PLAINTIFF FURTHER MOVES THIS COURT TO COMPEL
DEFENDANT TO DISCLOSE HIS AGREEMENT WITH ADMITTED
COMPUTER HACKER, VEXATIOUS LITIGANT, AND FBI INFORMANT
NON-PARTY JAMES MCGIBNEY, PRODUCTION OF ALL
DOCUMENTS, THINGS, INFORMATION, AND ESI DEFENDANT
RECEIVED AND CONTINUES TO RECEIVE FROM MCGIBNEY, AND
DISCLOSURE OF THE HACKING MCGIBNEY HAS PERFORMED AND
IS PERFORMING ON DEFENDANT'S BEHALF**

Plaintiff Ralph Garramone, M.D. P.A. d/b/a Garramone Plastic Surgery

(hereinafter referred to as "Plaintiff") respectfully moves this Court for a Third

Order to Compel defendant Danesh Noshirvan ("Defendant") to comply with this

Court's Orders to produce responsive materials.  ECF Nos. 104 and 131.

## I.    INTRODUCTION

Plaintiff is forced to move this Court a third time to compel Defendant to comply with the Court's Orders dated March 15, 2024 (ECF No. 104), and May 7, 2024 (ECF No. 131) and produce responsive discovery.  Defendant continues to improperly withhold production of communications with non-party James McGibney a/k/a "@bullyville," "@realbullyville," and "Bullyville Texas" (collectively "McGibney"), documents that are within Defendant's communications with McGibney and other discovery materials described herein.

Besides the McGibney communications, Defendant can satisfy these requests by downloading his account data from TikTok and other social media platforms within the parameters set forth during the in-person discovery hearing as ordered by Magistrate Dudek on March 15, 2024, but he refuses.  ECF No. 104. For example, after the Court issued its Order, Defendant responded to Plaintiff's request for his TikTok follower data by telling Plaintiff to scroll his TikTok account to view his 1.8 million followers and produced the image below.



Next, Plaintiff moves to compel Defendant to disclose his agreement with non-party James McGibney, the interest in this action that Defendant has staked McGibney, and production of all documents, things, information, communications, and ESI defendant received and continues to receive from McGibney, including disclosure of computer hacking McGibney has performed and is performing on defendant's behalf.  The reasonableness of this request is based on Defendant's adoption and incorporation into his defense in this action McGibney's historical aggravating and harassing litigation tactics.

McGibney is a vexatious litigant with a "history of filing numerous lawsuits with willful, malicious intent to injure those who have spoken critically," of him, and to deter parties from "exercising [their] constitutional rights-specifically to truthfully criticize" him, including filing "multiple lawsuits" at the "same time making the substantially the same allegations."  *See* Exhibit E Order Awarding Attorney's Fees and Sanctions against McGibney in *James McGibney and Via View, Inc., v. Thomas Retzlaff, et al.*, 67th District Court of Tarrant County, Texas Case No.: 067-270669-14 (Jul. 21, 2016).  *See also Rauhauser v. McGibney*, 508 S.W. 3d 377 (Tex. App. Fort Worth, Dec. 11, 2014) (*rev'd* to *McGibney v. Retzlaff*, 548 S.W. 3d 816 (Tex. App. Fort Worth, Apr. 19, 2018)) (remand to determine amount of attorney's fees award against McGibney) (Retzlaff and Rauhauser collectively referred to as "McGibney I").

3

The communications with McGibney that Defendant produced are annexed hereto in chronological order as **Exhibit A,** Bates Numbered EXA001-188.  The McGibney communications confirm that during the pendency of this action McGibney has worked with Defendant to perpetuate Defendant's campaign of online and telephonic harassment of Plaintiff.  *See* EXA014, 038, 040, 096-097, 100, 103, 107, 114, 116-117, 119-122, 125, 140, 148, 152, 155, 157, and 172.

Moreover, to assist Defendant's attempts to avoid producing Defendant's communications with McGibney, McGibney filed a false affidavit, wherein, he knowingly and falsely claimed Plaintiff's counsel harassed a process server with help of a third-party named Joseph A. Camp ("Camp").  *See Affidavit of James McGibney in Support of Defendant's Opposition to Plaintiff's Motion to Compel* ("McGibney Aff.") ¶ 22 ECF No. 92-4.  However, McGibney knew when he filed his affidavit that Plaintiff's counsel did not know the process server's identity or the identity of the company she worked for, because he possessed photographs and a video recording of the service of process, where the process server did not identify herself or company, which he posted to www.instagram.com/bullyville in order to trigger this office to receive harassing calls, which it did.  Defendant's counsel possesses copies of the harassing emails Camp allegedly sent to the process server, but has not produced same.

McGibney's false affidavit and use of emails and internet to harass litigation opponents is consistent with his past tactics, whereby, McGibney was found to have engaged in "aggravating misconduct by willfully and intentionally harassing-and using confederates to willfully and intentionally harass" opponents, the "objective of which" was to punish Plaintiff's "exercise of constitutional rights…deter the exercise constitutional rights in the future, and impair [Plaintiff's] ability to retain legal counsel."  *See* Exhibit E.  McGibney's tactics included purchasing internet domains of the names, or derivatives of the names of persons and attorneys opposing him in litigation, which McGibney has done in this action. *See* McGibney purchase of domains at EXA093, 105, and 125.  *See also* Exhibit E at 7.

Furthermore, based on McGibney's history and explicit statements in communications to Defendant, Plaintiff reasonably believes that in order to fabricate claims that Plaintiff controls the alleged actions of Camp, McGibney with the knowledge and consent of Defendant and Defendant's counsel has accessed email accounts/addresses belonging to Joseph A. Camp ("Camp") without authorization ("hacked").  And has used the unauthorized access to the email accounts belonging to Camp to surreptitiously send harassing email communications to various people, including the Court, counsel for Plaintiff, and Defendant's previous attorney, which was the alleged reason Defendant's previous

counsel's motion to withdraw as counsel.  ECF 31.  Plaintiff's counsel challenged the authenticity of the alleged Camp emails and opposed Defendant's previous counsel's motion to withdraw, because the harassing emails referenced in the motion were identical to the harassment Defendant and his cult-like following has directed at Plaintiff during the previous 18 months.  ECF 35.  Further, on the same date that Defendant's previous counsel's motion to withdraw was filed, Defendant published a series of TikTok videos wherein he commanded his cult-like followers to file fictitious criminal reports against Plaintiff and contact local news media with negative news reports about Plaintiff.  *Id.*

Plaintiff's reasonable belief in Defendant's reliance on information hacked by McGibney to influence this action is further supported by McGibney's admission that he is a computer hacker, who claims to be a member of hacking group Anonymous, and in the communications Defendant produced, McGibney told Defendant "I'm about to do to JoJo what I did to Michael…I just figured out his Yandex [email] login."  *See* EXA086.  Further, McGibney proudly boasted to Defendant that he "just wasn't as good of a hacker back then…but I am now@!" (EXA162), and told Defendant "JoJo won't be using that mass text bot because that entire server farm just went bye-bye."  *See* EXA163.

Furthermore, according to the Walker Wicevich, Special Agent, Federal Bureau of Investigation, McGibney is a cooperating FBI informant in criminal

cases "involving computer-related crimes, including cyberstalking and online harassment." *See* **Exhibit B,** Affidavit of Walker Wicevich, Special Agent, Federal Bureau of Investigation, dated June 22, 2020, filed in support of the United States Attorney's Motion to Quash subpoena for James McGibney to be deposed in the civil action known as *Jason Lee Van Dyke v. Thomas Christopher Retzlaff a/k/a Dean Anderson, d/b/a BV Files, ViaView Files, L.L.C., and Via View Files*, Case No. 4-18-cv-00247-ALM, (E.D. Tex. July 2, 2020) ECF No. 188-1. McGibney confirmed he is an FBI informant when he told Defendant on September 23, 2023, "Go to my last post.  I didn't mention him by name (yet) but JoJo [Camp] is one of the people that I am a federal witness against." *See* EXA091.

Lastly, to illustrate his hacking prowess, in multiple communications with Defendant, McGibney inserted screen images of interfaces (terminals) for hacking tools he was using, such as image of Evil Droid interface, a tool he uses to hack Android cell phones, and an image of an interface for database hacking tool/process SQL injection.  *See* EXA159, EXA162-163, and EXA172-173.

## II.   <u>PROCEDURAL BACKGROUND</u>

1.     On October 16, 2023, pursuant to *Rule 34 of the Federal Rules of Civil Procedure 34*, Plaintiff served Defendant its First Requests for Production of Documents (the "Requests") and electronically stored information ("ESI") related

to Defendant's accounts on TikTok and other social media platforms and were returnable November 15, 2023.  On November 15, 2023, Defendant was granted a 60-day extension to respond to the Requests, which extended the return date to January 15, 2024.

2.      On January 11, 2024, Defendant moved the Court for a second extension because Defendant has "1.7 million followers in TikTok, 162 thousand followers on Instagram, and thousands of followers on multiple other platforms." ECF 87 ¶ 10.  Defendant further claimed Plaintiff's Requests for his TikTok account data was improper because it required him to create new documents.  *Id.*

3.      On January 12, 2024, Plaintiff opposed Defendant's second motion for an extension in time to respond and provided a link to TikTok's instructions that Creators (TikTok refers to its users as "Creators"), such as Defendant, must follow in order to download their TikTok data through their TikTok profile. *Plaintiff's Opposition to Defendant's Second Motion for Extension of Time*, ¶ 2 at 4-5 ECF 89.  TikTok will produce Defendant's data as either an exportable text file ("TXT") or exportable machine readable ("JSON") file that Defendant can produce without creating a new document.  *Id.*

4.      Through his TikTok profile, which he uses everyday Defendant can download his account data in "three categories: Overview, Content, and Followers," by selecting "Creator Tools," then "Analytics," and finally choosing

8

the tab that corresponds to the data category he wants.  ECF 89 ¶ 2 at 4-5.

According to TikTok's instructions, within a few days of the Creator's request his

account data is available as either an exportable TXT file or exportable JSON file

in the in the Creator's profile under the category "download your data," in the tab

labeled "download data."  ECF 89 ¶ 2 at 4-5.  TikTok's data set "includes the

number of likes and comments videos received, number of times a video was

shared, number of video views, profile views, ***followers***, comment history, and

chat history."  *Id.*

     5.     On January 15, 2024, the Court denied Defendant's motion for second

extension, but granted Defendant a three-day extension.  On January 18, 2024,

Defendant produced written responses and objections to Plaintiff's Requests.

Defendant withheld 137 communications he exchanged with McGibney in a one

line privilege log that described these communications as "[c]orrespondence

between James McGibney or Bullyville.com and Noshirvan," and claimed the

communications were protected by the clergy-penitent privilege and Florida's

Trade secrets privilege.  *Defendant's Brief in Opposition to Plaintiff's Motion to

Compel*, *Exhibit 3*, ECF No. 92-3 at 30.

     6.     On January 26, 2024, Plaintiff filed an opposed motion to compel

Defendant to produce the withheld documents.  ECF No. 90.  On March 15, 2024,

Magistrate Dudek convened an in-person discovery hearing on Plaintiff's motion.

At the conclusion of the discovery hearing, Magistrate Dudek ordered Defendant to produce an amended privilege log that listed each withheld document and the privilege claimed on or before March 29, 2024.  Magistrate Dudek further ordered Defendant to produce responsive discovery to Plaintiff's Requests consistent with the "parameters discussed [during the discovery hearing] within 30 days," which included the data download steps described in paragraphs five (5) and six (6) above.  ECF No. 104.

7.    On March 29, 2024, Plaintiff received Defendant's amended privilege log, wherein Defendant waived the clergy-penitent privilege and instead withheld seventy-eight (78) documents under the "5th Amendment" privilege and Florida "trade secrets [under Fla. Stat.] §90.506" privilege.

8.    On April 2, 2024, the parties conferred by telephone to discuss the amended privilege log and disagreements concerning the privileges claimed.  On April 4, 2024, Plaintiff filed its Second Motion for an Order to Compel Defendant to Produce Documents withheld in his Amended Privilege Log with a Request for an In-Camera Review.  ECF 110.

9.    On or about April 12, 2024, Defendant produced his amended written responses to Plaintiff's Requests and a thumb drive that contained communications with McGibney.  However, the thumb drive was corrupted and could not be

opened.  On or about May 6, 2024, Plaintiff received Defendant's reproduced thumb drive.

10.    On April 23, 2024, the Court ordered Defendant to produce the documents withheld in his amended privilege log for in-camera.  ECF 119.  On May 7, 2024, the Court completed its in-camera review and ordered Defendant to turn over all documents withheld in its  amended privilege log within fourteen days of the Order.  ECF No. 131.

11.    On June 20, 2024, Plaintiff served Defendant a Second Demand for Compliance with the Court's Order.  A copy of Plaintiff's Second Demand for Compliance is annexed hereto as Exhibit F.

### III.    DEFENDANT'S NON-COMPLIANCE WITH THE COURT'S ORDER DATED MARCH 15, 2024 ECF No. 104

12.    On May 8, 2024, counsel met and conferred via telephone to discuss Defendant's non-compliance with the Court's Order dated March 15, 2024, specifically that Defendant did not produce responsive documents to Plaintiff's Requests Numbers 1, 5, 8, 10, 13, 16, 17, and 27 within the parameters set forth in during the in-person hearing.  ECF No. 104.  Defendant's counsel requested Plaintiff's counsel memorialize the conversation in a letter and cite examples of Defendant's non-compliance.

13.    On May 9, 2024, as requested, Plaintiff's counsel memorialized the previous day's phone conversation concerning Defendant's non-compliance with

the Court's Order in a letter sent to Defendant's counsel ("First Demand"), which

cited examples of Defendant's non-compliance.  A copy of Plaintiff's First

Demand is annexed hereto as **Exhibit C**.

14.    On May 16, 2024, Defendant's replied to Plaintiff's First Demand,

wherein, he simply reiterated the arguments against production he made during the

hearing before Magistrate Dudek.  A copy of counsel for Defendant's reply letter is

annexed hereto as **Exhibit D**.

15.    Plaintiff's requests can be satisfied by Defendant producing a

download of his TikTok data, but he refuses to do so:

> a.  Request Number 1 required Defendant to produce all comments on his
> TikTok videos Defendant published "where Plaintiff and/or Jennifer
> Couture were the subject."  Defendant produced a fraction of the
> comments, including: (1) Screenshot_20240410_010426_TikTok.jpg
> that shows at least 4,066 comments posted to said video, but
> Defendant produced only 50 comments; (2)
> Screenshot_20240410_011844_TikTok.jpg shows at least 555
> comments were posted to this video, but Defendant produced four
> comments ; and (3) Screenshot_20240410_011941_TikTok.jpg shows
> at least 638 comments were posted to this video, but Defendant
> produced 50.   Defendant continues to argue he is not required to
> produce this request, because the requested information is "publicly
> and equally available" to Plaintiff "through TikTok's website."
> Exhibit D at 1.
>
> b.  Request Number 5 required production of "all payments Defendant
> received as tips, gifts, cash, Live subscription fees through TikTok
> from January 26, 2022, through the present…").  Defendant has not
> produced any.
>
> c.  Request Number 8 required production of the followers of TikTok
> account @thatdaneshguy.  Defendant refuses to produce a download

of his TikTok data.  Rather, Defendant circled  the below image where
he circled 1.8 million followers and replied that Plaintiff can "simply
click on 1.8M followers tab on [Defendant's] TikTok page and scroll
through the followers."  Exhibit D at 2.



Defendant's refusal to produce his TikTok follower data is planned
non-compliance.  In a recorded phone conversation embedded in
McGibney communications between Defendant and McGibney, on
October 17, 2023, Defendant informed McGibney of Plaintiff's
requests for Defendant's communications with him.  Defendant
assured McGibney that he will not produce "our communications"
and that Defendant's counsel told Defendant that they will reply "no"
to this request, and only provide Defendant's social media name, and
that Plaintiff can get the followers, because Defendant does not have
the time.  EXA123.

d.  Request Number 13 required production of all enforcement actions
taken by TikTok against @thatdaneshguy since it was created.
Defendant produced actions taken against the account only from
February 19, 2024, until April 5, 2024, which consisted of screen
images titled "Account Warning," "You have accumulated strikes
from previous violations…The next violation could result in being
prevented from accessing some features," and consists of six (6)
videos that violated the rules and two (2) comment violations against
his account under the header "Recent violations."  Defendant replied
he "produced documents in accordance with the Court's ruling" and
has no other responsive documents.  This data is available in a
download of his TikTok data, but Defendant refuses to download it.

e.  Request Number 16 required production of all communications
between Defendant and TikTok moderators from January 26, 2022,

through the present.  Defendant replied by stating the "Court limited this request to documents obtainable through TikTok's portal."  *See* Exhibit at 2.  This is an incorrect characterization of the Court's Order, because if it were correct, it would mean the Court permitted Defendant to withhold communications so long as they were received as emails, text messages, direct messages, or any form other than through TikTok's portal, which is not what the Court ordered.

Further, Defendant has a moderator named Cindy, but he has not provided any communications with her.

f.  Request Number 17 required production of all communications between Defendant and any non-moderator TikTok employees, from January 26, 2022, through the present.  Defendant refuses to produce responsive documents on the same grounds as Request Number 16.

16.  Defendant redacted numerous documents and images in his communications with the same distinct red/orange color, including many hand drawn.  In spite of the obvious redactions, counsel for Defendant replied that "there are no redactions of any screenshots produced in discovery.  If you poof (sic) to the contrary, please provide same for review.  If not, please stop making unfounded accusations."  *See* Exhibit D at 3.

17.  Defendant redacted his last name from case related documents.  *See* EXA151, EXA160, and EXA161; Defendant redacted an SQL Injection user interface embedded in a McGibney communication.  *See* EXA159; and Defendant redacted an embedded email contact form.  *See* EXA167.  Further, Defendant used a screen draw tool in the same red color as his redactions to circle and highlight information in his communications with McGibney.  Defendant circled a footnote

from a case filing the text of which Defendant and McGibney enjoyed.  *See* EXA129-130;  Defendant circled a crude statement made about Ms. Couture in a case filing, where he remarked "We're off to a good start."  *See* EXA154.

## IV.   DEFENDANT HAS NOT PRODUCED ALL MCGIBNEY COMMUNICATIONS

18.   The majority of the McGibney communications appear to be Instagram messages, because they feature Bullyville's logo in the messages. Defendant's production shows that he regularly communicated with McGibney usually going no more than three days without communications.  *See* EXA001-188; *See also Affidavit of James McGibney,* ¶¶ 14-15, ECF No. 92-4.  However, it is evident from plain indicators, such as date/time stamps, suddenly and abruptly starting and/or ending communications that Defendant has not complied with the Court's Order to produce all communications with McGibney.

19.   There are several large gaps between communications where the pickup conversation is out of sync with the previous communication, including the following:

a. October 11, 2022, to October 19, 2022:  Defendant produced file named Screenshot_20240115_133928_Instagram.jpg, dated October 11, 2022, where McGibney sent Defendant a communication that reads "Now you need to get one of your fans to tattoo "Danesh" on their skull. Lol."  This is the bottom communication and includes a link to https://www.instagram.com/p that is only visible by the top of the letters.  *See* EXA021.  The next communication produced is file named Screenshot_20240115_134010_Instagram.jpg, where the top communication is not dated, but to create the appearance that the

Instagram link in the previous message carried over, a link to a tweet https://twitter.com/realbullyville/status/1582549841959604224?t=vlda8gKXol8iloFFaHvbCA&s=19 was inserted.  *See* EXA022.  These communications are not related.  The subject matter is suddenly changed and the communication immediately after the top message is dated October 19, 2022.  *See* EXA022.

b. October 23, 2022, to December 6, 2022:  Staying with file Screenshot_20240115_134010_Instagram.jpg the bottom communication is dated October 23, 2022, but the outgoing communication was not produced, and the next communication Defendant produced was dated December 6, 2022, and was produced as if it were a continuation of the above message, wherein the top communication is a reply from Defendant where he says "That's incredible," but Defendant did not produce the communication Defendant was replying to.  EXA022-023.

c. March 15, 2023, to April 1, 2023: Defendant's file named Screenshot_20240115_134412_Instagram.jpg dated March 15, 2023, and the next file produced Screenshot_20240115_134421_Instagram.jpg  is dated April 1, 2023.  See EXA050-051.  On April 1, 2023, Defendant tells McGibney "Oh my God I got the same email you did or a similar one." EXA051.  However, the email in question concerns a third-party asking Defendant to stop using the term pedophile, and a copy of the email was embedded in the communication.  *Id.*  However, unless McGibney informed Defendant he received said email during the 16-day gap from March 15, 2023, to April 1, 2023, that Defendant did not produce, Defendant could not have known he received the same email as McGibney, because based on Defendant's production, McGibney never informed Defendant he received the email.  *Id.*

d. April 5, 2023, to May 21, 2023: Screenshot_20240115_134556_Instagram.jpg is dated April 5, 2023, and includes a link Https://www.instagram.com/p/Cqop82tuEWN/?igshid=YmMyMTA2M2Y= to a Bullyville Instagram post where McGibney boasts "sometimes I viciously and ruthlessly hack (allegedly) revenge porn websites"  EXA053.  Although Defendant mentioned Bullyville in an Instagram post on May 19, 2024, their next communication occurred

May 21, 2023, where McGibney states "…alleged hacking is fun!" See EXA054 file Screenshot_20240115_134601_Instagram.jpg. EXA054.

    e.   There are numerous recorded telephone conversations embedded within the McGibney communications, but Defendant edited the recordings in such a way that only his voice is heard.  Plaintiff demands production of unedited recordings of these phone calls.  *See* EXA107-108, 123, 128-129, and 141.

20.    Furthermore, on multiple occasions McGibney tells Defendant about his communications concerning this action with Defendant's counsel Nick Chiappetta ("Chiappetta"), but those communications have not been produced. One of the first times McGibney informed Defendant that he spoke to Chiappetta was October 31, 2023, where McGibney tells Defendant that he emailed Chiappetta to tell him "his footnotes were the best."  *See* EXA130.  The footnote McGibney referenced is found in *Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss*, 2:23-cv-00340 at 2 *fn.* 1 (M.D. Fla. May 22, 2023) ECF 69.  In the footnote, Chiappetta said that "this court has received emails from the "stalker" referred to in the "Podcast."  The emails Chiappetta is referencing in the footnote are emails that were allegedly sent by Camp to Magistrate Dudek's chambers on October 9, 2023.

21.    Plaintiff reasonably believes based on McGibney's statement to Defendant that he "figured out his [Camp's] Yandex login," his admission of hacking, and findings during previous litigation that McGibney engaged in

"aggravating misconduct by willfully and intentionally harassing-and using confederates to willfully and intentionally harass," that McGibney on Defendant's behalf is the source of the emails sent to Magistrate Dudek's chambers on October 9, 2023.  EXA086 and 162; *See also* EXE001-002.  Moreover, when Plaintiff's counsel confronted Chiappetta with this allegation, Chiappetta did not deny the allegation, instead he replied that it was "psyc ops" (sic) an apparent reference to psychological operations, in other words he admitted it.  A copy of the email with Chiappetta's response is annexed hereto as **Exhibit G**.

22.     Defendant also produced communications between Defendant and an entity who was not previously disclosed called "Bullyville Texas" ("BT").  The BT communications feature a distinct color scheme similar to cell phone text messages and do not contain Bullyville's logo and, but BT is McGibney.

23.     The BT communications Defendant produced are between December 16, 2023, and January 12, 2024, wherein McGibney is celebrating his harassment of Ms. Couture on Defendant's behalf.  *See* EXA184 -187.  Plaintiff demanded production of all BT communications, and Defendant's counsel replied "all communications between Bullyville Texas and Noshirvan have been produced" but BT communications between McGibney and Defendant's counsel have not been produced.  *See* Exhibit C at 3.

## V.    <u>RULE 11 SANCTIONS</u>

Plaintiff seeks sanctions under Federal Rule of Civil Procedure 37(b), which is "applicable when a party fails to obey an order to provide or permit discovery." Consumer Fin. Prot. Bureau v. Brown, 69 F.4th 1321, (11th Cir. 2023). When reviewing discovery motions, "wide discretion" is proper because "[a] judge's decision as to whether a party or lawyer's actions merit imposition of sanctions is heavily dependent on the court's firsthand knowledge, experience, and observation." *Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996). "If a party fails to obey an order  to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b). "Sanctions for violation of an order are only appropriate if the order stated in specific and clear terms what acts were required or prohibited." *In re Se. Banking Corp.*, 204 F.3d 1322, 1332 (11th Cir. 2000).

Here, Defendant refuses to follow the simple steps within the parameters set forth in the discovery hearing, which enable him to simply download his social media account data in an exportable format. Further, Defendant's terribly poor curation of the McGibney communications highlights Defendant's continued withholding of discovery he was ordered to produce.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order compelling Defendant to produce the items described herein that Defendant continues to withhold, compel full disclosure of McGibney's interest in this case

and the acts McGibney has performed on Defendant's behalf, and sanction

Defendant for his willful refusal of a Court's Order.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for Plaintiff certifies that on June 20, 2024, he conferred with

Defendant's counsel via telephone and counsel for Defendant opposes this motion.

June 28, 2024

_____
Patrick Trainor, Esq.
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorney for Plaintiffs*

## CERTIFICATION

I certify that the foregoing statements made by me are true.  I am aware that

if any of the foregoing statements made by me are knowingly and/or willfully

false, I am subject to punishment.

Dated:  June 28, 2024

_____
Patrick Trainor, Esquire (Attorney ID 242682019)

## CERTIFICATION OF SERVICE

20

I hereby certify that on June 28, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Nick Chiappetta
Chiappetta Trial Lawyers
2101 Vista Pkwy, Suite 258
West Palm Beach, Florida 33411
P: (561) 768-4500
F: (561) 7686-4600
nick@chiappettalegal.com
*Attorney for Defendant Danesh Noshirvan*

Dated:  June 28, 2024          _____
                               Patrick Trainor, Esq.