IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JENNIFER COUTURE; RALPH
GARRAMONE M.D. P.A. d/b/a
GARRAMONE PLASTIC SURGERY,       Case No. 2:23-cv-00340-SPC-KCD

Plaintiffs,                                    Judge: Hon. Sheri Polster Chappell

vs.

DANESH NOSHIRVAN a/k/a
@THATDANESHGUY

Defendant.
_____/

**DEFENDANT, DANESH NOSHIRVAN a/k/a @THATDANESHGUY's,
RESPONSE IN OPPOSITION TO PLAINITFF, RALPH GARRAMONE M.D.
P.A. d/b/a GARRAMONE PLASTIC SURGERY's, THIRD MOTION COMPEL
PRODUCTION OF DOCUMENTS IN COMPLIANCE WITHTHIS COURT'S
PRIOR ORDERS AT DOCUMENT NUMBERS 104 & 131 AND MOTION TO
COMPELDISCLOSURE OF NONEXISTENT AGREEMENT WITH NON-
PARTY JAMES MCGIBNEY**

Pursuant to Local Rule 3.01(b) defendant, Danesh Noshirvan ("Noshirvan"),

by and through undersigned counsel, files this Response to plaintiff, Ralph

Garramone M.D. P.A. d/b/a Garramone Plastic Surgery's ("GPS") Third Motion

Compel  Compliance Court's Prior Orders (Dkts. 104 and 131),  and  Motion to

Compel disclosure of Nonexistent Agreement With Non-Party James Mcgibney

(Dkt. 143), and states as follows:

I.      **Introduction**

GPS's claims are comparable to the Titanic. No matter how many buckets of water are thrown overboard – the ship still sinks – it simply takes on too much water. Similarly, GPS attempts to throw mud in hopes that something sticks because it knows the facts – like water entering a sinking ship – are mounting. To deflect the fact that Noshirvan has direct evidence that: (1) Joseph A. Camp was seen on multiple occasions in GPS's office in meetings with Dr. Ralph Garramone and Jennifer Couture in May-June of 2022; (2) Jennifer Couture wore Dr. Allison Yee's black wig in Papa's Butcher shop while she distributed defamatory flyers of Noshirvan; (3) Dr. Garramone and Jennifer Couture took two GPS employees with them to Pennsylvania in May of 2022 to hand out, or place, defamatory flyers throughout Noshirvan's hometown of Mansfield, Pennsylvania;  (4) GPS's ESI search term report for emails (in the 1218 Case) hit nearly 300 times for Joseph A. Camp and his aliases. A true and correct copy of the ESI report is  attached as **Exhibit 1**.  Scared that the walls are closing in like a boobytrap in an Egyptian pyramid,  GPS through Mr. Trainor, makes scurrilous and discreditable allegations founded on nothing more than Mr. Trainor's "gut feeling" to create misdirection. There is no doubt that the real Joseph A. Camp has direct ties to Jennifer Couture, Dr. Ralph Garramone, GPS and Mr. Trainor. The evidence is overwhelming and direct. There are multiple videos of the real Joseph A. Camp discussing his connection to Mr. Trainor and the ADL and explaining his part in the conspiracy to defame and destroy Noshirvan's reputation. However, the really damming

evidence comes from Dr. Ralph Garramone himself. When Dr. Ralph Garramone was partially deposed as GPS's corporate representative, his testimony attempted to separate GPS from Joseph A. Camp. In doing so, he implicitly implicated himself, i.e., Dr. Ralph Garramone knows Joseph A. Camp.

GPS and Mr. Trainor, who are now under what is arguably extreme pressure, are simply directing a campaign of misinformation – founded on nothing more than a sound bite taken out of context. Specifically, Mr. Trainor relies on unauthenticated, hearsay documents lacking in foundation, to distort context and falsely claim: (1) that a nonexistent agreement exists between Noshirvan and McGibney; (2) that Noshirvan "continues to improperly withhold production of communications with non-party James"; (3) that Noshirvan can "download [the requested] data from Tiktok"; (4) that Mr. Trainor did not know the process server's identity by February 06, 2024 – 3 weeks after the letter was served; (5) that Defendant's counsel did not produce the email correspondence between Joseph A. Camp and WeServeNJ, LLC through attorney, Alex Vays; (6) that McGibney allegedly filed a false affidavit. Notably, Mr. Trainor does not identify what statement in the affidavit was allegedly false. Throughout its motion, GPS makes bold assumptions by stacking multiple false inferences – without regard to damage it imposes on innocent non-represented nonparties. GPS's allegations are nothing more than fiction created by Mr. Trainor.

In creating  this misinformation campaign, Mr. Trainor not only comes violently close to committing fraud on this Court – but weaponizes litigation privilege to directly defame James McGibney, Noshirvan, and the undersigned, with provably false allegations. In doing so, Mr. Trainor has placed his name, power, and perceived authority as a lawyer,  behind GPS's patently false allegations. Mr. Trainor made a choice.  Mr.  Trainor should be required to show cause and prove the veracity of the allegations made in Dkt. 143.

GPS's motion (Dkt. 143) like this entire case has been nothing more than a fishing expedition. Mr. Trainor would have been better off pursuing a bill of discovery than maliciously prosecuting a case where GPS improperly  made allegations in the Second Amended Complaint knowing the elements for the remaining causes of action cannot be met.  Simply put, Mr.  Trainor's intent in this litigation was to find a "work around" for 47 U.S.C §230. (Ex. 2, p. 3). A complete copy of email correspondence is attached as **Exhibit 2**. Nothing more. Consequently, GPS knowing that it cannot meet the elements of its remaining causes of action, now ask this Court to create nonexistent facts by judicial fiat in a discovery motion. Specifically, GPS improperly requests the Court "to compel [Noshirvan] to disclose his [nonexistent] agreement with non-party James McGibney." GPS's request screams desperation, is outside the scope of this Court's Article III powers, and is otherwise completely inappropriate. GPS knows its case is ending.

## II.     Factual Background

### a.  This Case

The Dunkin Donuts incident occurred on January 26, 2022. By GPS's own testimony, any alleged harm received by unknown individuals occurred between January 27, 2022, and ended by December of 2022[1]. Garramone Tr. p. 80, ¶¶ 8-23, P. 81-2. A copy of Dr. Ralph Garramone's adjourned deposition transcript is attached as **Exhibit 3**.  GPS filed this lawsuit on May 22, 2023. Dkt. 1. GPS is the only plaintiff remaining in this action. Dkt. 111. And its remaining claims are narrow and limited. *Id*. p. 8. ("only two claims remain… Those claims [are]—tortious interference and conspiracy to tortiously interfere…."). The sole defendant is Noshirvan. However, Mr. Trainor attempts to litigate Jennifer Couture's ("Couture") extinguished claims despite GPS's own corporate representative testimony. See EX. 3. This Court previously addressed cyberstalking and harassment claims and held that "a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim." *Id*. p 5 (quoting *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007).

GPS admitted that "[t]here was no breach" "of contract" or relationship. Garramone Tr. p. 96, ¶¶1-24, p. 97. And, that Noshirvan did not have knowledge as to patients or contracts and did not intend to procure a breach thereof . Garramone

---

[1] Noshirvan first spoke to James McGibney On September 07, 2022. See correspondence turned over for the Court Ordered In Camera inspection.

Tr. p. 89 and 96. Further, GPS's remaining claims stem solely from negative anonymous Google reviews that Noshirvan did not post. Garramone Tr. p. 139-146, 151-152, 156-157.

### b. Discovery

Noshirvan has produced all the requested documents within his possession and complied with this Court's Orders. GPS, through its counsel, Mr. Trainor on the other hand, do not want to participate in discovery in this case. See Dkts. 138, 140 and 142.

### c. McGibney

James McGibney's first communication with Noshirvan occurred on September 07, 2022. See Dkt. 143-1, Ex. A, P. 2. James McGibney operates a passive website (https://jamesmcgibney.com/isanyoneup) and Instagram account - @bullyville.com. See https://www.instagram.com/bullyville/. Neither account has directly contacted GPS (as far as the undersigned is aware). So far nothing that has been posted on Bullyville.com appears to meet the definition of "harass." See §784.048, Fla. Stat. Furthermore, GPS bears the burden of proving lack of "legitimate purpose." Statements or allegations made by counsel (Mr. Trainor) are simply insufficient as a matter of law. As is attempting to silence a party or non-party because they exposed the truth – a truth GPS does not want to admit.

For example, Mr. Trainor claims that he was harassed because of an internet post by Bullyville. And, that he did not know the process server, Anabela Pinto's

identity. However, McGibney posted proof of service to Bullyville.com on February 05, 2024. See https://www.instagram.com/p/C2-_7dQPjLt/?img_index=2. After publication, a simple Google search would easily identify Ms. Pinto and her place of employment. Interestingly, on February 06, 2024, Joseph A. Camp began emailing Alex Vays and WeServeNJ, LLC requesting that they contact Bullyville.com to remove the February 05, 2024, Instagram post. A true and correct email correspondence on February 06, 2024, between Alex Vays and Joseph A Camp is attached as **Exhibit 4.**  On the last page, Joseph A. Camp emailed Mr. Trainor directly. On February 07, 2024, Joseph A. Camp, again, emailed Alex Vays. In this email chain, Joseph A. Camp speaks about Mr. Trainor on three separate occasions. A true and correct email correspondence on February 07, 2024, between Alex Vays and Joseph A Camp is attached as **Exhibit 5**.

III.    **Response to GPS's claim that Noshirvan did not comply with Court Order Dated March 15, 2024 Ecf No. 104**

GPS makes a big "to-do" about how information can be downloaded from Tiktok. See Dkt. 143, p. 8. However, on Tiktok's website, they expressly state that "[s]ome data may not be available to download, such as data that affects the privacy of others."    See    https://support.tiktok.com/en/account-and-privacy/personalized-ads-and-data/requesting-your-data.   The federal Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2713, prevents disclosure of the information GPS requested. Stated differently, the SCA prevents Tiktok from

allowing its creators access to third-party content including communications.  To illustrate this point, GPS complains that Noshirvan did not provide access to his 1.8 million followers. Dkt. 143, p. 2.  Noshirvan was unable to reproduce a copy of a list of his 1.8 million followers. However, Noshirvan did make the list contained on Tiktok's server publicly available. And, Mr. Trainor was informed that all he had to do was click on the "1.8M" logo on Noshirvan's Tiktok profile to review Tiktok's list of his followers.

GPS's counsel was advised on May 08, 2024, of Noshirvan's production of GPS's discover requests numbered "1, 5, 8, 10, 13, 16, 17, and 27."  The undersigned sent Mr. Trainor a detailed letter explaining in depth how his responses were compliant and proper. A copy of May 16, 2024 letter is attached as **Exhibit 6**.  GPS does not claim that it did not receive videos of GPS. See Ex. 7, p. 1. A copy of GPS's May 09, 2024, letter is attached as **Exhibit 7**. Rather GPS takes issue with the comments. However, as previously explained, the SCA prevents all social media applications from disclosing third-party communications and content.  Thus, "Noshirvan produced all videos wherein [Couture or GPS] was referenced and comments to the extent Tiktok's server allowed him access." Ex. 6, p. 1. Tiktok's servers auto-generate the list of comments. This means that each time you review a video, a different set of comments may appear. This is especially true when a video has hundreds or thousands of comments. Compare with Dkt. 143, ¶15.a.

GPS next argues that Noshirvan did not comply with its fifth request for production. However, Noshirvan responded by stating "none." See Ex. 6p.2-3. GPS cannot simply wish documents into existence. GPS then argues that Noshirvan did not comply with its eighth request for production. Noshirvan responded "he is not able to recreate the requested list." Noshirvan set is account to public." Noshirvan then gave instructions for GPS to obtain the information from Tiktok's server. GPS then falsely claimed that Noshirvan's "refusal to produce his TikTok follower data is planned non-compliance" and that a recording exists where Noshirvan allegedly said "he will not produce "communications" with Bullyville "and that Defendant's counsel told Defendant that they will reply "no."" This recoding does not exist. The undersigned will play the recording at an in-person hearing to show the lack of candor and context in GPS's allegation.

GPS next argues that Noshirvan did not comply with its thirteenth request for production. Noshirvan produced all responsive documents from Tiktok – as required by this Court's Order. Noshirvan has no other responsive documents. See Ex. 6. GPS then argues that Noshirvan did not comply with its sixteenth and seventeenth requests for production. Noshirvan replied "none" to both. See Ex. 6. GPS takes issue with the Court's ruling, but that issue has nothing to do with Noshirvan's compliance. See Dkt. 143, ¶15.e. GPS curiously alleges that a moderator named Cindy exists without any explanation. Noshirvan denies GPS's unfounded assertion and reaffirms that no documents exists within the parameters of this Court

Order.   In Paragraph 16 of Dkt. 143, GPS again, makes founded allegations of "redactions." Specifically, the redactions found in EXA 151, 160 and 161, are redactions on public posts, posts later shared with James McGibney in their posted format.  GPS now requests Noshirvan to modify the original format of the shared public posts. Noshirvan was order to provide the communications between himself and Bullyville in a nonmodified exist format.  Noshirvan complied. See Dkt. 143-1 Ex. A1-A188. Further, when questioned if proof existed for the alleged redaction, Mr. Trainor stated he had no proof – only a gut feeling. Noshirvan is not responsible for Mr. Trainor's lack of technical understanding.

Next, GPS claims Noshirvan "redacted an SQL Injection user interface embedded in a McGibney communication." See Dkt 143, EXA159. However, this is post created by Bullyville, on Instagram, and shared with Noshirvan.[2] Noshirvan provided a copy of the communication in original format.  GPS's remaining complaints are not redactions – and the communication is in its original format. See Dkt143-1,EXA129-130, and 154. EXA167 is a post shared by Bullyville to Noshirvan -  provided to GPS in its original format. GPS is simply wasting Noshirvan's and this Court's time with nonsense.

## IV.    McGibney Communications

---

[2] https://www.instagram.com/p/C1Pg9X4Au15/
https://systemweakness.com/sql-injection-attacks-53e942aae1f8
https://www.instagram.com/p/C1sfBpviEoR/
https://www.youtube.com/watch?v=ifpu9NBMM24

GPS declares it is self-evident that the "plain indicators, such as date/time stamps," "suddenly and abruptly starting or stopping" "that Noshirvan has not complied with the Court's Order to produce all communications with McGibney. The absurdity of GPS's position needs no further discussion. GPS statements predicated on multiple false inferences defies common sense. Some allegations are simply false.  Communications are not linear.  People communicate when they have something to say. The gaps in date/time show where one conversation left off and another conversation started. It is not uncommon for acquaintances to  have several days pauses between communications. In paragraph 19.a.-b.,  GPS alleged the screenshots between Screenshot_20240115_133928 and Screenshot_20240115_134010 were not produced. See also Ex.8. A true and correct copy of GPS's letter dated June 20, 2024, is attached as **Exhibit 8.**  GPS first raised this issue in its June 20, 2024, letter. On July 02, 2024 – 12 days later, the undersigned emailed the documents to Mr. Trainor – thinking a syncing issue occurred. A copy of the email correspondence is attached as **Exhibit 9.** Mr. Trainor confirmed via email that those Screenshots: 20240115_133932, 20240115_133935, 20240115_133939, and 20240115_134006, have already been produced. *Id.*  Further, the link to the Instagram post is completely visible and contained in  screenshot 20240115_133932. Thus, GPS allegation is patently and provably false.

In paragraph 19.c.,  GPS attempts to imply a missing communication between Screenshots: 20240115_134412 and 20240115_134421 – reproduced below.



Despite whatever GPS is attempting to allege, the screenshots make clear that

the March 15th communication ended with Bullyville stating "I'm sorry about your

dad." The April 1st communication started a new conversation – with Noshirvan

stating "Oh my god." GPS erroneously alleges Noshirvan "could not have known

he received the same [or a similar] email as McGibney based on [Noshirvan's]

production." Dkt 143. P. 16. However, GPS forget cellphones exist and Bullyville

actively posts on a passive social media account. By simply making unfounded

allegations without proof - GPS fails to meet its burden – and show noncompliance

with this Court's Order with actual facts. Logic deficient, unsubstantiated

conclusory gut feelings cannot win the day. Noshirvan cannot produce what does

not exist.

In paragraph 19.d., GPS attempts confuse. The link provided goes to Bullyville's instagram account and is about HunterMoore.[3] It has nothing to do with this case. Noshirvan expressly rejects Mr. Trainor's attempt to utilize unauthenticated, non-party hearsay lacking in contexte, as fact. This is simply misdirection. Mr. Trainor is simply trying to change the narrative to James McGibney – because he knows Noshirvan can prove direct ties between Joseph A. Camp, GPS, Dr. Garramone, Jennifer Couture, and Mr. Trainor.[4] Simply put, this is gaslighting at its finest.

In paragraph 19.e., GPS claims that numerous recorded telephone conversations were embedded within the communications between Noshirvan and Mcgibney. Then, without any evidence, alleges that the recordings were "edited." With all due respect, Mr. Trainor needs to reseach the term "audio message." For all intents and purposes, they are simply an audio version of a text message – i.e., a oneway voice recording.[5]

---

[3] https://www.instagram.com/p/Cqop82tuEWN/?igshid=YmMyMTA2M2Y=

[4] In the 1218 Case, Mr. Trainor asserted the following objection "Trainor objects … the grounds that Noshirvan's document production in the related actionknown Couture v. Noshirvan, 2:23-cv-00340 has confirmed that Noshirvan associate James McGibney has gained unauthorized access a/k/a hacked account(s) belonging to Joseph A. Camp and has manipulated, fabricated, and created documents and ESI that **does not exist but for** McGibney's unauthorized access, and these requests require production of same."

[5] https://support.apple.com/guide/iphone/send-and-receive-audio-messages-iph2e42d3117/ios

In paragraph 20., GPS claims that it formally requested communications between the underisgned and McGibney. However, GPS points to no formal request for such communications and Noshirvan has not been allowed to formally respond to same.  The mere assertion that any communications between anyone other than James McGibney and Noshirvan would fall into GPS's 24-26 request because of brief discussion is absurd – and unheard of. Further, in September of 2023, Joseph A. Camp utilzing [Joey@joeycamp2020.com](mailto:Joey@joeycamp2020.com) (ru Yandex.com) emailed this Court disparaging remarks about the undersigned. This Court threatened to call the U.S. Marshals on Joseph A. Camp for his interference.  Prior to  Joseph A. Camp's attack on the undersigned, he  went after  Robson David Charles Powers' wife. As a result, Mr. Powers was forced to withdraw as counsel for Noshirvan. See Dkts. 31-34.

In paragraph 21, GPS attempts to pin Joseph A. Camp's "intentional, fraudulent, and aggravating misconduct" and  deceptive interference with a federal litigation on James Mcgibney. It is  part of Mr. Trainor's new theory to distance himself from Joseph A. Camp.  See Dkt. 143, P. 17-8.  Mr. Trainor does not explain which one of at least 5 email addresses James McGibney allegedly "hacked." Nor does he verify that the any email addresses were hacked. A simple review of "have I Been Pwnd" would show that [joey@joeycamp2020.com](mailto:joey@joeycamp2020.com) was placed on the dark

web after Epik's domain registar was breached in September of 2021.[6]  The email

address josephacamp@yandex.com was was placed on the dark web after

LinkedIn's data breach in 2021.[7]And, because the breaches were in 2021 -  the

likihood that Joseph A. Camp changed his passwords before September of 2023 is

very probable.  By 2023, any existing passwords on the dark web for

joey@joeycamp2020.com and josephacamp@yandex.com would have been

changed.  Further, campjosepha@gmail.com was was placed on the dark web after

in May of 2024, after The Post Millennial sustained data breach. See Fn. 6.

However, what is more interesting is that the Facebook account identied as

https://www.facebook.com/CampJosephA is registered to the real Joseph A.

Camp and includes the corresponding email addresses supra. A copy of Facebook's

CampJosephA business record is attached as **Exhibit 10.**  The Facebook account

identified as https://www.facebook.com/joeycamp2020 was created by Joseph A.

Camp and contains multiple personal identifiers like the email addresses supra. A

copy of Facebook's Joeycamp2020 business record is attached as **Exhibit 11**.  The

Instagram account identified as joeycamp2020 was liked to Joseph A. Camp's

Facebook account identified as joeycamp2020.  A copy of Instagram's

Joeycamp2020 business record is attached as **Exhibit 12.** The IP addresses listed on

---

[6] https://haveibeenpwned.com/

[7] https://haveibeenpwned.com/

the Instagram account place Joseph A. Camp in Fort Myers on June 14, 2022 (IP 76.101.72.246) and in Belize City, Belize on November 25, 2022 (IP 179.42.206.242).[8]

Joseph A. Camp self-confirmed his accounts by posting correspondence regarding the undersigned subpoena's to Meta. Joseph A. Camp's posts are attached as **Exhibit 13.** The Court should note that the undersigned subpoena letterhead and request was posted by Joseph a. Camp, and Perkins Coie is the law firm handling the undersigned's subpoena to Meta. *See id.*

Despite the overwhelming amount of evidence – including multiple videos of the real Joseph A. Camp explaining his role in the conspiracy to destroy Noshirvan's reputation and his role and direct contact with the "ADL", Mr. Trainor alleges that he has a reasonable belief  "based on McGibney's statement … that he figured out his [Camp's] Yandex login," that James McGibney emailed this Court in September of 2023. See Dkt. 143, P. 17, ¶21. Mr. Trainor incorporated the ADL and according to Joseph A. Camp – there are four attorneys including Mr. Trainor – who are involved. Unfortunately, Mr. Trainor never spoke or deposed James McGibney. And therefore,  attempts to distance himself by falsely alleging that James McGibney posed as Joseph A. Camp  - via allegedly hacked email address – but Mr. Trainor does not state which email address was allegedly hacked or have proof that any email address was actually hacked. Furthermore, Joseph A. Camp

---

[8] Several other IP addresses place Joseph A. Camp in Florida through the year 2022.

was emailing this Court as early as September 14, 2023 – the day the undersigned

filed a Notice of Appearance. A copy of that email chain is attached as **Exhibit 14**.

James McGibney's statement to Noshirvan – taken out of context -  occurred on

September 17, 2023. Three days after Joseph A. Camp had been emailing this Court

to interfere with Noshirvan's representation. See Dkt. 143, EXA 86. Further, Mr.

Trainor points to EXA 161, but that correspondence took place on December27, 2023

– well after the real Joseph A. Camp emailed this Court in effort to help Mr. Trainor

win his case. No matter how hard Mr. Trainor twists allegations to distance himself

from Joseph A. Camp, the actual facts tell a different story.

In paragraphs 22-3, GPS attempts to imply that communications are missing.

However, all "BT" text communications have been produced. Furthermore, moving

forward, in light of the remaining claims – this inquiry is irrelevent.

**V.     GPS's Request for Sanctions should be denied**

**a.  Rule 11 Sanctions**

Rule 11 does not apply to discovery motions. See Fed. R. Civ. P. 11(d)("This

rule does not apply to disclosures and discovery requests, responses, objections,

and motions under Rules 26 through 37"); see also(c)(2)(requiring 21-day safe

harbor). While GPS's motion mentions Rule 11 - Rule 11 does not apply to discovery

motions. Even if Rule 11 could apply, a Rule 11 motion cannot be combined with

any other motion and the movant must provide a 21-day safe harbor. GPS did not

comply with basic requirements of Rule 11. Therefore, any request made thereunder must be denied.

### b. Rule 37 Sanctions

Rule 37(b)(2)(A) provides that "if a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders." Rule 37(a)(5)(A)(iii) provides that must not order the payment of reaosnable expenses if the "opposing party's nondisclosure, response, or objection was substantially justified" or "an award of expenses unjust." GPS has not pointed this Court to single instance where Noshirvan failed to comply with this Court's Order. Noshirvan's actions and repsonse are justified.  An award of expenses in favor of GPS would simply be unjust under these circumstances. *See Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 812 (11th Cir. 2017) ("Substantially justified means that reasonable people could differ as to the appropriateness of the contested action."); see also Dkt. 130, p. 4.

On the other hand, because GPS did not show that Noshirvan  failed to comply with the Court's Order, Rule 37 applies in Noshirvan's favor. See ." Rule 37(a)(5)(B)("the court … must … require the movant, the attorney filing the motion, or both to pay the party … who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.")

## VI.     **Request for relief**

Accordingly, Noshirvan respectfully requests that this  Court deny

GPS's motion in its entirety,  order GPS  and Mr. Trainor to pay reasonable expenses

in accordance with Rule 37(a)(5)(B), and any other relief this Court deems just and

proper.

Respectfully  submitted,

Nicholas A. Chiappetta, Esq.
Chiappetta Trial Lawyers
Attorneys for Mr. Noshirvan
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax:    (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Patrick Trainor, Esquire
Law Office of Patrick Trainor, Esq., LLC
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
Telephone: (201) 777-3327
Facsimile: (201) 896-7815
pt@ptesq.com
*Attorney for GPS*

*/s/ Nicholas A. Chiappetta*
Nicholas A. Chiappetta