## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

RALPH GARRAMONE M.D.
P.A. d/b/a GARRAMONE
 PLASTIC SURGERY,                              Case No. 2:23-cv-00340-SPC-KCD

Plaintiffs,                                    Judge: Hon. Sheri Polster Chappell

vs.

DANESH NOSHIRVAN a/k/a
@THATDANESHGUY

Defendant.

_____/

### DEFENDANT, DANESH NOSHIRVAN a/k/a @THATDANESHGUY's, RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO PROVIDE ANSWERS TO INTERROGATORIES NUMBERS 1 TO 21

Pursuant to Local Rule 3.01(b) defendant, Danesh Noshirvan ("Noshirvan"), by and through his undersigned counsel, files this Response in Opposition to Plaintiff, Ralph Garramone M.D. P.A. d/b/a Garramone Plastic Surgery's ("GPS") Motion To Compel Defendant To Provide Answers To Interrogatories Numbers 1 To 21 (Doc. 151).

### I.    Introduction

GPS asks this Court to order Noshirvan to provide  better answers to its Interrogatories. In doing so, GPS inaccurately claims that "[Noshirvan] …refuses to produce discovery in good faith." In response to GPS's commingling of allegations

– between the 1218 Case and 0304 Case in requests for production and interrogatories – Noshirvan maintains that he produced all Court ordered documents in response to GPS's request for production. In response to this Court's denial of his Motion for Protective Order, Noshirvan made the trip to New Jersey and sat for an in-person deposition. That deposition lasted four and half (4 ½) hours. With regards to these interrogatory answers, Noshirvan maintains that GPS again, in its motion to compel confused and commingled allegations between the 0340 Case and the 1218 Case.

This Court previously held that GPS's remaining claims are narrow and limited. Dkt. 111., p. 8. ("only two claims remain… Those claims [are]—tortious interference and conspiracy to tortiously interfere…."). Jennifer Couture's cyberstalking and harassment claims have been dismissed with prejudice. Dkt. 111. In that opinion, this Court held that "a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim." *Id.* p 5 (quoting *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007). In that same vein, truthful speech is subject to First Amendment requirements governing defamation. *See Gardner v. Martino*,563 F.3d 981, 992 (9th Cir. 2009) (when a tort claim is "brought as a result of constitutionally-protected speech, the claim is subject to the same First Amendment requirements that govern actions for defamation."). Because GPS testimony in is that the alleged tortious interference is publication of truthful videos and alleged harassment by unknown individuals with no link to Noshirvan other

than they follow his Tiktik page, the acts are protected under the First Amendment. Further, to the extent that GPS's claim could be categorized as "untruthful" its defamation claim has been dismissed.   "Under Florida law, a plaintiff cannot proceed on concurrent counts for related torts that are "intended to compensate for the same alleged harm" as a defamation claim." *Miller v. Gizmodo Media Group*, LLC, 18-24227-CIV, 2019 WL 1790248, at *11 (S.D. Fla. Apr. 24, 2019)("When claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essential the same defamatory publication or event.")). "The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Grlpwr, LLC v. Rodriguez*, No. 3:23CV16480-TKW-HTC, 2023 WL 5666203, at *7 (N.D. Fla. 2023)(citation omitted). In short, under the single publication doctrine, a cause of action that is based on another tort may not be maintained "regardless of whether [a plaintiff] chooses to assert the alternative claim, succeeds on the alternative claim, or the alternative claim is barred." *Griffin v. United States*, No. 3:18-CV-651-J-39MCR, 2019 WL 1092741, at *7 (M.D. Fla. 2019)(citation omitted). Put simply, neither harassment nor defamation can act as the underlying conduct to support GPS's tortious interference claim.  And, that claim is narrowed by GPS's testimony. A copy of GPS adjourned deposition transcript is attached as **Exhibit 1**.

## II.    Confirmed Facts

GPS in its deposition, confirmed that the alleged conspiracy to tortiously interfere with GPS's business is really an unconfirmed – but suspected - correlation "between [Noshirvan's] videos and the increase in [Google] reviews and posts. See Ex. 1, P. 79, 82. GPS then confirmed the alleged detriment to its business was caused by negative Google reviews and posts – by unknown individuals – occurred between January 27, 2022, through December of 2022. *Id.* at p. 80, 92. Further, when asked "[o]ther than … posting TikTok videos, is there anything else that Garramone Plastic Surgery is alleging that Danesh done -- has done as an individual? GPS stated Noshirvan "has given out the information that Jennifer works at Garramone Plastic Surgery and has stated in the video, verbally and in text, that we're going after Garramone Plastic Surgery now . *Id.* at p. 83.   Both GPS's statements were factually refuted in this deposition.[1] See *Id.* at p. 82-88, 111-113.

GPS appears to deem publication of truthful facts as "doxing" or "harassment. Ex. 1., p. 32-5. GPS also admits that major news outlets like CBS and

---

[1] Of note, Dr. Ralph Garramone answered some questions as an individual and other questions as GPS. See Dkt 111, Ex. 3, generally. It appears that Dr. Ralph Garramone only answered as an individual when the response suited his narrative. *Id.* p. 125. When questioned about communications with Joseph A. Camp, Dr. Ralph Garramone refused to testify individually – and instead – to defect, claimed that he never communicated with Jospeh A. Camp in his "role as a director of GPS." *Id.* P. 118.

Florida Weekly ran a similar story about Jennifer Couture's parking lot incident on January 26, 2022. Id. at p. 35-6. GPS's main clientele is in their 60's. Most of those individuals do not utilize Tiktok or view Noshirvan's videos.  GPS admitted that several of the allegations in the Second Amended Complaint do not pertain to its claims. Id. at p. 49-56. GPS's also confirmed that it has no evidence that Noshirvan committed any tortious act personally. Id. p. 84. Instead, GPS seems to rely on its conspiracy claim despite having no evidence of association or agreement to conspire or proof of "incitement." Id. at p. 64-7, 71-5.  Rather, GPS's entire conspiracy claims hinges on an unproven "correlation" only see by Dr. Ralph Garramone and a disproved alleged communication with Jordan Fredricks. Id. at p. 72-80, 84-6, 91.  GPS produced no documents at deposition or in discovery to support its  alleged correlation.  No expert has reviewed same.  GPS also expressly limited the timing of its alleged claims from January 27, 2022, through late 2022 (December of 2022). Id. at p. 80. GPS further admits that "negative reviews and … harassment" caused its alleged loss of revenue. Id. at p. 92. During questioning, GPS expressly claimed that "TikTok [video] are publications. Danesh spread the story of the incident in the parking lot to a number of … news outlets, which then became very prominent on search engines like Google." *Id*. at p. 98. "[S]o if you searched for Garramone -- let's say you were a prospective patient, you would be met with a number of negative news stories." *Id*. Noticeably, when asked "have you or any employee ever communicated with Joseph A. Camp a/k/a at Joey Camp 2020?" Dr.

Ralph Garramone responded "[n]ot as part of my role as a director of Garramone Plastic Surgery" and  "Garramone Plastic Surgery had no communication with Joseph A. Camp. *Id.* at 118-9. When asked directly if Dr. Garramone had contact with Joseph A. Camp, Dr. Garramone was instructed not to answer the question. *Id* at p. 118-122. Dr. Ralph Garramone's response implies that he has directly communicated with Joseph A. Camp a/k/a at Joey Camp 2020 in some capacity.

Simply put, GPS expressly stated that "[t]here was no breach contract or relationship. *Id*. at p. 96-7.  Without a breach or knowledge of a relationship, GPS has no cause of action upon which to determine the relevance of the requested discovery or proportionality. *Treco Intern. S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1288 (S.D. Fla. 2010)(stating elements for a Tortious Interference with Contract and Business Relationship claim).[2] Furthermore, GPS has no evidence that Noshirvan specifically intended to  interfere with its business relationship. See, e.g., *Fiberglass Coatings, Inc. v. Interstate Chem., Inc.*, 16 So. 3d 836, 838 (Fla. 2d DCA 2009)("Causation requires a plaintiff to "prove that the defendant manifested a

---

[2] "A claim for interference with a contractual relationship requires: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach." Treco Intern. S.A, 706 F. Supp. 2d at 1288. A claim for tortious interference with business relationship requires: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden*, 742 So.2d 381, 385 (Fla. 4th DCA 1999).

*specific intent* to interfere with the business relationship. No liability will attach unless it is established "that the defendant intended to procure a breach."). Discovery requests should be narrowly tailored to the actual claims and defenses in the case. *Rogers v. Minnesota Life Ins. Co.*, 5:21-CV-164-CEM-PRL, 2022 WL 19914343, at *2 (M.D. Fla. July 1, 2022).

Put simply, GPS is litigating its case without any verifiable facts to prove the essential elements of its remaining causes of action.

### III.   Standard

Motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007).

The moving party "bears the initial burden of proving that the information sought is relevant." *Douglas v. Kohl's Dep't Stores, Inc.,* No. 6:15-cv-1185, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016) (quoting *Moore v. Lender Processing Servs. Inc.*, No. 3:12-cv-205, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013)). Relevancy is based on the "tendency to make a fact more or less probable than it would be

without the evidence, and the ***fact is of consequence*** *in determining the action*."

*Garcia v. Padilla*, No. 2:15-cv-735, 2016 WL 881143, at *2 (M.D. Fla. March 8, 2016)

(quoting Fed. R. Evid. 401)(Emph. added). A fact is "of consequence" under federal

relevancy rule when its existence would provide the fact-finder with a basis for

making some inference, or chain of inferences, about an issue that is necessary to a

verdict. *Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1087 (D. Colo. 2006); see,

*e.g., Cook v. Rockwell Int'l Corp.* ("Cook IX"), 273 F.Supp.2d 1175, 1199–1212

(D.Colo.2003) (stating elements of Plaintiffs' claims and standards for determining

damages); *see United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir.1998);

Fed.R.Evid. 401 advisory committee's note ("fact to be proved may be ultimate,

intermediate, or evidentiary; it matters not, so long as it is of consequence to the

determination of the action.").

   Proportionality requires counsel and the Court to consider whether relevant

information is discoverable in view of the needs of the case. In making this

determination, a court is guided by the non-exclusive list of factors in Rule

26(b)(1)("Parties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the case.");

*Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-2148, 2016 WL 1319697,

at *3 (N.D. Ala. April 5, 2016). "Any application of the proportionality factors must

start with the actual claims and defenses in the case, and a consideration of how

and to what degree the requested discovery bears on those claims and defenses."
*Id.* (quoting *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 569 (D. Colo. 2014)).

To frame the discovery, it is essential to determine what the purpose of the discovery is. As the commentary to Rule 26 explains: "A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26. Then, of course, it is the "Court's responsibility, using all the information provided by the parties, ... to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

### IV.    Explanation of Responses and objections

1.    For Request Number 1, GPS sought all Tiktok accounts ever utilized, along with personal ID numbers and passwords. Noshirvan maintains that Noshirvan's only Tiktok account in the year 2022 was @thatDaneshGuy. Furthermore, GPS asked this question during Noshirvan's deposition, only to find out that an old Tiktok account was not utilized to report on Jennifer Couture or collaterally mention GPS.

2.    For Request Number 2, GPS sought information regarding the identity of any person who provided Noshirvan Jennifer Couture's personal identifying information. Of note, "personal identifying information" is not defined. GPS erroneously alleges that Noshirvan objected.  Dkt 151. P. 3. Noshirvan did not object – he answered the question. A copy of Noshirvan's Answers to

Interrogatories are attached as **Exhibit 2**.  GPS then accuses Noshirvan of belittling Jennifer Couture. GPS's *ad hom* attack is unwarranted and in violation of this Court's Order. See Dkt. 157 ("The conduct of the parties (and counsel) is becoming more inflamed. This stops now, and it's the Court's final warning.") GPS also conflates and distorts a conversation between Noshirvan and Emily Botyos to claim additional communications were produced in discovery. The documents GPS refers relate to Emily Botyos. She did not provide Noshirvan with Jennifer Couture's "personal identifying information" -  Jennifer Couture did. Noshirvan explained same to GPS during his deposition on July 26, 2024.  The actual facts are simple. Jennifer Couture mistakenly blamed Emily Botyos for communicating with Noshirvan and sent her very nasty text messages that made Emily Botyos upset. Emily communicated her frustration to Noshirvan. No personal information was provided.

3.      For Request Number 3, GPS  requested information regarding the identity of Plaintiff's and Jennifer Couture's family members who communicated with Noshirvan. First, entities like GPS, do not have family members. Second, Noshirvan responded that he has not communicated with individuals related to Jennifer Couture by blood and does not believe that Jennifer Couture is  currently married. Simply put, Noshirvan has not communicated with people related to Jennifer Couture by blood. GPS is well aware that Noshirvan has communicated with Chris Couture – Jennifer Couture's ex-husband. Noshirvan fully advised GPS

of same during the July 26, 2024, deposition. There appears to be some confusion on GPS's part about who is and is not legally related to Jennifer Couture by blood or marriage.

4.      For Request Number 4, GPS seeks information concerning communications with former employees of GPS.  This is GPS's catch-22 argument because GPS has consistently refused to produce employee files in discovery – but then expects Noshirvan to know who GPS's employees are. Frankly, it appears that GPS wants to hide its current and former employees because those individuals likely have information pertaining to the 1218 Case. Setting all arguments aside, Noshirvan  did tell GPS to review specified documents pursuant to Rule 33(d)(1-2). See Ex. 1. P.6. Furthermore, this Request is vague, overly broad, and not proportional. The term "concerning" is just as inappropriate as the use of "all documents relating to." *See Diamond Resorts Int'l, Inc. v. Aaronson*, 617CV1394ORL37DCI, 2018 WL 8221036, at *2 (M.D. Fla. Apr. 23, 2018); *see Ree v. Royal Caribbean Cruises Ltd*., 315 F.R.D. 682, 686 (S.D. Fla. 2016).

5.      For Request Number 5, GPS asks Noshirvan to identify all communications with James McGibney. Noshirvan objected to communications beyond the 2024 documents provided in discovery and on the overruled Amended Privilege Log. Noshirvan then directed GPS to review those documents. Again, all communication up to January of 2024 have been produced. The current post January 2024 communications cannot be relevant. *Garcia*, No. 2:15-cv-735, 2016 WL

881143, at *2 (to be relevant the *fact must be  of consequence in determining the action*.). Any assertion otherwise directly conflicts with GPS's testimony as to the timeframe of its claims.

6.     For Request Number 6, 7, 8, GPS asks  for identification of officers, DCF staff, and other law enforcement agencies Noshirvan "communicated with concerning" GPS, Jennifer Couture, and this 0340 Case.   Noshirvan answered that he did not  communicate with the Lee County Sheriff's office regarding Plaintiff or Jennifer Couture that "concern" the remaining causes of this action. The term "concerning" is vague, ambiguous, overly broad and apt to lead to opposing views on what falls under the term. *See   Diamond Resorts Int'l, Inc. v. Aaronson*, 617CV1394ORL37DCI, 2018 WL 8221036, at *2 (M.D. Fla. Apr. 23, 2018)("repeated requests for "all documents relating to" in the discovery requests is inappropriate" – "given the parties inability to confer between themselves to reasonably tailor the discovery requests."); *see Moss v. GEICO Indem. Co.*, No. 5:10-cv-104-Oc-10TBS, 2012 WL 682450, at *4 (M.D. Fla. Mar. 2, 2012) ("[W]hen relevancy is not apparent, the burden is on the party seeking discovery to show the relevancy of the discovery request."); *Siddiq v. Saudi Arabian Airlines Corp.*, No. 6:11-cv-69-Orl-19GJK, 2011 WL 6936485, at *3 (M.D. Fla. Dec. 7, 2011) ("Even when a party fails to object with specificity and the court compels a response to a discovery request, the court's order should compel only what is reasonable under the circumstances); *Suncast v. Techs., L.L.C. v. Patrician Prods., Inc.*, No. 07-80414-CIV, 2008 WL 179648, at *5 (S.D. Fla. Jan.

17, 2008) ("because the relevancy of the discovery request was not readily apparent, the party seeking the discovery ... had the burden to show the relevancy of the request.").

7.     For Request Number 9, GPS asks  for identification of licensing Boards Noshirvan "communicated with concerning" GPS or Jennifer Couture. Noshirvan responded **none**.  See Noshirvan's response to paragraph  6, supra. Making a passive Tiktok video does not constitute active communication with a licensing board.

8.     For Request Number 10, GPS asks  Noshirvan to identify Tiktok Employees concerning a non-existent contract with Tiktok. On July 26, 2024, at deposition Noshrivan made clear that there is no written contract – other than the "terms of service" agreement. See also Noshirvan's response to paragraph  6, supra. How can Noshirvan speak to Tiktok employees about a non-existent contract?

9.     For Request Number 11, GPS asks  Noshirvan to identify every Meta employee he communicated with "concerning" his "social media activities." GPS request is irrelevant to the remaining claims, overly broad in time and scope (see Noshirvan's response to paragraph   6, supra),  and would be unduly burdensome. In short, the request is not proportional to the needs of this case. Furthermore, Noshirvan explained at deposition, that he does not have contact information for  the "Meta employees" discussed with James McGibney and that she did nothing more than forward documents to the appropriate department for

review, and that he basically through customer service. Yet despite knowledge of this, GPS has not withdrawn its request pertaining to same. GPS's argument is a red herring.

10.     For Request Number 12, GPS asks for information regarding redemption of gifts and tips through Tiktok. Noshirvan maintains that this request irrelevant and would be unduly burdensome. *see Moss v. GEICO Indem. Co.*, No. 5:10-cv-104-Oc-10TBS, 2012 WL 682450, at *4 (M.D. Fla. Mar. 2, 2012) ("[W]hen relevancy is not apparent, the burden is on the party seeking discovery to show the relevancy of the discovery request."); *Siddiq v. Saudi Arabian Airlines Corp.*, No. 6:11-cv-69-Orl-19GJK, 2011 WL 6936485, at *3 (M.D. Fla. Dec. 7, 2011) ("Even when a party fails to object with specificity and the court compels a response to a discovery request, the court's order should compel only what is reasonable under the circumstances); *Suncast v. Techs., L.L.C. v. Patrician Prods., Inc.*, No. 07-80414-CIV, 2008 WL 179648, at *5 (S.D. Fla. Jan. 17, 2008) ("because the relevancy of the discovery request was not readily apparent, the party seeking the discovery … had the burden to show the relevancy of the request.").

At deposition, Noshirvan explained that the tokens or icons have minute value. The value is so minimal that he does not concern himself with tracking. Furthermore, Noshirvan explained the Tiktok, through it internal procedure, determines disbursement of proceeds. Thus, there really is no active redemption on

the Creator's part.   In short, this inquiry will not produce a "fact of consequence" in determining the verdict.

11.     For Request Number 13, GPS is vague. GPS did not provide a copy of the video. Rather it expected Noshirvan to know what it meant by the vague description provided. Noshirvan did not.  The request also seeks information irrelevant to GPS's remaining causes of action. Further, it is apparent that GPS is in possession of the video and the video itself contains the information GPS requested. Further, Noshirvan confirmed at deposition, when shown the video,  that the individuals in the video actively coordinated on discord and discussed plans concerning the allegations in the 1218 Case.  Thus, GPS request does not seek to learn about its alleged "conspiracy" to tortiously interfere  with its business. Instead, GPS appears to seeking information relating to 1218 Case. In short, this inquiry will not produce a "fact of consequence" in determining the verdict.

12.     For Request Number 14, Noshirvan directed GPS to review the "Bullyville" communications produced in discovery. Rule 33(d)(1-2) allows a party the option to produce records. See paragraph 6. In short, this inquiry will not produce a "fact of consequence" in determining the verdict.

13.     For Request number 15, Noshirvan after objecting, responded that he did not  communicate with Shelley Botyos concerning Plaintiff or Jennifer Couture for any matter that relates to the remaining causes of this action. The term "concerning" is vague, ambiguous, overly broad and apt to lead to opposing views

on what falls under the term. *See Diamond Resorts Int'l, Inc. v. Aaronson,* 617CV1394ORL37DCI, 2018 WL 8221036, at *2 (M.D. Fla. Apr. 23, 2018)("repeated requests for "all documents relating to" in the discovery requests is inappropriate" – "given the parties inability to confer between themselves to reasonably tailor the discovery requests.").

All communications between Shelley Botyos and Noshirvan relate to Jennifer Couture's ties with Joseph A. Camp, and Joseph A. Camp's harassment of the Botyos family as revenge for strained relations between Jennifer Couture and the Botyos Family. Simply put, the communications relate to the allegations in the 1218 Case; not the 0340 Case. In short, this inquiry will not produce a "fact of consequence" in determining the verdict in the 0340 Case.

14.     For Request number 16, Noshirvan after objecting, responded that he did not communicate with Credible Intel concerning Plaintiff or Jennifer Couture for any matter that relates to the remaining causes of this action. The term "concerning" is vague, ambiguous, overly broad and apt to lead to opposing views on what falls under the term. *See Diamond Resorts Int'l, Inc. v. Aaronson,* 617CV1394ORL37DCI, 2018 WL 8221036, at *2 (M.D. Fla. Apr. 23, 2018)("repeated requests for "all documents relating to" in the discovery requests is inappropriate" – "given the parties inability to confer between themselves to reasonably tailor the discovery requests.").

Noshirvan further stated that he has not communicated with "the Twitter account @credibleintel" for matters "concerning" "Plaintiff, Jennifer Couture relating to this action, and the subject matter of this action" - 2:23-cv-00340. Simply put, Noshirvan clarified that any communications with the unknown user behind the account Credible Intel were related to either Jospeh A. Camp or to the allegations in the 1218 Case; not the 0340 Case. In short, this inquiry will not produce a "fact of consequence" in determining the verdict.

15.     For Request number 17, GPS seeks information concerning information provided to news organizations. GPS fails to provide rhyme or reason as to how submission of a video or tip to ABC, NBC, or CBS news could possibly relate or be relevant to a claim for conspiracy to tortiously interfere with a business relationship. Noshirvan admits submitting the January 26, 2022 video to a major news media outlet like ABC, NBC, or CBS. Dissemination of truthful information that is matter of public concern is not tortious.  Further, that video did not mention GPSA. Additionally, the term "concerning" is vague, ambiguous, overly broad and apt to lead to opposing views on what falls under the term. *See  Diamond Resorts Int'l, Inc. v. Aaronson*, 617CV1394ORL37DCI, 2018 WL 8221036, at *2 (M.D. Fla. Apr. 23, 2018)("repeated requests for "all documents relating to" in the discovery requests is inappropriate" – "given the parties inability to confer between themselves to reasonably tailor the discovery requests."). Noshirvan never admitted to communicating to "native content publications" about Jennifer

Couture.  This appears to a mystery allegation – a mystery where the proof is to support such a claim. GPS's remaining assertions lack factual support. In short, this inquiry will not produce a "fact of consequence" in determining the verdict.

16.     For Request number 18, Please see response in Paragraph 6, supra. This request is totally untethered from GPS's remaining claims and Jennifer couture's claims have been dismissed. It is imply harassing.  In short, this inquiry will not produce a "fact of consequence" in determining the verdict.

17.     For Request number 19, GPS's argument assumes that the Google drive shared with James Mcgibney contained items that were the 'subject matter" of this action. It was not. Noshirvan explained to Mr. Trainor at deposition, that the Google Driver shared with James McGibney had nothing to do with this case,  the parties, or Jennifer Couture. Noshirvan's answer to the interrogatory speaks for itself. Of note,  over 5 GB of data of relevant documents were produced in discovery.   Yet, GPS still has not withdrawn its misconstrued argument   of waiver. GPS argues waiver as if this were a production request and third-party disclosure occurred. No documents were withheld on the basis of attorney-client or work  product  privilege.  GPS's  arguments  fundamentally  misunderstands Noshirvan's position. In short, this inquiry will not produce a "fact of consequence" in determining the verdict.

18.     For Request number 20, Noshirvan answered: "Joseph A. Camp

(i.e., JoeyCamp2020), Patrick Trainor, Esq., Jennifer Couture, Dr. Ralph Garramone, and others whose identities are not fully known began a conspiracy to defame me in April/May of 2022." Noshirvan confirmed same during his July 26, 2024, deposition – in New Jersey.

19.    For Request number 21, after objections, Noshirvan answered that "no one expressly communicated to Noshirvan that they directly communicated  with Garramone Plastic Surgery or Jennifer Couture from January 26, 2022, through December of 2022 – as it relates to this case." GPS was then directed to see documents previously produced pursuant to Rule 33(d).

## V.    Reservation

Noshirvan reserves additional arguments for the in-person hearing by this Court before this Response became due. See Dkt. 159.

Accordingly, the Court should deny Plaintiff's motion to compel Noshirvan to provide answers to interrogatories (Dkt. 151) in its entirety.

Respectfully  submitted,

Nicholas A. Chiappetta, Esq.
**Chiappetta Trial Lawyers**
Attorneys for Noshirvan
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax:    (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Patrick Trainor, Esquire
Law Office of Patrick Trainor, Esq., LLC
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
Telephone: (201) 777-3327
Facsimile: (201) 896-7815
pt@ptesq.com
*Attorney for GPS*

_/s/ Nicholas A. Chiappetta_
Nicholas A. Chiappetta