IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| JENNIFER COUTURE; RALPH GARRAMONE M.D. P.A. d/b/a GARRAMONE PLASTIC SURGERY, <br><br> Plaintiffs, <br><br> vs. <br><br> DANESH NOSHIRVAN a/k/a @THATDANESHGUY, <br><br> Defendants. | Civil Case No.: 2:23-cv-00340 |

**PLAINTIFF RALPH GARRAMONE M.D., PA, D/B/A GARRAMONE PLASTIC SURGERY'S NOTICE OF DEFENDANT DANESH NOSHIRVAN'S NON-COMPLIANCE WITH COURT'S ORDER DATED AUGUST 2, 2024, ECF NO. 163**

Plaintiff Ralph Garramone M.D. PA, d/b/a Garramone Plastic Surgery's (hereinafter "Plaintiff") respectfully submits this Notice of Defendant Danesh Noshirvan's ("Defendant") non-compliance with the Court's Order dated August 2, 2024, ECF No. 163. At the hearing on Plaintiff's motion to compel (ECF No. 143) Defendant's compliance with the Court's prior orders (ECF Nos. 104 and 131) and Plaintiff's motion to compel responses to Interrogatories (ECF No. 151).

The instant Order (ECF No 163) dated August 2, 2024, ordered Defendant within fourteen (14) days to produce a download of his TikTok data obtained by utilizing the simple process that Magistrate Dudek displayed on courtroom

"television displays to show[ ] counsel that comments can be downloaded, as can videos," to produce all of his communications with James McGibney a/k/a "@realbullyville," and "@bullyville," and to provide responses to Interrogatories. *Minutes-Motion Hearing* ("Minutes") (Docs. 143, 151) at 2, (Aug. 2, 2024), ECF No. 162.  The process which Magistrate Judge Dudek displayed in the courtroom is identical to the process Plaintiff explained January 12, 2024, in its brief in support of its opposition to Noshirvan's second motion for an extension in time to respond to discovery.  *See Opposition to Second Motion for Extension in Time to Respond* ("Opp. Sec."), (Jan. 12, 2024)*,* ECF No. 89.  Further, if Defendant could not download his data, the Court ordered him to demonstrate that he made reasonable efforts to comply with the Court's Order.  *Minutes* at 2*.*

      Defendant's recent production is an affront to the Court's Order, and is indicative of bad faith.  Defendant claims he cannot download his data from TikTok, but provides no further detail other than he cannot download his data and shows that he paid a service to download and export his TikTok data, however, this service is facially inadequate, because TikTok severely restricts the data it allows to be exported, and even if TikTok did not restrict its data exports, Defendant paid for a level of service that guaranteed his production would be deficient.

      Plaintiff's **Request Numbers 1 and 8** are addressed together.  Request Number 1 requested "all videos Defendant posted on TikTok and all other social

media platforms from January 26, 2022, through the present, include with each video the text of all comments posted to each video, including comments deemed private, and the Creator name who posted such comments." **Request Number 8** requested all of Defendant's TikTok followers.

Since Plaintiff's first motion to compel Defendant has claimed that he cannot download his data, which counsel for Defendant repeated at the hearing. Defendant has not provided further explanation for why he cannot download his data, *e.g.*, is his data corrupted? is he on a do not download list?," etc. Instead, he produced a screenshot of a message he sent to TikTok support at *managed_support@tiktok.com* wherein he said he could not "find [the] option" to download a list of his followers and a "list of comments for specific videos of mine." Defendant's email request does not indicate that he cannot download his data, rather it indicates that Defendant is willfully defying the Court, because he chose to ignore the simple data download process Magistrate Dudek displayed in Court and directed Defendant to use during the hearing. Defendant's email to TikTok and their response is annexed hereto as **Exhibit A.**

Defendant's counsel repeated the claim that TikTok would not allow Defendant to download his data in his email that delivered Plaintiff's counsel the electronic file that contained Defendant's production. A copy of counsel for Defendant's email is annexed hereto as **Exhibit B.**

3

Defendant produced screen captures of him purportedly attempting to download his data, which include screen shots of TikTok's data download options and text (.txt) files in Defendant's TikTok profile, but without explanation the .txt files were not produced.  Screenshots Defendant produced of his TikTok data download efforts and possible txt files are attached hereto as **Exhibit C**.

Defendant claims he remedied his inability to download data from TikTok by paying to download his TikTok data from *exportcomments.com*.  *See* Exhibit B.  Before addressing Defendant's specific deficiencies, *exportcomments.com's* production is immediately deficient, because TikTok restricts the number of followers and comments that can be exported to ***5,000 followers and 5,000 comments*** (emphasis added).  Defendant produced the image below on the left, which confirms TikTok's 5,000 follower limit and the image on right is from *exportcomments.com/features*, which confirms TikTok's 5,000 comment cap.



Second, irrespective of TikTok's restrictions, *exportcomments.com* further discloses that it will not produce at least 10-30% of the comments posted to videos,

4

which is an obvious gross underestimation.  For example, the confirmation below shows a video with 4,005 comments, but only 339 were exported.  Defendant's other confirmations show similar export limitations.  Defendant's download confirmations are attached hereto as **Exhibit D**.



Defendant claimed *exportcomments.com* offers three pricing tiers and produced the image below.  ("pricing tiers" to file below).  However, as seen in the next image there are ***four pricing tiers*** available (*emphasis added*).



5

*Exportcomments.com's* four tiers are: (1) a free tier capped at 100 comments per day; (2) an eleven ($11) dollar tier that provides downloads for three (3) days and caps exported comments at 5,000; (3) a forty-five ($45) dollar tier that provides one month downloads, but caps exported comments at 50,000; and (4) a one hundred ninety-nine ($199) tier that provides one month of downloads, but caps comments at 250,000.  Defendant chose the free tier and paid for the $11 tier.



The limited data defendant obtained from *exportcomments.com* is not a download of his TikTok data.  It does not produce: (1) sent or received direct messages ("DM's"); (2) likes; (3) favorites; (4) accounts followed; (5) Defendant's replies to commenters to his videos; and (6) it did not produce information related to income Defendant received for his videos.  Moreover, Defendant's videos are still public so comments, replies, his video likes can be deleted, removed, made

private, or altered, *exportcomments.com* doesn't authenticate the data downloaded from its site or provide updates of data already downloaded.

**Request Number 5**:  Requested "Receipts for all payments Defendant received as tips, gifts, cash, Live subscription fees through TikTok from January 26, 2022, through the present, include the payor's first and last name, his/her Creator/username, account identification number, email address, and phone number (*e.g.*, mobile, VOIP)."

Defendant's production does not comply with Court's Order.  Defendant produced screenshots of alleged payments, which show his TikTok profit sharing payments, subscription fees shared with TikTok, and the who paid said fees.  However, he did not produce the complete record, such as amount, payor, or payor's Creator name.  And many of the images produced are blurry and cannot be read or authenticated as produced.  A copy of the image below as produced is attached hereto as **Exhibit E**.



**Request Number 16:**  Defendant claimed he does not have a moderator and further that no such recording of him describing a person as his "Mod" did not exist.  Plaintiff provided Magistrate Dudek an audio text message of Defendant recording describing a person named "Cindy" as his "Mod."  After the hearing, Plaintiff served TikTok a subpoena, which is pending.

**Request Number 17** requested "[t]he text of all communications between Defendant and any non-moderator TikTok employees, from January 26, 2022, through the present."  *See* number 16 above.

**McGibney Communications**:  Defendant has not produced a complete set of McGibney communications responsive to prior discovery requests.  Prior to Defendant's August 16, 2024, production in response to the Court's Order, Defendant's communications with McGibney were produced as screen captures of Instagram Direct Messages (DM) and a few mobile phone text messages.  The screen captures were produced as individual formatted .jpg image files.

On August 16, 2024, in response to the Court's Order, Defendant changed the file format of his communications with McGibney, and he produced his communications with McGibney in two videos that are each approximately twenty-five minutes long.  The videos show someone, presumably Defendant using an electronic device, presumably his mobile phone, scrolling through Defendant's purported Instagram DM's with McGibney.  The audio and video files embedded

8

in the McGibney communications are included in the videos, but they are only sometimes audible, because Defendant frequently manipulates the playback speeds to distort the audio quality, and in other instances he stops playing embedded video and audio files before it has been played in its entirety.  Defendant claims the videos are proof that he produced all of communications with McGibney.

The format change of the production of Defendant's communications with McGibney was intended to confuse and frustrate Plaintiff's ability to properly review Defendant's communications.  The videos makes it next to impossible to align the videos to the previously produced jpeg's, rendering them near useless and only further raises questions about the veracity of Defendant's production.

Furthermore, setting aside the file format change, Defendant's claim that he produced all McGibney communications is provably false.  In Plaintiff's third motion to compel, Plaintiff identified several large gaps in time within the McGibney communications where the previous conversation and alleged most recent conversation did align.  For example, Defendant produced Instagram DM's where the last alleged DM at the bottom of the file was dated October 23, 2022, and the next DM was dated December 6, 2022.  *Plaintiff's Third Motion to Compel* at 16, ¶ 19(b), ECF No. 143.  At the discovery hearing counsel for Defendant claimed the last communication was October 25, 2022, and produced a single page file titled "Screenshot_20240115_134016_Instagram.jpg" which shows October

25, 2022, was Defendant's last communication with McGibney prior to before December 6, 2022. Counsel for Defendant claimed this single communication with McGibney was inadvertently withheld due to "sync issues." However, that is not the only McGibney communication Defendant withheld.

On August 16, 2024, Defendant produced discovery in the related case known as *Noshirvan v. Couture, et al.*, 2:23-cv-01218 (MD. Fla.) ("1218 Case") where he produced a file labeled "Bullyville Communications," and as the Court knows "[@]bullyville" and "[@]realbullyville are McGibney's alter egos. In the Bullyville communications, Defendant produced five (5) .jpg files of Instagram DM's with McGibney that he has not produced as either individual .jpg files or in the videos. The never before disclosed Instagram DM's with McGibney are dated October 25, 2022, October 28, 2022, November 17, 2022, December 1, 2022, December 6, 2022, and "Screenshot_20240115_135114_Instagram.jpg" at EXF005 is a continuation of Instagram DM's from October 7, 2022, which was excluded from previous production. A copy of the newly disclosed McGibney Communications are annexed hereto as **Exhibit F**.

## INTERROGATORIES

Plaintiff's motion was granted as to the following Interrogatories, but Defendant did not respond as directed.

**Interrogatory Number 7:**  Response is the same as before the hearing, except that Defendant simply changed the order of the words in his response and has not produced communications he had with Florida DCF.

**Interrogatory Number 10:**  Response is the same as before the hearing, except that Defendant simply changed the order of the words in his response.

**Interrogatory Number 13:**  "In the video You posted to TikTok upon reaching 1.5 million TikTok followers, which closes with the statement "Dedicated to the victims of Daneland," You included images of several people who were the subject of a video that You posted to TikTok, for each person You included in that video, identify said person's name, employer, contact information, and identify the person(s) who provided You with the video subject person's PII, including such providing third person's first and last name, TikTok Creator name, account number, email address, phone number, date and time of each communication, and subject matter of each communication."

Court ordered Defendant to produce name of his victim, the victim's employer, and contact information.  Defendant did not produce this information.

**Interrogatory Number 15:**  Identify each date and time that You communicated with Shelly Botyos concerning Plaintiff, Jennifer Couture, this action, and the subject matter of each communication.

11

At the hearing, Defendant withdrew his objections and was to supplement his communications with Botyos, but he has not done that.  In his recent responses Defendant did not provide "each date and time that [Defendant] communicated with Shelly Botyos," instead he broadly stated he communicated with Botyos from "February of 2022 through October of 2022," and he started speaking to "Botyos again in late 2023," but did not provide the dates or the subject matter of the communications, and his own discovery production shows they spoke of more than just Mr. Camp.

**Interrogatory Number 16:**  Requested Defendant produce his communications with X.com account @credibleintel.

Defendant was ordered to identify his communications with @credibleintel, involving this action and the subject matter of this action, but he didn't and he didn't identify who @credibleintel.  Instead Defendant broadly states that his communications with @credibleintel relate to Plaintiff's ties to Camp, Couture's ties to Camp, and counsel's ties to Camp.  Defendant cannot make false allegations in attempt to bolster his case and then withhold the identity of the source of the allegations.

**Interrogatory Number 19**:  The Court tailored the request to require Defendant to identify of the persons he gave access to Google drives that contain information about the instant action and its subject matter, and the persons first and

last name, email address, and date Defendant provided access.  Defendant has not complied.  We know from the record the Defendant had more than one Google drives and that he provided McGibney and several other people access to Google drives.

In his response, Defendant did not identify any person(s) he gave access to the Google drives, and he again invokes attorney-client and work product privilege, however, he responded that he gave access to law enforcement and persons whom he cannot now recall.  The fact that Defendant cannot recall is of little consequence, because through his Google account he can determine the persons who he shared access to the Google drive with.  Defendant must produce.

**Interrogatory Number 20**:  Required Defendant to "[i]dentify the names of the person(s) You identified in Your TikTok videos and posts to other social media platforms as a person who is stalking You and Your family, or that has stalked You and Your family."  In his TikTok videos and other social media Defendant has identified at least eleven (11) people who he claims are stalking him, his family, and his children.

In his prior responses Defendant identified Mr. Camp, Plaintiff, Ms. Couture, Plaintiff's counsel, and persons associated with them who are not yet known, as persons stalking him.  In the responses that he was compelled to produce, Defendant named the same persons, but he did not identify the method

13

said people are stalking him, when the stalking began, or whether they are still stalking him.

In spite of being the subject of three motions to compel and several letters demanding compliance with the Court's Orders, Defendant remains willfully non-complaint and impervious to sanctions intended to curb this misconduct. However, Plaintiff and Ms. Couture have not been so lucky. Ms. Couture was financially sanctioned for a calendaring error and forced to pay Defendant's costs, which were wholly avoidable had Defendant's counsel not chosen to indignantly incur them, which Defendant used to post videos crying about his hardships. On the other hand, Defendant's intransigence has triggered significant unnecessary motion practice, multiple discovery hearings, three orders of the Court compelling him to produce documents and answer Interrogatories, but he ignores Orders and refuses to produce, all the while remaining untouched. The disparate treatment directed at Plaintiff must end.

        Respectfully submitted,

Dated: August 26, 2024

_____
Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815

pt@ptesq.com
*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of the electronic filing to all interested parties

August 26, 2024   _____
Patrick Trainor
*Attorney for Plaintiffs*