IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JENNIFER COUTURE; RALPH
GARRAMONE M.D. P.A. d/b/a
GARRAMONE PLASTIC SURGERY,          Case No. 2:23-cv-00340-SPC-KCD

Plaintiffs,                          Judge: Hon. Sheri Polster Chappell

vs.

DANESH NOSHIRVAN a/k/a
@THATDANESHGUY

Defendant.

_____/

**DEFENDANT, DANESH NOSHIRVAN'S, RESPONSE IN OPPOSITION TO
PLAINITFF, RALPH GARRAMONE M.D. P.A. d/b/a GARRAMONE
PLASTIC SURGERY's, FOURTH MOTION COMPEL  PRODUCTION OF
DISCOVERY MATERIALS AND COMPLIANCE WITH THE COURT'S
ORDERS**

Pursuant to Local Rule 3.01(b) defendant, Danesh Noshirvan

("Noshirvan"), files this Response to plaintiff, Ralph Garramone M.D. P.A. d/b/a

Garramone Plastic Surgery's ("GPS") Fourth Motion Compel  Discovery Materials

and Compliance with the Court's Orders, and states as follows:

I.      **Introduction**

Like  a drowning swimmer, GPS through its motion makes a last ditch

effort to gasp for air. GPS makes much to do about "prior discovery orders," which

have been complied with -- in hopes of inflaming this Court. See Dkt. 172, p. 1-3.

The very narrow issue before the Court is whether Noshirvan complied to the best of his ability with this Court's Order dated August 02, 2024 ("August 02, 2024 Order"). See Dkt. 163. The August 02, 2024 Order, required Noshirvan to (1) "provide all comments to videos where GPS is referenced" (request #1), (2) provide, gifts, rewards, and subscription fees through Tiktok for videos where GPS is referenced (Request #5), (3) download a list of his 1.8 million viewers/followers (Request #8) and provide a complete set of McGibney communications (Request #25). The requirements of this Court's August 02, 2024 Order came with the caveat that Noshirvan may assert a "_present_ inability to comply" as a defense. This Court's ruling comports with binding precedent related to civil contempt.[1] However, GPS has not met its burden of proof, nor has it shown that Noshirvan had or has the ability to comply with this Court's Order beyond what Noshirvan has timely provided to GPS on August 16, 2024. While it is true that this Court created its own Tiktok account with presumably minimal followers in an attempt to determine Tiktok's capabilities, no one has shown that Tiktok allows user to download more than 5,000 currently existing comments or followers. In stark contrast, GPS asks Noshirvan to download 1.8 million followers

---

[1] See e.g., *CFTC v. Wellington Precious Metals, Inc.*, 950 F.2d 1525 (11th Cir.1992). and *S.E.C. v. Greenberg*, 105 F. Supp. 3d 1342, 1345 (S.D. Fla. 2015)("The [plaintiff]'s burden is to prove that [defendant] 'had the ability to comply' with the Final Judgment. The burden then shifts to [defendant] to prove his "present inability to comply.")

and somehow salvage comments from accounts that may have been deleted, suspended, set to private, removed, is spam, or not displayed on by other platforms. GPS's request is unprecedented in scope and undertaking. GPS does not even attempt to prove that its request is possible.   Yet it seeks to sanction Noshirvan because he cannot fully comply with GPS's impossible request. This is because GPS, like a drowning swimmer, is looking for a life raft.  GPS knows that it cannot meet the elements of its narrow and limited remaining claims. See Dkt. 111, p. 8. ("only two claims remain… Those claims [are]—tortious interference and conspiracy to tortiously interfere…."); *Ethan Allen, Inc. v. Georgetown Manor*, Inc., 647 So. 2d 812, 814 (Fla. 1994)(stating elements). Nothing in GPS's narrow remaining discovery request will help it prove the elements of its claims. See Dkt. 146, P. 5-6.

## II.    Background

GPS in its fourth motion inaccurately alleges that Noshirvan refuses "to authorize Tiktok to release" data. See Dkt. 172. This is simply not accurate.  On August 16, 2024, the undersigned emailed Mr. Trainor a zip file named "Re_08.16.24 Production 0340.zip." See Ex. A, P. 8-10.   A copy of the email correspondence is attached as **Exhibit A**.  The same day Noshirvan also produced documents responsive to GPS's discovery request to Mr. Trainor in the 1218 Case. See Ex. G. With regard to Re_08.16.24 Production 0340.zip, Noshirvan explained

in detail what was being provided, why it was being provided, and the limitations Noshirvan experienced in attempting to obtain the requested information. *See Id.* GPS's immediate response was "defendant did not comply with the Court's Order. I will inform the court."*Id.* at p. 8. The undersigned responded by asking "what are you claiming has not been complied with? My client has until midnight to respond per the Court Order. You have a duty to confer and communicate in good faith." *Id.* at 7. GPS responded "[Noshirvan] did not download his data, and he did not explain why.'" *Id.* at p. 6. Except that Noshirvan did download all his Tiktok available through Exportcomments.com and explained why he could not obtain the requested documents through his Tiktok account. See Ex. A. p. 9. Noshirvan sent GPS and Mr. Trainor more than 15 images showing attempted compliance. Mr. Trainor then inaccurately claimed this Court's ruling as it pertains to GPS's 1st, 5th, 8th or 25th request for production somehow required the undersigned to produce his communications with McGibney – without ever providing a formal request (or showing which request called for such documentation) and an opportunity to respond. *Id.* at p. 6. Noshirvan cannot be held responsible for figments of Mr. Trainor's imagination. Especially, when GPS failed to serve a proper request within the parameters of Rule 34.

On September 03, 2024, Mr. Trainor sent an email request for conferral. See Ex. B at p. 13-4. A copy of the email chain is attached as **Exhibit B**. Again, the

undersigned asked Mr. Trainor "[w]hat specifically are you attempting to compel? If you are just seeking consent for TikTok to produce followers and comments (i.e., Dkt. 143 Paragraphs 1 and 8), I think that could be worked out to avoid additional unnecessary discovery motions." *Id.* at p. 12. GPS's responded via Mr. Trainor by stating "I am moving to compel defendant to comply with the Court's previous orders …. For example, <u>your client was required to download and produce his Tiktok data…."</u> *Id.* at p. 11. Noshirvan's consent to allow Tiktok to produce whatever it could, would have resolved this issue entirely. However, GPS seeks to impose sanctions because Jennifer Couture was sanctioned in this case, Patrick Trainor was sanctioned in the 1218 Case, and because it cannot prove its case-and-chief. *See id.* at p. 10 ("So, if I understand you correctly, you do not want Noshirvan's consent. You simply want to sanction my client. Got it."). The undersigned followed up with " [d]o you want McGibney communications in a different file format." What specifically are you looking for…you appear intent on solely seeking sanctions without an explanation. *Id.* at p. 9. Simply put, GPS did not attempt to confer in good faith, nor did it actually confer as required by Local Rule 3.01(g). *See id* at p. 1, 3, 5, and 7. ("We have conferred by email"). In short, GPS's fourth motion via Mr. Trainor is simply seeking "an eye for an eye" retribution for the rule 11 sanctions upon Mr. Trainor in the 1218 Case. It is evident

from Mr. Trainor's flat-out-refusal to state what items or forms of items he was seeking. Noshirvan should not have to guess because GPS failed to communicate.

### III.    Local Rule 3's meet and confer obligation is not optional

The courts in the Middle District of Florida strictly enforce Local Rule 3.01(g). *Unlimited Res. Inc. v. Deployed Res.*, LLC, 307-CV-961-J-12MCR, 2009 WL 1370794, at *1 (M.D. Fla. May 14, 2009). Local Rule 3.01(g) is not optional or aspirational. The movant of a motion must follow the heading "Local Rule 3.01(g) Certification," and attest to the requirements pursuant to Local Rule 3.01(g)(2). M.D. Fla. R. 3.01(g)(2). The purpose of Rule 3.01(g) is for the parties to communicate with each other over the subject of the motion, either in person or by telephone. See *Howard v. Hartford Life & Accident Ins. Co.*, No. 3:10-cv-192-J-34TEM, 275 F.R.D. 649, 2011 WL 3836449, 2011 U.S. Dist. LEXIS 99659 (M.D. Fla. Aug. 26, 2011) ("At least one magistrate judge in the Middle District of Florida has construed the mandates of [Local] Rule 3.01(g) to 'mean to speak to each other in person or by telephone, in a good faith attempt to resolve disputed issues.' ") (quoting *Davis v. Apfel*, No. 6:98-cv-ORL-22A, 2000 WL 1658575, at *2 n. 1 (M.D. Fla. Aug. 14, 2000)).

GPS's fourth motion fails to comply with Local Rule 3.01(g), which requires that each motion filed with the Court contain a certificate indicating that the moving party has <u>conferred</u> prior to the filing of the motion in a good faith effort

to resolve the issues raised by the motion. M.D. Fla. R. 3.01(g). In order to confer, the parties must meet in-person, by telephone or through an electionic application like Zoom. Here, GPS claims that the parties conferred via <u>email</u>. This assertion is simply insufficient and facially deficient. It does not comply with Local Rule 3.01(g). Furthermore, even if this Court were to find that email correspondence could be sufficient to comply with Local Rule 3, the subtance of the emails attached as Ex. A-B, do not show that Mr. Trainor attempted in good faith to narrow or resolve the issue in GPS's motion without court intervention. Additionally, this is not the first time that Mr. Trainor and GPS have failed or refused to comply with Local Rule 3.01(g). The docket is replete with filings from Mr. Trainor that lack the mandatory certification. Mr. Trainor as *pro hac vice* attorney must be held to the same standard as every other litigant and admitted attorney in the Middle District.

### IV. Noshirvan's Reponse to Memorandum of Law

#### a. GPS Has Not Met Its Its Burden Of Proof To Warrant Sanctions

As previously stated, GPS has not meet its burden of proof or persuasion, nor has it shown that Noshirvan had, or has, the ability to comply with this Court's order beyond what has been timely provided to GPS on August 16, 2024.

A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order. *See Citronelle–Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301

(11th Cir.1991); *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 984 (11th Cir.), cert. denied, 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 120 (1986). Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply. *Rylander*, 460 U.S. at 757, 103 S.Ct. at 1552 ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."); *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir.1988); *United States v. Hayes*, 722 F.2d 723, 725 (11th Cir.1984). The burden shifts back to the initiating party upon a sufficient showing by the alleged contemnor. The party seeking to show contempt, then, has the burden of proving ability to comply. *Combs*, 785 F.2d at 984 ("The party seeking the contempt citation retains the ultimate burden of proof ..."); *In re Battaglia*, 653 F.2d 419, 423 (9th Cir.1981).

Here, GPS utilizes buzzword like "willful defiance", "facially inadequate", or "not approach[ing] satisfaction."Dkt. 172, P.4. However, GPS in its fourth motion presented no evidence to prove that (1) Noshirvan is able to comply with the Court Order beyond what has been provided, and that (2) any non-compliance was, in fact, willful or deliberate. As a matter of fact, the email correspondence between the parties clearly indicate that Noshirvan timely complied with the Court's August 02, 2024 Order. Noshirvan followed up and asked GPS to specifically identify what it was looking for and offered consent to obtain certain

documents from Tiktok.  See Ex. A. p. 1-10. Mr. Trainor refused to engage in discussion and communicate with specificity whatsoever. *Id.* Noshirvan produced all of the documents required to be produced or produced documents to the fullest extent of his ability.[2] See Declaration of Noshirvan attached as **Exhibit C.**

### b.  There is No Need For GPS's Fourth Motion

GPS claims without support that Noshirvan did not explain why "he cannot download his Tiktok." However, downloading his <u>entire</u> Tiktok is is not what this Court ordered. In this Court's August 02, 2024 Order, the Court addressing GPS's **Request Number 1,** ordered Noshirvan to provide comments from each video where GPS was referenced.[3] Despite this Court's limitation solely to GPS, Noshirvan produced all presently available comments from each video where GPS or Jennifer Couture was referenced. See Ex. C. Furthermore, TikTok's social media application did not allow Noshirvan to download or export his video comments.

---

[2] The Eleventh Circuit's "present" standard derives from the Second Circuit, which held that a defendant could not be held in contempt because "at the time of the contempt citations ... he did not have the present ability to comply with the court's order." *United States v. Wendy,* 575 F.2d 1025, 1031 (2d Cir.1978), cited in *United States v. Koblitz,* 803 F.2d 1523, 1527 (11th Cir.1986), cited in *Jordan v. Wilson,* 851 F.2d 1290, 1292 n. 2 (11th Cir.1988), quoted in *McGregor v. Chierico,* 206 F.3d 1378, 1382 (11th Cir.2000), cited in *Riccard v. Prudential Ins. Co.,* 307 F.3d 1277, 1296 (11th Cir.2002), quoted in *F.T.C. v. Leshin,* 618 F.3d 1221, 1232 (11th Cir.2010). And the Supreme Court, when reviewing a defendant's "present inability to comply with the order in question," looks to "the showing made by [the defendant] at the [contempt] hearing." *United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983).
[3] The Court utilized the term "plaintiff" and GPS was the only plaintiff at that time.

*See id* and *Screenshot_20240816_085711_My Files.jpg*.[4] So, Noshirvan took this Court's advice and as directed by the Court, went to a third party website and purchased the comments subject to the Court's August 02, 2024 Order. See Ex. C. The fact that Noshirvan had to purchase the comments and follower list from Exportcomments.com, begs the question: whether those items were even in his possession, custody, or control, and were required to be produced under those circumstances. GPS admits that "Tiktok caps the amount of comments" and followers "that can be exported at 5,000." Dkt. 172, p. 4. GPS complains that Exportcomment.com's comment retrival is insuficient. *Id.* But GPS cannot force or compel Noshirvan to produce documents that are not in his posession, custody, or control, or no longer exist (as it relates to third-parties). GPS then rambles about pricing tiers, which appears to be a poor attempt to discredit Noshirvan. But the only person who has been intentionally dishonest in this litigation is Mr. Trainor.[5] All comments and followers were run under the 11 dollar 5,000 comment tier. See

_____

[4] This particular screenshot clearly shows that "autofill.txt, following.txt, and profile.txt," is what Tiktok allowed to be downloaded. None of those downloads are responsive to this Court's August 02, 2024 Order.

[5] Mr. Trainor has repeatedly claimed that he did not know Joseph A. Camp in open court and GPS's moving papers. Mr. Trainor further claimed that the only reason he has correspondence with Joseph A. Camp is because someone "hacked" Joseph A. Camp's email account. However, on August 28, 2024, Mr. Trainor presented an email sent directly from Joseph A. Camp to Mr. Trainor. See Dkt. 170-1. Mr. Trainor's use of the Joseph A. Camp's email correspondence along with his arguments at that hearing clearly show that Mr. Trainor is working or regularly communicating for a common purpose with Joseph A. Camp.

Ex. C. It would make no sense for Noshirvan to pay 200 dollars to download 250,000 followers/comments when Tiktok would limit the export to 5,000 followers/comments or what is presently available - despite the tier purchased.

For **Request Number 8**, GPS claims that no "error message was produced" and erroneously concludes that the data was available for download. There was no error message because Tiktok simply did not provide all the reuqested information. See Ex.C. Noshirvan undertook resonable efforts to download the Court Ordered data from Tiktok. See Ex. C. Specifically, he messaged Tiktok through the app to no avail. *Id.* He emailed Tiktok. *Id.* When all else failed, he paid for the data from Exportcomments.com. *Id.* Noshirvan's actions and efforts are reasonable. This Court's August 02, 2024 Order does not require the impossible.

Interestingly, GPS argues or attempts to imply that Noshirvan did not comply because he did not produce nonresponsive txt files from Tiktok. Again, this Court ordered Noshirvan to (1) "provide comments to videos where GPS is referenced" (request #1), (2) provide rewards, gifts, and subscription fees through Tiktok for videos where GPS is referenced (Request #5), and (3) download a list of his 1.8 million viewers/followers (Request #8). The three files Tiktok allowed Noshirvan to download were his user profile, who Noshirvan is following, and autofill information. None of these downloads are responsive to this Court's Order. GPS is simply on a fishing trip.

GPS then goes into a lengthy argument why Exportcomments.com's fee service is not sufficent. See Dkt, p.6-8. GPS doesn't realize it, but GPS's argument supports Noshirvan's position. *Id.* at p. 8 (GPS admits the "videos are public" and "comments, replies" and "likes" can be "deleted, removed, made private, or altered" by the third-party commentor).   For example, GPS admits that Exportcomments.com cannot produce comments under certain conditions. *Id.* at p. 7. This is directly inline with what Noshirvan told GPS. See Ex. C. Furthermore, GPS does not argue that any video required to be produced exceeded 5000 coments. *See Id*. In fact, GPS, again admits that none of videos exceed 5000 comments.  *See Dkt. 172-4.* None of the video's comments came close to to 5000. GPS's entire "tier" argument is premised on faulty logic and inserted to discredit Noshirvan. Further, the Court should be aware that the responsive videos and comments thereto are roughly two years old. It is reasonable to assume that some comments are not presently available for myraid of reasons. GPS simply does not like the answer to its question. So, it protests. Full stop.

Next, GPS argues that it is entitled to direct messages, likes, favorites and accounts followed. See Dkt. 172, p. 8. But that is not what this Court Ordered. GPS also argues for **Request Number 5** that he did not produce information about his video income. *Id.* compare with *Ex. C.*  However, in its next breath, GPS admits that Noshirvan produced payments showing his Tiktik profit sharing,

subscription fees, and who paid the fees. *Id.*   GPS notably omits that live and reward analytics showing gifts, tips, bonuses, other rewards, and subscription information were timely produced. See Ex. C.   A copy of Noshirvan's Second Amended Response is attached as **Exhibit D**.   And, GPS never raised the issue of format or blurriness of the items produced. GPS cannot raise these arguments for the first time in its motion without a proper conferral. GPS's tactics constitute improper gamesmanship.

With regard to **Request Number 16**, GPS seeks communication with "Tiktok moderators."[6] Noshirvan stated none and this Court denied the request. GPS is well aware that Noshirvan does not have any communications with Tiktok employee modertors.   GPS is also well aware that subscriber and Tiktok user @CindyEsq1 is not a Tiktok employee or paid moderator. GPS's argument is a non-starter. At worst, Tiktok modifies moderator implying a paid employee of Tiktok. At best, the question is ambigious if GPS seeks information from non-Tiktok employee live moderators. With respect to **Request Number 17**, Noshirvan stated none and this Court denied the request. Further, GPS has presented no evidence to support its assertions as it pertains to Request Number 16 or 17.

With regard to **Request Numbers24-26**, GPS erroneously argues that Noshirvan "has not produced all of his communications with James McGibney

---

[6] https://www.tiktok.com/transparency/en/content-moderation/

("McGibney")" regardless of source. See Dkt. 172, p. 9. Then GPS mistakenly states that Noshirvan "argued ...only a single communication with McGibney was withheld due to syncing issues." *Id.* at p. 10. GPS's misinformation campaign is not supported by the record. See Dkt. 146, p. 11; 146-9. Mr. Trainor actually "confirmed via email that" the at issue  "Screenshots have already been produced."See Dkt. 146-9.

Next, GPS attempts to argue that because Noshirvan produced "1 video screen recording to prove that no missing sections exist between screenshots previously provided," and  "1 video recording showing Noshirvan's discussions with McGibney from January 2024 through August 2024" that he did not produce the requested information. See Dkt. 172 compare with Ex. D. Again, GPS made no complaint about the format prior filing its notice/motion. See Dkts. 167 and 172. GPS argues that the format "confused or frustrated" it. Dkt. 172, p. 10. However, the video format was provided to show that there were no missing gaps. See Ex. C and D. While GPS argues that the format is difficult to work with, Noshirvan asked GPS, via email, if it would like a different format prior to GPS filing its motion. See Ex. B, p. 9. GPS did not respond. Then GPS raised imaginary concerns about the veracity of Noshirvan's production. Dkt. 172, p. 10. Noshirvan did not intentionally "distort the audio quality" in the Janaury 2024 through August 2024 like GPS alleges. The irrelevant videos/audios were palyed at 2x speed. In fact,

none of the communications between Noshirvan and McGibney that occurred from the Janaury 2024 through August 2024 are relevant to the remaining issues this case. This inquiry is Mr. Trainor's fishing trip into McGibney because Mr. Trainor frivolously sued McGibney in New Jersey federal court for defamation. See 2:24-cv-08873-CCC-MAH. A copy of the complaint is attached as *Exhibit E*. Specifically, Mr. Trainor alleged that "McGibney'[s] defamatory falsely sworn declaration [filed in this case] stated Trainor committed acts in furtherance of a criminal conspiracy within the State of New Jersey to threaten and harass a New Jersey based process server and her company…." *Id.* at Dkt. 1. Interestingly, McGibney's Declaration makes no mention of "Trainor committ[ing] acts in furtherance of a criminal conspiracy." A copy of McGibney's Declarations is attached as **Exhibit F**. Perhaps, Mr. Trainor has guilty conscious? Or perhaps, he just needs to read the Declaration? In either case, using this case to carryout a personal vendetta is improper, malicious, and vexatious.

Next GPS argues that Noshirvan withheld five additional screenshots. See Dkt. 172, p. 11; 172-7. But, GPS admits that Noshirvan produced those same screenshots on August 16, 2024. *See id*; A copy of the email correspondence is attached as **Exhibit G**. First, the documents at Dkt. 172-7 do not contain an indentificaiton number. Thus, there is no reasonable way for Noshirvan to confirm the veracity of GPS's allegation that the items were not previously produced in

first 5GB of data. Second, even if they were not previsously produced, the inadvertent error was harmless, because GPS and Mr. Trainor timely received those items and 12.5 GB of additional data. See Ex. G. And, GPS admits same.

Additionally, GPS and Mr. Trainor mistakenly argue that this Court ordered the undersigned to produce his communications with McGibney. The undersigned does not believe the Court ordered such an undertaking. First, the undersigned advised the Court that he never acted as an intermediary for Noshirvan in his communications with McGibney. Second, the undersigned advised the Court that McGibney is his client on a separate matter, and production of those communications could invade the attorney-client or work product privilege. Third,  GPS never sent a formal request under Rule 34. Therefore, the undersigned has not had an real opportunity to properly respond.  Thus, even if this Court did order same, such an order would violate due process. As a real notice and  opportunity to be heard was not provided.  In any event, the undersigned does not have any communications with McGibney that were performed on Noshirvan's behalf.

Lastly, Noshirvan never objected or refused to provide consent to GPS to allow Tiktok to release comments and followers. In fact, Noshirvan offered same because of this Court's August 02, 2024 Order. See Ex. A-B. The fact of the matter is that GPS never asked for consent. The parties never conferred pursuant to Local

Rule 3.01(g). The Court never ordered Noshirvan to consent. GPS's case is underwater. It is drowning. Mr. Trainor wants retribution in the form of sanctions. See Ex. A-B. An eye for an eye. However, what Mr. Trainor seeks retribution for will not help him meet the elements of GPS's narrow remaining claims. Enough is enough. GPS's vexatious litation tactics must stop.

## V.      GPS's Request for Sanctions Must be Denied

### a.  Rule 11 Sanctions

Rule 11 does not apply to discovery motions. See Fed. R. Civ. P. 11(d); see also Rule 11(c)(2)(requiring 21-day safe harbor); *Nieves v. Walmart Stores, Inc.,* 219CV474FTM99NPM, 2019 WL 13185826, at *1 (M.D. Fla. Sept. 16, 2019). GPS did not comply with basic requirements of Rule 11. Therefore, any request made thereunder must be denied.

### b.  Rule 37 Sanctions

Motions to compel discovery under Fed. R. Civ. P. 37(a) are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope,* 730 F.2d 729, 731 (11th Cir. 1984). Rule 37, Federal Rules Civil Procedure, provides in relevant part:

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not

order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

Under Rule 37(c)(1), sanctions are not required if the non-disclosing party's failure was substantially justified or harmless. "An individual's discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.' " *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993). A discovery mistake is harmless "if it is honest [ ] and is coupled with the other party having sufficient knowledge that the material has not been produced." *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1308 (N.D. Ga. 2003). Whether the opposing party suffered prejudice underlies the harmlessness determination. *See Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 683 (M.D. Fla. 2010). The non-disclosing party bears "[t]he burden of establishing that a failure to disclose was substantially justified or harmless." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quoting *Leathers v. Pfizer*, Inc., 233 F.R.D. 687, 697 (N.D. Ga. 2006)). However, "[t]he district court has broad discretion in determining whether a violation is justified or harmless" under Rule 37. *Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012) (citation omitted).

On the other hand, because GPS did not show that Noshirvan failed to comply with the Court's Order, Rule 37 applies in Noshirvan's favor. *See* Fed. R. Civ. P. 37(a)(5)(B)("the court … must … require the movant, the attorney filing the motion, or both to pay the party … who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.")

## V.    Conclusion

Accordingly, the Court should deny GPS's Motion in its entirety, and order GPS and Mr. Trainor to pay Noshirvan's reasonable expenses in accordance with Rule 37(a)(5)(B), and any other relief this Court deems just and proper.

Respectfully submitted,

Nicholas A. Chiappetta, Esq.
Chiappetta Trial Lawyers
*Attorneys for Noshirvan*
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax:    (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on September ⎯13⎯, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Patrick Trainor, Esquire
Law Office of Patrick Trainor, Esq., LLC
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
Telephone: (201) 777-3327
Facsimile: (201) 896-7815
pt@ptesq.com
*Attorney for GPS*

/s/ Nicholas A. Chiappetta
Nicholas A. Chiappetta