THE LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC

19 Union Avenue, Suite 201 | Rutherford, New Jersey 07070
P: (201) 777-3327 | F: (201) 896-7815 | help@ptesq.com

December 31, 2024

Honorable Sheri Polster Chappell, U.S.D.J.
United States District Court
For the Middle District of Florida
2110 First Street
Fort Myers, Florida 33901

   Re: *Couture v. Noshirvan*
     Civil Case No.: 2:23-cv-00340-SPC-KCD
     *Request for Disclosure of Ex Parte Communications submitted to the Court*

Dear Judge Chappell,

  As Your Honor may recall, this office represented Jennifer Couture (hereinafter "Plaintiff" or "Couture") as plaintiff in the civil action *Couture v. Noshirvan*, 2:23-cv-00340-SPC-KCD (M.D. Fla. May 30, 2023). This office recently learned that throughout the pendency of this action the Court received *ex parte* communications (*e.g.*, emails, letters, phone calls, social media posts, and other forms of correspondence) that contained facts and information about the parties, the allegations and subject matter of Plaintiff's First Amended Complaint ("FAC") [D.E. 9] and Second Amended Complaint ("SAC") [D.E. 83]. The Court never notified the that it received these *ex parte* communications, did not provide the parties a copy of the *ex parte* communications, and did not disclose the content therein to the parties or to the public.

  This office knew of two *ex parte* email communications the Court received, because days after the Court received these ex parte emails, we were forwarded a copy by counsel for defendant, who was copied on the initial emails. Based upon recent social media and online posts by third-parties we reasonably believe that the Court received other *ex parte* communications, but did not notify the parties. The Court's failure to notify the parties it received ex parte communications is improper. Therefore, we write to request that the Court notify the parties of the *ex parte* communications it received, disclose the content of the *ex parte* communication, and provide all parties copies of same.

  For example, on September 4, 2023, the email address for the chambers of Magistrate Dudek received an *ex parte* communication that included a string of emails purportedly exchanged between defendant Danesh Noshirvan ("Defendant")

and an email account alleged to belong to Joseph Camp, where Defendant accused Camp of interfering with his efforts to retain a "new attorney" after Defendant's former attorney withdrew [D.E. 34] and Camp's alleged acknowledgement that he interfered with Defendant's ability to retain new counsel.  Counsel for co-defendant TikTok, Inc., was copied on this *ex parte* email, but this office was not.

Next, on October 9, 2023, an *ex parte* communication was emailed to the email address for Magistrate Dudek's chambers and the email address for Magistrate Dudek allegedly by Mr. Camp.  The email contained allegations of Defendant's ability to edit and photoshop online content.  Magistrate Dudek replied to the email and instructed the sender not to send emails directly to the Court and told the sender to pursue the proper method of communicating with the Court.  Counsel for Defendant Nicholas Chiappetta, Esq. ("Chiappetta") was copied on this *ex parte* email and on Magistrate Dudek's reply, but this office was not copied on either email.  We learned of this email on October 11, 2023, when we were forwarded a copy by Mr. Chiappetta.  A copy of the *ex parte* email that was forwarded to us by Mr. Chiappetta is attached hereto as **Exhibit A**.

Further, on September 24, 2024, an *ex parte* email was received by Magistrate Dudek's chambers from an unknown sender with allegations about Defendant and Chiappetta.  Defendant, Mr. Chiappetta and the National Center for Missing and Exploited Children were copied on this email, but this office was not.  We did not learn of this *ex parte* email until September 25, 2024, when we were forwarded a copy by Chiappetta, which we believe to be a complete and accurate reproduction, but cannot say so with certainty.  A copy of the *ex parte* email that was forwarded to us by Mr. Chiappetta is attached hereto as **Exhibit B**.

The timing of the *ex parte* communications is suspect.  They were received on or before return dates and dates of scheduled events in support of Defendant, such that it appears they were intended to prejudice the Court's opinion of Ms. Couture.  For instance, the September 4, 2023, *ex parte* email was received by Magistrate Dudek during the pendency of the Court's decision on Defendant's Amended Third Motion for Extension in Time to File Notice of Lead Counsel and Answer ("Third Extension") [D.E. 48].  The attached email string alleges that Camp was the purported cause of Defendant's former attorney's withdrawal [D.E. 34] and Defendant cited this alleged interference as the cause of his failure to retain counsel and as the reason why the Court must grant his Third Extension [*See* D.E. 48, Exhibit A at 48-1, and Exhibit C 48-3].  The Court granted Defendant's motion to extend on September 11, 2023, but did not notify the parties that it received this *ex parte* communication.

The October 9, 2023, *ex parte* email was received by Magistrate Dudek two days before the return date for Plaintiff's opposition to Defendant's motion to dismiss the FAC. [D.E. 65]. We learned of this *ex parte* email on the October 11, 2023, return date, when we were forwarded a copy by Chiappetta, which we believe to be a complete and accurate reproduction, but cannot say so with certainty. The failure of the Court to timely notify the parties of the *ex parte* email precluded our ability to respond to the allegations therein, and from conducting meaningful discovery into the source of the *ex parte* communication before Plaintiff's opposition had to be filed.

On September 24, 2024, Magistrate Dudek's chambers received an *ex parte* email approximately two hours after the Court set October 3, 2024, as the hearing date on Plaintiff's Fourth Motion to Compel Defendant to Produce Discovery ("Fourth Motion") [D.E. 189]. We learned of this *ex parte* email the following day when we received a second-hand reproduction from Mr. Chiappetta.

Plaintiff previously argued in opposition to Defendant's former attorney's motion to withdraw [D.E. 34] that the *ex parte* communications are similar to Defendant's social media conduct and past use of fictitious social media personas to impersonate others. D.E. 35. The *ex parte* communicator's habit of excluding this office from these *ex parte* communications is analogous to Defendant's practice throughout these proceedings of blind carbon copying ("bcc") third parties on emails to this office that are full of conclusory statements and long-winded baseless allegations against us. For example, on September 12, 2023, this office received an email from Defendant, wherein, Defendant repeated the allegation from the September 4, 2023, *ex parte* email that Mr. Camp interfered with Defendant's ability to retain counsel, and further, Defendant accused Plaintiff and this office of facilitating Camp's alleged interference, and clumsily attempted to compel us to admit his delusional accusations. A copy of Defendant's September 12, 2023, email and our reply is attached hereto as **Exhibit C**.

Moreover, we did not know it at the time, but Defendant bcc'd an agent with the Federal Bureau of Investigation ("FBI"), the New Jersey Office of Attorney Ethics ("OAE"), and counsel for co-defendant TikTok, Inc., on this email. *Id.* Counsel for TikTok never disclosed to us that they were bcc'd on the email, and Defendant did not disclose that he bcc'd the FBI and OAE. We learned that Defendant bcc'd the FBI on December 17, 2024, during the deposition of Defendant's alleged expert in the later filed case *Noshirvan v. Couture*, 2:23-cv-01218-JES-KCD (M.D. Fla. Dec. 26, 2023), whereby, Chiappetta produced a copy of the September 12, 2023, email, but he produced the email as it was emailed from Defendant's email account, which exposed the bcc'd parties. For comparison, we attached Defendant's email as this office received it on September 12, 2023, at

**Exhibit C**, EXC002, and the email with the bcc'd parties exposed as sent from Defendant's email account that Chiappetta produced December 17, 2024, at **Exhibit C**, EXC005.

We argued in our opposition to Defendant's former attorney's motion to withdraw that the *ex parte* emails are analogous to Defendant's habit of creating fictitious online personas to communicate with others as alleged in the FAC and SAC. *See* SAC, ¶¶ 24-25, *figs.* 8-9, D.E. 83. Moreover, we argued the *ex parte* emails are similar to the conduct of Defendant's associate James McGibney ("McGibney"), who has been sanctioned for litigation misconduct that included creating online personas to impersonate opposing counsel and opposing parties. *See* Plaintiff's Third Motion for an Order to Compel Defedant's Production and Motion for an Order to Compel Defendant to Disclose his Agreement with James McGibney [D.E. 143 at 3] (*citing James McGibney and Via View, Inc., v. Thomas Retzlaff, et al.*, 67th District Court of Tarrant County, Texas Case No.: 067-270669-14 (Jul. 21, 2016)); *Rauhauser v. McGibney*, 508 S.W. 3d 377 (Tex. App. Fort Worth, Dec. 11, 2014) (*rev'd* to *McGibney v. Retzlaff*, 548 S.W. 3d 816 (Tex. App. Fort Worth, Apr. 19, 2018) (matter is pending to determine attorney's fees to be awarded against McGibney).

Mr. Chiappetta previously referred to this conduct as "psyc ops" (*sic*) intended to harm Plaintiff for speaking critically of Defendant. *See* D.E. 143 at 3, *See also* Exhibit E, D.E. 143-5; and Exhibit G, D.E. 143-7. This misconduct appears to have worked to Defendant's benefit, because in spite of four motions to compel he was not required to produce relevant discovery, such as his TikTok data. Moreover, after the Court dismissed the FAC, on December 4, 2023, in an Instagram Direct Message to Defendant, McGibney celebrated the effect of the *ex parte* emails, when he told Defendant that it was clear from reading the Court's Opinion and Order to dismiss the FAC [D.E. 81] that this Court was "not a fan of" Ms. Couture's counsel – this writer. *See* below.





On April 9, 2024, the Court dismissed the SAC [D.E. 111] with prejudice, without notifying the parties that it received *ex parte* communications, nor disclosed the content of the *ex parte* communications, which was unfair and improperly impaired Plaintiff's due process rights.

While certain that this demand may be construed as an attempt to relitigate the dismissal of Ms. Couture's complaint, it is not. The demand that the Court notify the parties that it received *ex parte* communications and disclose the content of same, is a demand for compliance with the *Federal Rules of Civil Procedure,* the *Code of Conduct for United States Judges,* and precedential case law.

*Rule 5* of the *Federal Rules of Civil Procedure* requires that every "pleading filed after the original complaint," including every paper relating to discovery, every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties. *Fed. R. Civ. P. 5(a)(1)(B)-(E).* Pursuant to the *Code of Conduct for United States Judges* (2019), *Canon 3(A)(4)* "[i]f a judge receives an unauthorized *ex parte* communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested." The Court's obligation to disclose is not precluded, because the *ex parte* communication was received from a non-party, whereby,

> "[t]he restriction on *ex parte* communications concerning a proceeding includes communications from lawyers, law teachers, and others who are not participants in the proceeding. A judge may consult with other judges or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities. A judge should make reasonable efforts to ensure that law clerks and other court personnel comply with this provision."

*Commentary to Canon 3(A)(4), Code of Conduct for United States Judges* (2019).

Courts are required to disclose *ex parte* communications, in order to give the parties the opportunity to use the discovery process to determine whether the *ex parte* communications contain relevant information. *Snook v. Tr. Co. of Georgia Bank of Savannah,* 859 F.2d 865, 871 (11th Cir. 1988). To refuse the parties access to the information presented to the court *ex parte* would subject them to a trial unaware of the accusations leveled against them and their attorneys. *In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir. 1986). "It is difficult to imagine a more serious incursion on fairness" where one party has access to or possesses private communications that were sent to the court, but the other party does not. *United States v. $99,480.00 in*

*United States Currency*, No. 06-22966-civ-King/Garber, 2007 U.S. Dist. LEXIS 24654 *3-4 (S.D. Fla. Apr. 3, 2007).

The Eleventh Circuit has recognized that "our adversarial legal system generally does not tolerate *ex parte* determinations on the merits of a civil case." *Tonnesen v. Marlin Yacht Mfg.*, 171 F. App'x 810, 814 (11th Cir. 2006) (*citing Application of Eisenberg*, 654 F.2d 1107, 1112 (5th Cir. Unit B Sept. 1981)). *Ex parte* communications are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing requires a reasonable opportunity to know the claims of the opposing party and to meet them. *In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir. 1986). The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. *Lloyd v. Leeper*, No. 3:16-cv-906-J-34PDB, 2018 U.S. Dist. LEXIS 144897 *9 (M.D. Fla. Aug. 27, 2018) (*quoting Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980). A party's "right to due process encompasses the individual's right to be aware of and refute the evidence against the merits of his case." *Tonnesen*, 171 F. App'x at 814, (*quoting Vining v. Runyon*, 99 F.3d 1056, 1057 (11th Cir. 1996)).

We acknowledge that a court may consider *ex parte* communications to determine the merits of the litigation, but only when they involve compelling national security concerns or are permitted by statute. *Vining v. Runyon*, 99 F.3d 1056, 1057-58 (11th Cir. 1996). However, absent a compelling national security interest, even in civil cases, a district court may not consider *ex parte* communications or adopt procedures that tend to significantly favor one party over the other. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242-43 (1980). National security concerns are not present in this case.

The Court's failure to notify the parties it received *ex parte* communications unfairly deprived Plaintiff her due process rights to be aware of, and to refute allegations against the merits of her case. *Tonnesen*, 171 F. App'x at 814, (*quoting Vining v. Runyon*, 99 F.3d 1056, 1057 (11th Cir. 1996)). The Court's failure to notify the parties it received *ex parte* emails prejudiced Plaintiff, because on at least two occasions the opposing party in this action was privy to private communications with the Court, where notice was withheld from Plaintiff. Moreover, in spite of producing proof of computer hacker McGibney's past litigation misconduct that is similar to the *ex parte* emails the Court received, the Court denied Plaintiff's motion to compel Defendant to disclose his agreement with McGibney, which further deprived her of an opportunity to discover the *ex parte* claims being made about her. *See* D.E. 143 and 163.

Ms. Couture respectfully requests that the Court notify the parties of all *ex parte* communications it has received and replied to, produce copies of same, and place the *ex parte* communications on the docket.

Respectfully,

Patrick Trainor, Esq.