IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| JENNIFER COUTURE, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DANESH NOSHIRVAN a/k/a<br>@THATDANESHGUY,<br><br>Defendants. | Civil Case No.: 2:23-cv-00340<br><br>**UNOPPOSED AND OPPOSED** |

**JENNIFER COUTURE'S MOTION FOR ORDER TO RELEASE *EX PARTE*
COMMUNICATIONS RECEIVED BY THE COURT**

Jennifer Couture (hereinafter "Couture") respectfully moves the Court for an order to release all *ex parte* communications (*e.g.*, emails, letters, phone calls, social media posts, and other forms of correspondence; hereinafter collectively *"ex parte emails"*) the Court received during the pendency of this action. This office represented Ms. Couture, who was dismissed as a plaintiff on April 9, 2024 [D.E. 111]. We recently learned that throughout the pendency of this action the Court received several *ex parte* emails that contained alleged facts and information about the parties, the allegations and subject matter of the First Amended Complaint ("FAC") [D.E. 9] and Second Amended Complaint ("SAC") [D.E. 83].

The Court did not notify the parties that it received these *ex parte* emails, disclose their content, provide copies of the *ex parte* emails to the parties, nor were they placed on the public docket. The Court's failure to notify the parties that it

received *ex parte* emails was improper, therefore, we respectfully move the Court to notify the parties of the *ex parte* emails it received, to disclose their content, and to provide all parties copies of same.

## FACTUAL BACKGROUND

This office knew of *ex parte* emails the Court received, because after the Court received them, Nicholas Chiappetta, Esq. ("Chiappetta") counsel for defendant Danesh Noshirvan ("Defendant"), who was copied on the original *ex parte* emails, forwarded this office a copy of the alleged *ex parte* email.[1] However, based upon recent social media messages and online posts of third-parties we reasonably believe the Court received several additional *ex parte* emails that were not disclosed, which contained negative allegations about Couture and about this office.

For example, on September 4, 2023, the email address for Magistrate Dudek's chambers received an *ex parte* email that included a string of emails that were purportedly exchanged between Defendant and an email account that allegedly belonged to Joseph Camp ("Camp") that were apparently exchanged after Defendant's former attorney withdrew [D.E. 34]. In the emails, Defendant accused Camp of interfering with his efforts to retain a "new attorney," and the account that allegedly belonged to Camp acknowledged that he caused Defendant's first attorney to withdraw and of interfering with Defendant's ability to retain new counsel.

---

[1] We accept at face value that the *ex parte* emails that were forwarded to us by Mr. Chiappetta who was copied on original are complete and accurate reproductions, but we cannot say so with certainty because we were excluded from the original, nor were we forwarded the original by the Court, who was the primary recipient.

Chiappetta and counsel for defendant TikTok, Inc., were copied on this *ex parte* email, but this office was not.

On October 9, 2023, an *ex parte* email was emailed to Magistrate Dudek's chambers and an email address directed to Magistrate Dudek allegedly by Mr. Camp that contained allegations of Defendant's ability to edit and photoshop online content. Magistrate Dudek replied to the email and instructed the sender to pursue the proper method of communicating with the Court and told the sender not to send emails directly to the Court. Chiappetta was copied on this *ex parte* email and on Magistrate Dudek's reply, but this office was not copied on either email. We learned of this email two days later on October 11, 2023, when Chiappetta forwarded an alleged copy to this office. A copy of the *ex parte* email as forwarded to us by Mr. Chiappetta is attached hereto as **Exhibit A**.

Further, on September 24, 2024, an *ex parte* email that contained allegations about Defendant and Chiappetta was received by Magistrate Dudek's chambers from an unknown sender. Defendant, Chiappetta and the National Center for Missing and Exploited Children were copied on this email, but this office was not. This office learned of this *ex parte* email on September 25, 2024, when Chiappetta forwarded an alleged copy to us. A copy of the *ex parte* email as forwarded to us by Mr. Chiappetta is attached hereto as **Exhibit B**.

The timing and content of the *ex parte* emails is such that it appears they were intended to prejudice the Court against Couture, because the content of each

supports Defendant's position in matters that were immediately pending before the Court, they contained negative allegations against Couture, and were received on or immediately before motion return dates or dates of scheduled events.  For instance, the September 4, 2023, *ex parte* email was received by Magistrate Dudek during the pendency of Defendant's Amended Third Motion for Extension in Time to File Notice of Lead Counsel and Answer ("Third Extension") [D.E. 48].  The email string alleges that Camp purportedly caused Defendant's former attorney's withdrawal [D.E. 34].  In his motion, Defendant cited Camp's alleged interference as the cause of his failure and inability to retain new counsel, and as the reason why the Court must grant his Third Extension [*See* D.E. 48, Exhibit A at 48-1, and Exhibit C 48-3].  The Court granted Defendant's motion to extend September 11, 2023, without disclosing the email.

    Next, the October 9, 2023, *ex parte* email was received by Magistrate Dudek's chambers two days before the return date for Couture's opposition to Defendant's motion to dismiss the FAC.  [D.E. 65].  Chiappetta was copied on the original email, but this office was not and Chiappetta forwarded this office an alleged copy of the *ex parte* email on October 11, 2023.  The failure of the Court to notify the parties that it received this *ex parte* email prejudiced Couture, because it precluded her ability to conduct discovery into the source of the *ex parte* email and constrained her ability to respond to the allegations therein before the return date of her opposition.

    On September 24, 2024, Magistrate Dudek's chambers received an *ex parte* email approximately two hours after the Court set October 3, 2024, as the hearing

4

date on plaintiff's Fourth Motion to Compel Defendant to Produce Discovery ("Fourth Motion") [D.E. 189]. Chiappetta was copied on this *ex parte* email, but this office was not, and we did not learn of this *ex parte* email until the following day when Chiappetta forwarded the alleged email to us.

     Disclosure of the *ex parte* emails is paramount, because Couture opposed Defendant's former attorney's withdrawal on the grounds that the *ex parte* emails are similar to the subject matter of the FAC, specifically Defendant's social media misconduct and use of fictitious social media personas to impersonate others. *See* Plaintiff's Opposition to Defendant's Counsel's Motion to Withdraw ("Att. Wd."), D.E. 35. Moreover, this type of misconduct is within the ken of Defendant, who has a documented history of encouraging others to interfere in judicial proceedings and harass federal judges. In June 2022, after the Supreme Court decided *Dobbs v. Jackson*, 597 U.S. 215 (2022), Defendant posted a TikTok video that went viral, where he said that since the Supreme Court had "gone back on its word," that he was going back on his word, and Defendant published a video that "doxed" or publicly disclosed the home addresses of Justice Thomas, Justice Gorsuch, Justice Alito, Justice Kavanaugh, Justice Barrett, and Chief Justice Roberts.

     We also note that the communicator of these *ex parte* emails excluded this office from communications where he disparaged Couture and/or this office, which is analogous to Defendant's practice throughout these proceedings of blind carbon copying ("bcc") third parties on emails to this office, where he lodges conclusory and long-winded allegations against us. For example, on September 12, 2023, Defendant

emailed this office and accused Couture and this office of facilitating Camp's alleged interference with his ability to retain an attorney, and clumsily attempted to get us to admit his delusional accusations. A copy of Defendant's September 12, 2023, email and our reply is attached as **Exhibit C**. We did not know it at the time, but Defendant bcc'd an agent with the Federal Bureau of Investigation ("FBI"), the New Jersey Office of Attorney Ethics ("OAE"), and counsel for co-defendant TikTok, Inc. *Id.* Defendant did not disclose that he bcc'd the FBI and OAE and counsel for TikTok never disclosed they were bcc'd.

This office only learned that Defendant bcc'd the FBI, OAE, and counsel for TikTok on December 17, 2024, during the deposition of Defendant's alleged expert witness in the later filed case *Noshirvan v. Couture*, 2:23-cv-01218-JES-KCD (M.D. Fla. Dec. 26, 2023), whereby, Chiappetta produced a copy of the September 12, 2023, email, as it was emailed from Defendant's email account, which exposed the bcc'd parties. For comparison, we attached Defendant's email as this office received it, at **Exhibit C**, EXC002, and the email with the bcc'd parties exposed as sent from Defendant's email account that Chiappetta produced December 17, 2024, at **Exhibit C**, EXC005.

We also argued in our opposition to Defendant's former attorney's motion to withdraw that the *ex parte* emails are analogous to Defendant's habit of creating fictitious online personas to communicate with others as Couture alleged in the FAC and SAC. *See* SAC, ¶¶ 24-25, *figs.* 8-9, D.E. 83. Furthermore, we argued that the *ex*

6

*parte* emails are similar to the litigation misconduct of Defendant's computer hacker associate James McGibney ("McGibney"), who has been sanctioned for misconduct that included creating online personas to impersonate opposing parties and their counsel. *See Plaintiff's Third Motion for an Order to Compel Defendant's Production and Motion for an Order to Compel Defendant to Disclose his Agreement with James McGibney*, D.E. 143 at 3. Mr. Chiappetta referred to this conduct as "psyc ops" (*sic*) intended to harm Plaintiff for speaking critically of Defendant. *See* D.E. 143 at 3, *See also* Exhibit E, D.E. 143-5; and Exhibit G, D.E. 143-7.

In spite of producing evidence of McGibney's past litigation misconduct which is similar to the *ex parte* emails the Court received, the Court denied Plaintiff's motion to compel Defendant to disclose his agreement with McGibney. *See* D.E. 143 and 163.

The *ex parte* emails intended to harm Couture appear to have worked, because in spite of four motions to compel, Defendant was not required to produce relevant discovery, such as his TikTok data, which was the vehicle he used to coordinate Couture's harassment. And on December 4, 2023, in an Instagram Direct Message to Defendant, McGibney celebrated the apparent efficacy of the *ex parte* emails, when he told Defendant that it was clear from reading the Court's Opinion and Order to dismiss the FAC [D.E. 81] that this Court was "not a fan of" Couture's counsel – this writer. *See* below.

7



On April 9, 2024, the Court dismissed the SAC [D.E. 111] with prejudice, without notifying the parties that it received *ex parte* communications, nor disclosed the content of the *ex parte* communications, which was unfair and improperly impaired Plaintiff's due process rights.

## LEGAL STANDARD

While certain that this demand may be construed as an attempt to relitigate the dismissal of Ms. Couture's complaint, it is not. The demand that the Court notify the parties that it received *ex parte* communications and disclose the content of same, is a demand for compliance with the *Federal Rules of Civil Procedure,* the *Code of Conduct for United States Judges,* and precedential case law.

*Rule 5* of the *Federal Rules of Civil Procedure* requires that every "pleading filed after the original complaint," including every paper relating to discovery, every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties. *Fed. R. Civ. P. 5(a)(1)(B)-(E).* Pursuant to the *Code of Conduct for United States Judges* (2019), *Canon 3(A)(4)* "[i]f a judge receives an unauthorized *ex parte* communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject

8

matter of the communication and allow the parties an opportunity to respond, if requested." The Court's obligation to disclose is not precluded, because the *ex parte* communication was received from a non-party, whereby,

> "[t]he restriction on *ex parte* communications concerning a proceeding includes communications from lawyers, law teachers, and others who are not participants in the proceeding. A judge may consult with other judges or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities. A judge should make reasonable efforts to ensure that law clerks and other court personnel comply with this provision."

*Commentary to Canon 3(A)(4), Code of Conduct for United States Judges* (2019).

Courts are required to disclose *ex parte* communications that it receives, in order to give the parties the opportunity to use the discovery process to determine whether the *ex parte* communications contain relevant information. *Snook v. Tr. Co. of Georgia Bank of Savannah*, 859 F.2d 865, 871 (11th Cir. 1988). To refuse the parties access to the information presented to the court *ex parte* would subject them to a trial unaware of the accusations leveled against them and their attorneys. *In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir. 1986). It is difficult to imagine a more serious incursion on fairness where one party has access to or possesses private communications that were sent to the court, but the other party does not." *United States v. $99,480.00 in United States Currency*, No. 06-22966-civ-King/Garber, 2007 U.S. Dist. LEXIS 24654 *3-4 (S.D. Fla. Apr. 3, 2007).

The Eleventh Circuit has recognized that "our adversarial legal system generally does not tolerate *ex parte* determinations on the merits of a civil case." *Tonnesen v. Marlin Yacht Mfg.*, 171 F. App'x 810, 814 (11th Cir. 2006) (*citing*

*Application of Eisenberg*, 654 F.2d 1107, 1112 (5th Cir. Unit B Sept. 1981)). *Ex parte* communications are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing requires a reasonable opportunity to know the claims of the opposing party and to meet them. *In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir. 1986). The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. *Lloyd v. Leeper*, No. 3:16-cv-906-J-34PDB, 2018 U.S. Dist. LEXIS 144897 *9 (M.D. Fla. Aug. 27, 2018) (*quoting Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980). A party's "right to due process encompasses the individual's right to be aware of and refute the evidence against the merits of his case." *Tonnesen*, 171 F. App'x at 814, (*quoting Vining v. Runyon*, 99 F.3d 1056, 1057 (11th Cir. 1996)).

A court may consider *ex parte* communications to determine the merits of the litigation, but only when they involve compelling national security concerns or are permitted by statute. *Vining v. Runyon*, 99 F.3d 1056, 1057-58 (11th Cir. 1996). Absent a compelling national security interest, even in civil cases, a district court may not consider *ex parte* communications or adopt procedures that tend to significantly favor one party over the other. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242-43 (1980). National security concerns are not present in this case.

The Court's failure to notify the parties that it received *ex parte* emails unfairly deprived Couture of her due process rights to be aware of, and to refute allegations against the merits of her case. *Tonnesen*, 171 F. App'x at 814, (*quoting Vining v.*

10

*Runyon*, 99 F.3d 1056, 1057 (11th Cir. 1996)). The Court's failure to notify was highly prejudicial to Couture, because on at least two occasions her opposition was privy to information contained in *ex parte* emails to the Court, which the Court withheld from her. Production of the *ex parte* emails is required to determine what, if any impact they had on the Court's decisions in this matter, especially where two such *ex parte* emails, that Couture received via belated second-hand productions contained negative allegations about Couture and her counsel.

For the reasons stated herein, Couture respectfully requests that the Court notify the parties of all *ex parte* communications it has received and replied to, produce copies of same to all parties and disclose the *ex parte* communications on the docket.

Date: January 13, 2025  _____
Patrick Trainor, Esq.
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com

## **LOCAL RULE 3.01(g) CERTIFICATION**

Counsel for Plaintiff certifies that on Friday, January 10, 2025, I conferred with Defendant's counsel Mr. Chiappetta and he does not oppose the release of the *ex parte* emails, however, he opposes on the grounds that he believes Ms. Couture may not make this request.

11

On Monday, January 13, 2025, Plaintiff's counsel confirmed via email that they do not oppose this motion. On Monday, January 13, 2025, counsel for TikTok, Inc., and ByteDance, Inc., advised that they take no position on the motion.

Date: January 13, 2025  _____
Patrick Trainor, Esq.

## CERTIFICATION OF SERVICE

I hereby certify that on January 13, 2025, I electronically filed the foregoing with the Clerk of Court by using the Court's ECF/CM system, which will send notice of electronic filing to all parties of record.

Dated: January 13, 2025  _____
Patrick Trainor, Esq.