**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

RALPH GARRAMONE, M.D.,
P.A. d/b/a GARRAMONE
PLASTIC SURGERY,

Plaintiffs,                                       Case No.: 2:23-cv-00340-SPC-KCD

v.

DANESH NOSHIRVAN,

Defendant.

_____/

**DEFENDANT DANESH NOSHIRVAN'S MOTION**
**FOR SUMMARY JUDGMENT AS TO COUNTS II AND III**
**OF THE SECOND AMENDED COMPLAINT**

## I.      Introduction

Only two claims remain: Count II, a civil-conspiracy claim by Ralph

Garramone, M.D., P.A. d/b/a Garramone Plastic Surgery ("**GPS**"), and Count III,

a claim for interference with prospective economic advantage. Both claims fail for

the same threshold reasons. GPS has not identified an actionable business

relationship with any patient, client, referral source, or other identifiable third

party that Defendant Danesh Noshirvan knew about and intentionally disrupted.

It also has no admissible, non-speculative damages proof. GPS served a

placeholder damages disclosure, promised to supplement it, then never supplied

the required computation and supporting materials that Rule 26(a)(1)(A)(iii) and

1

Rule 26(e) require. Instead, GPS relies on generalized allegations about reputational harm, unidentified patients, unspecified referral sources, and unidentified online reviewers. Florida law does not permit a tortious-interference claim to proceed on that kind of amorphous customer-base theory, and Rule 37(c)(1) does not permit GPS to avoid summary judgment with damages information it failed to disclose.

Count II also fails independently because civil conspiracy is not a freestanding tort under Florida law. It requires proof of an agreement between two or more persons to accomplish an unlawful act or a lawful act by unlawful means, an overt act in furtherance of the agreement, and damages caused by the conspiracy. GPS has identified only one alleged co-conspirator, Jordan Fredricks, and admitted it cannot provide his address, phone number, or email address. GPS has no evidence of an agreement between Noshirvan and any alleged reviewer, caller, patient, referral source, or other person to interfere with GPS's business relationships. Because Count III fails and because the record lacks evidence of an agreement or underlying tort, Count II necessarily fails. Summary judgment should be entered for Noshirvan on Counts II and III.

## II.     Statement Of Undisputed Material Facts

1.     Counts II and III are claims asserted by GPS only. Count II alleges that Noshirvan led and participated in campaigns of online and telephonic harassment,

2

cyberstalking, and defamatory publications intended to damage GPS's reputation and interfere with relationships between GPS and its patients and clients. Dkt. 83 ¶¶ 58-64; Dkt. 111. Count III alleges that Noshirvan interfered with GPS's existing patients and prospective customers by using information allegedly supplied by A.O. and by creating fictitious defamatory reviews on professional-review websites. Dkt. 83  ¶¶ 65-73; Dkt. 111.

2.       GPS is a professional association. Dr. Ralph Garramone testified as GPS's corporate representative. See **Exhibit A** (Garramone Dep.[1]) 7:10-13; Dkt. 83 ¶ 2.

3.       GPS testified that Hidden Harbor's HR division, not GPS, handled employee contracting and hiring/firing decisions. Ex. A, 10:20-13:25.

4.       When asked to identify medical associates or providers at the practice during the relevant period, GPS identified Dr. Allison Yee, Valerie Walk, and Steffany Acovski; GPS testified that Valerie Walk and Steffany Acovski remained with the practice and that the only doctor who left between January 26, 2022 and May 23, 2023 was Dr. Yee. *Id.* 18:7-23:18.

5.        GPS testified that its tortious-interference claim was not based solely on Dr. Yee. But GPS could not provide any contact information for Dr. Yee. Id. 23:16-24-8.  When asked whether GPS was claiming lost contracts with patients, GPS testified that it did not have contracts

---

[1] Dr. Garramone's deposition as corporate representative for GPS was taken in two parts: June 17, 2024 and September 25, 2024. Exhibit A contains both portions combined by the Court reporter.

with patients in the same way it had contracts with staff; rather, the alleged patient relationship meant a person who came for consultation, paid a fee, and later canceled surgery. Id. 24:4-27:23.

6.  GPS could not identify how many patients allegedly canceled procedures. Id. 24:11-27-23.

7.  GPS alleged that Noshirvan incited followers, but when shown one video alleged to be part of the misconduct, GPS admitted that the particular video contained "no inciting" of the group. *Id.* 26:12-28:8.

8.  GPS testified that, other than posting TikTok videos and giving out that Couture worked at GPS, it had no direct knowledge that Noshirvan personally direct-messaged or called GPS. *Id.* 83:10-83:20; 84:10-16.

9.  When asked who GPS claimed Noshirvan conspired with, GPS identified only Jordan Fredricks and could not provide any other name, address, phone number, or email address for Fredricks. Id. 84:19-86:13.

10.  When asked whether GPS had evidence that Noshirvan personally called patients or masqueraded as someone else to interfere with patients, GPS identified only the Erica Sabonis communication, which GPS admitted was the communication where Noshirvan contacted Couture to verify whether she was the person in the Dunkin' Donuts parking-lot video. *Id.* 84:10-86:17.

4

11.     GPS brought this lawsuit alleging existing patients as part of its claim, but testified that it had not obtained consent from any patient to disclose patient names or related information for the lawsuit. *Id.* 86:18-88:21.

12.     GPS also testified that it did not know whether Noshirvan knew any of the patients and framed the alleged direct interference as posts, videos, and followers writing negative reviews. Id. 88:12-92:1.

13.     When asked whether, other than existing patients and Dr. Yee, GPS claimed any other lost business relationships, GPS referred generally to referrals from doctors and former patients, but did not identify any specific referral source or specific lost-referred patient. *Id.* 92:5-92:20.

14.     GPS testified that its damages calculation was based on reports and profit-and-loss statements; GPS had not produced those reports or profit-and-loss statements as of the continuation deposition. *Id.* 263:3-264:23.

15.     On redirect, GPS estimated a $3 million revenue loss attributable to Noshirvan, but the testimony was based on the witness's claimed monthly review of financials rather than produced supporting documents or expert analysis. Id. 353:17-354:24. Additionally, GPS did not retain any damage experts.

16.     Plaintiffs served initial disclosures on September 12, 2023. See **Exhibit B.** In the damages section, they stated that damages calculations were "not yet complete," that they would amend their disclosures and provide supporting

5

documentation "as soon as calculations are completed," and that GPS allegedly sustained "at least $2.9 million" in immediate lost revenue. Ex. B.

17.     The same initial disclosures did not identify any particular surgeon, surgical group, patient, referral source, date, procedure, contract, invoice, payment history, profit-and-loss statement, or methodology supporting the $2.9 million figure. Instead, the disclosures listed only a lump-sum category for "loss of contracted surgical facility revenue" and stated that calculations for lost revenue from cancelled initial procedures, cancelled follow-up or maintenance procedures, reputational and goodwill damages, and compensatory damages were "ongoing" and would be produced later. *Id.* at 8-9.

18.     At deposition, GPS confirmed that the $2.9 million number came from the initial disclosures and that the majority of the claimed "loss of contracted surgical facility revenue" related to Dr. Yee. Ex. A.  324:23-329:11.

19.     When asked why GPS had not produced documents supporting that damages assertion, counsel objected and asserted a confidentiality position; GPS nevertheless maintained that it intended to rely on the undisclosed information at trial. *Id.* 326:17-327:10; 263:13-264:8.

20.     GPS never identified a completed damages computation for the patient-cancellation, follow-up-procedure, goodwill, reputational, or other

compensatory-damages categories that its initial disclosures said were still being calculated. Ex. B.

## III.    Legal Standard

### A.    Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party opposing summary judgment must come forward with evidence sufficient for a reasonable jury to return a verdict in its favor; metaphysical doubt, speculation, and conclusory allegations do not create a triable issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Rule 56(c) further requires the nonmovant to support factual positions with record evidence capable of presentation in admissible form. Fed. R. Civ. P. 56(c)(1)-(2).

## IV.    Argument

### A.    Count III Fails Because GPS Cannot Prove a Protected Business Relationship or Prospective Economic Advantage.

Under Florida law, the elements of tortious interference with an advantageous business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) the defendant's knowledge of the relationship; (3) intentional and unjustified

7

interference with the relationship; and (4) damage resulting from the interference. *Ethan Allen, Inc. v. Georgetown Manor*, Inc., 647 So. 2d 812, 814 (Fla. 1994); *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). The claimed relationship must afford the plaintiff existing or prospective legal or contractual rights and, as a general rule, must be evidenced by an actual and identifiable understanding or agreement that in all probability would have been completed but for the alleged interference. *Ethan Allen*, 647 So. 2d at 814-15; *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 821-22 (Fla. 1996). Mere hope that past or prospective customers might return in the future is not enough. *Ethan Allen*, 647 So. 2d at 815.

GPS's Count III is exactly the type of customer-base theory rejected by *Ethan Allen* and *Ferguson.* The pleading refers to "existing patients," "prospective customers," and "lucrative, existing, and prospective relationships," but discovery has not produced the evidence Florida law requires: an identifiable patient, client, referral source, or prospective customer; an actual understanding or agreement with that person; Noshirvan's knowledge of that particular relationship; and causation showing that the relationship probably would have been completed but for Noshirvan's conduct. Dkt. 83, ¶¶ 67-73; See Ex. A.

GPS's corporate-representative testimony confirms the gap. GPS admitted it does not have contracts with patients in the way it has contracts with staff, and when asked how many patients supposedly canceled, GPS had no specific

8

number. Ex. A., 23:12-25:11. GPS did not obtain patient consent to disclose the patients necessary to prove the claim. *Id.* 86:18-88:21. It did not know whether Noshirvan knew any of those patients. Id. 89:12-18 ("*How would I know--if [Noshirvan] knew them or not.*"). And when asked about business relationships other than existing patients and Dr. Yee, GPS resorted to generalized "referrals from other doctors in town" and "former patients" without identifying any particular referral source or prospective transaction. Id. 92:5-95:21. Such proof cannot satisfy *Ethan Allen* or *Ferguson.*

Nor can GPS save Count III by relying on Dr. Allison Yee. GPS expressly testified that the tortious-interference claim was not based on Dr. Yee's departure. *Id.* 24:4-8; 24:11-16. In any event, GPS's testimony about Dr. Yee's reason for leaving was hearsay from an alleged resignation document that had not been produced at the time of the deposition. *Id.* 21:10-22:24. Without admissible evidence establishing Noshirvan's knowledge of an identifiable contract or business relationship with Dr. Yee and intentional procurement of its breach or termination, Dr. Yee cannot create a triable issue.

### B. Count III Fails Because GPS Cannot Prove Noshirvan's Knowledge of Any Particular Relationship or Intentional, Unjustified Interference

The knowledge element is relationship-specific. A defendant cannot intentionally interfere with a business relationship he does not know exists. GPS alleges that Noshirvan received confidential information concerning existing patients from Annette Osario "A.O." and used that information to flood patient social-media accounts with links to videos. Dkt. 83, ¶¶ 67-68. But the record does not identify any patient whose information Noshirvan supposedly received, any patient whose social-media account was flooded, any message sent to any patient, or any scheduled procedure canceled because of a message from Noshirvan or anyone acting by agreement with him.

The corporate-representative testimony instead confirms that the claim rests on attenuated inferences. GPS testified that Noshirvan's personal acts were posting videos, identifying that Couture worked at GPS, and allegedly saying "we're going after Garramone Plastic Surgery now." Ex. A, 83:10-84:16. GPS had no direct knowledge that Noshirvan personally direct-messaged or called GPS or its patients. *Id.* When asked whether Noshirvan personally called or masqueraded as someone else to interfere with patients, GPS identified only the Erica Sabonis communication, which was a communication to Couture to verify whether she was the person in the parking-lot video, not a communication with any patient or prospective customer. *Id.* 85:10-86:16.

GPS's theory that unidentified followers or reviewers acted after seeing TikTok videos is not proof of Noshirvan's intentional interference with an identifiable GPS relationship. It is, at most, speculation that online content caused unknown third parties to take unknown actions that affected unknown patients or referral sources. That is insufficient under Rule 56 and Florida tortious-interference law.

### C.    Count III Fails Because GPS Cannot Prove Causation or Non-Speculative Damages

Florida law requires damages caused by the alleged interference. *Ethan Allen*, 647 So. 2d at 814. Lost-profit or business-damage theories must be proven with reasonable certainty and cannot rest on speculation. *See W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1350-51 (Fla. 1989). Damages that are too speculative, or that are dependent on changing circumstances, are generally unrecoverable. *Asokan v. Am. Gen. Life Ins. Co.*, 2017 U.S. Dist. LEXIS 212087, at *6 (M.D. Fla. Aug. 24, 2017).

GPS cannot bridge the causation gap. It has no specific number of canceled patients, no patient names, no patient testimony, no identified referral source, no identified prospective customer, and no admissible evidence linking any lost procedure or referral to a statement by Noshirvan. Ex. A., 24:6-16; 86:18-89:18; 91:5-

11

92:23. GPS's damages theory likewise lacks record support.[2] GPS testified that its damages calculation was based on reports and profit-and-loss statements, but those reports and P&Ls had not been produced as of the continuation deposition. Ex. A. 263:3-266:23. Although GPS later estimated an approximately $3 million loss, the testimony did not identify admissible financial records, expert methodology, particular lost transactions, or a reliable causal apportionment tying that sum to Noshirvan rather than market conditions, practice management, provider turnover, or other causes. *Id.* 353:17-354:24. No reasonable jury can award tortious-interference damages on that record.

### D.   GPS Cannot Avoid Summary Judgment With Damages Categories and Documents It Failed to Disclose or Supplement Under Rules 26 and 37

Rule 26(a)(1)(A)(iii) required GPS, without awaiting a discovery request, to provide "a computation of each category of damages" it claimed and to make available the documents or other evidentiary material on which each computation was based. Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26(e)(1)(A) required GPS to supplement those disclosures in a timely manner if they were incomplete or incorrect in some material respect. Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c)(1) supplies the consequence: a party that fails to provide information as required by Rule 26(a)

---

[2] The tort of intentional interference does not allow recovery for humiliation and embarrassment, mental anguish, and the like, as does the tort of defamation. *LRX, Inc. v. Horizon Assocs. J.V.,* 922 So. 2d 984, 986 (Fla. 4th DCA 2005); see also Ethan Allen, 647 So. 2d at 815.

or (e) "is not allowed to use that information" to supply evidence on a motion, at a hearing, or at trial unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *see also Prieto v. Malgor*, 361 F.3d 1313, 1318 (11th Cir. 2004); *Fox v. Experian Info. Sols., Inc.*, 2026 U.S. Dist. LEXIS 70668, at *6 (E.D. Cal. Mar. 31, 2026)("The Advisory Committee Notes clarify that Rule 37(c)(1) is a self-executing provision....").

GPS did not provide the computation Rule 26 required. Its September 12, 2023 initial disclosures said that damages calculations were "not yet complete," promised an amendment and supporting documentation "as soon as calculations are completed," and then supplied only a lump-sum assertion of "at least $2.9 million" in alleged immediate lost revenue. Ex. B. For the remaining categories, including lost revenue from cancelled initial procedures, lost revenue from cancelled follow-up and maintenance procedures, reputational and goodwill damages, and compensatory damages, GPS stated only that the "[c]alculation of damages is ongoing" and would be produced when available. *Id.* at 8-9. A placeholder number and a promise to supplement are not a computation of each damages category. *See Circuitronix, LLC v. Kinwong Electronic Co.*, Ltd., 993 F.3d 1299, 1307 (11th Cir. 2021) (recognizing that "Rule 26 requires a party to include in its initial discovery disclosures a 'computation of each category of damages claimed'"); *Dayton Valley Invs., LLC v. Union Pac. R. Co.*, No. 2:08-CV-00127-ECR,

13

2010 WL 3829219, at *3 (D. Nev. Sept. 24, 2010) (excluding a computation of damages that was provided for the first time in a supplemental disclosure submitted months after expiration of the deadline for initial disclosures); *Bespoke Studio, Inc. v. Gabbe Priv. Ltd.*, 348 F.R.D. 262, 265 (N.D. Fla. 2024); "To comply with this requirement, 'parties must perform some analysis, and cannot rely on general statements.'" *Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc.*, 663 F. Supp. 3d 1294, 1303 (M.D. Fla. 2023); *Project Travel, LLC v. Rowe*, No. 8:24-cv-2817-LSG, 2025 U.S. Dist. LEXIS 201165, at *4 (M.D. Fla. Oct. 10, 2025)(finding damage computation within a party's control and its non-disclosure not substantially justified).

The failure matters. GPS now attempts to use the $2.9 million figure and broader alleged economic and reputational losses to try to satisfy the damages element of Counts II and III. *See Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985); *see also Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1092 (11th Cir. 1994) ("[P]roof of damages [i]s an essential element of a tortious interference claim."); *Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc.*, 987 So. 2d 706, 707 (Fla. 4th DCA 2008)(same); *see AlphaMed Pharm. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1352 (S.D. Fla. 2006) ("Because AlphaMed was unable to prove its entitlement to lost profit damages, the only measure of damages sought, AlphaMed's claim for tortious interference fails as a matter of law.").

14

But GPS has not disclosed the surgeon or surgical group contracts allegedly terminated, the patients who allegedly cancelled, the amounts tied to those alleged cancellations, the calculation methodology, the financial records on which the number is based, or a competent apportionment showing that any loss was caused by Noshirvan rather than by Dr. Yee's voluntary departure, practice operations, unrelated online reviews, market conditions, or other causes. At deposition, GPS confirmed that the majority of the disclosed "loss of contracted surgical facility revenue" related to Dr. Yee and then admitted that the revenue loss from her departure was still something GPS was calculating. Ex. A., 324:23-329:11. That is not admissible proof of damages with reasonable certainty.

Nor is the nondisclosure harmless. Damages are not collateral here; they are essential elements of both remaining claims. *See Worldwide Primates, Inc.*, 26 F.3d at 1092. The failure to disclose a computation, supporting records, and name patients deprived Noshirvan of the ability to test the alleged losses, subpoena third parties, obtain patient or provider testimony, retain a rebuttal damages expert, or examine the claimed financial records during discovery. GPS cannot cure that prejudice by offering undisclosed financial materials or a new damages calculation at summary judgment or trial. Rule 37(c)(1) bars that use, and without those excluded materials GPS has no non-speculative damages evidence sufficient to create a triable issue on Counts II or III.

15

Put simply, GPS did not disclose essential damages: who was lost, what transaction was lost, when it was lost, how much revenue or profit was lost, what documents support the computation, and how the loss is causally apportioned to Noshirvan rather than to Plaintiffs' own counter-campaign or independent third-party conduct. Rule 26 required a computation of damages and the documents supporting that computation.

The same result follows even apart from Rule 37. A plaintiff cannot carry its summary-judgment burden on damages through conclusory or speculative estimates, unproduced documents, and unquantified categories that were expressly described as "ongoing." Because GPS has no properly disclosed damages computation and no admissible, transaction-level evidence connecting any alleged loss to Noshirvan's conduct, Count III fails. Count II fails as well because civil conspiracy requires damages caused by the alleged conspiracy and an actionable underlying tort.

### E. Count II Fails Because Civil Conspiracy Requires an Underlying Tort and an Actual Agreement

Civil conspiracy under Florida law requires: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) an overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result. *See Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). Civil conspiracy is derivative: absent an actionable underlying wrong, the conspiracy

claim fails. *See Blatt v. Green, Rose, Kahn & Piotrkowski*, 456 So. 2d 949, 951 (Fla. 3d DCA 1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007).

Count II is derivative of the same theories pleaded in Count III and of alleged defamatory publications that are no longer pleaded as a stand-alone surviving count. Dkt. 83, ¶¶ 58-64. Because GPS cannot prove tortious interference as set out above, Count II lacks the required underlying tort. And to the extent Count II is premised on alleged defamation, GPS has not identified actionable false statements by Noshirvan about GPS that caused legally cognizable damage independent of the failed interference theory.

Count II also fails for lack of evidence of an agreement. *Raimi,* 702 So. 2d at 1284 ("Manny and Ida were the only parties privy to this telephonic conversation, Furlong obviously had no direct proof of any agreement to use undue influence…."). GPS was asked directly who Noshirvan allegedly conspired with. It identified only Jordan Fredricks, but could not identify anyone else, and could not provide Fredricks's address, phone number, or email address. Ex. A., 84:17-85:9. GPS then conceded that, as to the interference theory, it was not alleging that Noshirvan personally interfered in the way a direct actor would; instead, it relied on videos, Internet research, online reviews, and social-media activity by other people. *Id.* 85:10-86:24. But parallel online activity, reactions by strangers, or generalized follower behavior does not prove a meeting of the minds to

17

accomplish an unlawful act. *See Diamond v. Rosenfeld*, 511 So. 2d 1031, 1034 (Fla. 4th DCA 1987)("circumstantial evidence" must "outweigh all reasonable inferences to the contrary."). Without evidence, direct or circumstantial, from which a reasonable jury could infer a meeting of the minds to accomplish an unlawful act or a lawful act by unlawful means, Count II fails as a matter of law.

**F.    GPS Cannot Repackage an Unpled and Unsupported Defamation Theory as Tortious Interference or Civil Conspiracy**

GPS's remaining claims are not defamation claims. Counts I and IV through VII have been dismissed, and only Count II for civil conspiracy and Count III for interference with prospective economic advantage remain. Yet the operative allegations supporting both remaining counts repeatedly depend on alleged "defamatory publications," "false defamatory statements," "fictitious defamatory reviews," reputational harm, and alleged online publications by unidentified third parties. Dkt. 83, ¶¶ 58-73. GPS cannot avoid the requirements and defenses applicable to defamation by relabeling the same publication-based injury as tortious interference or civil conspiracy.

To the extent Count II or III are premised on alleged defamatory speech, GPS has not identified the actionable statements with the specificity required to test falsity, speaker, publication, fault, and damages. Count II alleges generally that Noshirvan participated in "defamatory publications" and "defamatory statements," and Count III alleges generally that he created or caused "fictitious

18

defamatory reviews" on professional-review websites. *Id.* ¶¶ 60-64, 68-69. But GPS has not identified the specific allegedly false statement about GPS, the speaker, the date of publication, the recipient, the reason the statement was false, or the damages caused by that statement as opposed to generalized reputational harm or independent third-party conduct. See Ward v. Triple Canopy, Inc., No. 8:17-cv-802-T-24 MAP, 2017 U.S. Dist. LEXIS 115472, at *4 (M.D. Fla. July 25, 2017)(requiring "a description of the statement," "specific[] identify the persons to whom the allegedly defamatory comments were made," and "the time frame in which the publication occurred."). Its corporate-representative testimony confirms the same problem: GPS relied on videos, online reviews, Internet research, and generalized follower activity, but could not identify the specific patients, reviewers, referral sources, or lost transactions necessary to tie any alleged statement to a recoverable interference injury. Ex. A, 85:10-86:24; 88:12-92:20.

"To support a cause of action for conspiracy to defame, it is … incumbent upon a plaintiff to properly allege those elements which would establish a defamation[.]" *See Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1027 (Fla. Dist. Ct. App. 1981). Florida law does not permit a plaintiff to plead around defamation limitations by recasting a publication-based grievance as another tort. "In Florida, a single publication gives rise to a single cause of action," and the injuries resulting from that publication are items of damage arising from the same

19

wrong. *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002). Courts applying Florida law have dismissed or barred tortious-interference and similar claims when they are premised on the same allegedly defamatory publication and seek the same reputational or business damages. *See Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256-57 (S.D. Fla. 2014); *Tobinick v. Novella*, No. 9:14-CV-80781-ROSENBERG/BRANNON, 2015 WL 328236, at *10-11 (S.D. Fla. Jan. 23, 2015). Noshirvan pleaded that, to the extent GPS's tortious-interference theory is based on "false defamatory statements," it is barred because Plaintiffs did not plead a viable defamation claim and did not provide the notice required by § 770.01, Florida Statutes. Noshirvan also pleaded the single-publication rule, truth, privilege, justification, and public-concern defenses. See Dkt. 115, Affirmative Defenses ¶¶ 3-5, 8, 17.

The Court should not allow GPS to use Count III as a substitute defamation claim. If the alleged wrongful act is the publication of false statements, GPS had to plead and prove actionable defamation, comply with applicable conditions precedent, and identify the statements at issue. It did not properly allege and cannot prove defamation. If GPS instead relies on factually distinct interference conduct, then it must identify the particular business relationship, Noshirvan's knowledge of that relationship, an intentional and unjustified act directed at that relationship, and damages caused by the interference. See *Gardner v. Martino,*563 F.3d 981, 992 (9th

20

Cir. 2009) ("when a claim of tortious interference with business relationships is brought as a result of constitutionally-protected speech, the claim is subject to the same First Amendment requirements that govern actions for defamation."). As shown above, it has not done that either.

The same defect defeats Count II. Civil conspiracy is derivative and requires an actionable underlying tort. GPS cannot base a conspiracy claim on generalized allegations that Noshirvan or unidentified third parties published defamatory statements when GPS has no surviving defamation claim, no identified actionable false statements, no evidence of an agreement to publish any specific false statement, and no independent damages caused by such an agreement. To permit Count II to proceed on that theory would allow GPS to resurrect a defamation claim that is not properly before the Court. Count II therefore fails to the extent it is premised on an alleged conspiracy to defame, and Count III fails to the extent it is premised on the same alleged defamatory publications.

### G. Liability Cannot Be Imposed on Noshirvan for Independent Third-Party Reviews or Posts Absent Evidence He Created Them or Agreed to Their Creation

The remaining claims repeatedly rely on online reviews and posts allegedly made by other people. See Dkt. 83, ¶¶ 60-64, 68-69. GPS's own testimony shows it cannot identify the necessary link between Noshirvan and the third-party content. *See, e.g., N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982)("The right

21

to associate does not lose constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected."); *Parts Depot Co., L.P. By & Through Parts Depot Co., Inc. v. Florida Auto Supply, Inc.*, 669 So. 2d 321, 324 (Fla. 4th DCA 1996)("mere receipt of complaints standing alone, does not constitute a conspiracy.). When asked to identify evidence that reviews came from Noshirvan's followers or were posted by persons acting in concert with him, GPS relied on timing, assumptions about followers, and generalized allegations that Noshirvan's videos caused the reaction. That is not evidence that Noshirvan authored the reviews, directed a specific reviewer, knew of a specific patient relationship, or agreed with a reviewer to interfere with GPS. And GPS's assumptions and generalizations  certainly do not outweigh "all reasonable inferences to the contrary." *Raimi*, 702 So. 2d at 1284.

The same evidence also supports Noshirvan's pleaded defenses of unclean hands, justification, and intervening or superseding causation. Plaintiffs' own evidence shows a parallel campaign involving Camp, reputation-management vendors, online removals, social-media monitoring, and public response efforts. See 2:23-cv-1218, Dkts. 466, 468, 470, 472-480, 508-9. Those activities may explain why online attention continued, why reputational issues persisted, but they do not establish that Noshirvan authored, directed, agreed to, or is legally responsible for independent third-party reviews or posts.

22

To the extent GPS seeks to hold Noshirvan liable as the publisher or speaker of third-party online content supplied by other information-content providers, such a theory is independently barred by 47 U.S.C. § 230(c)(1), which prevents treating a provider or user of an interactive computer service as the publisher or speaker of information provided by another information content provider. At minimum, the absence of record evidence that Noshirvan created, materially contributed to, or agreed to create the specific reviews or posts eliminates any triable issue on Counts II and III.

**V.      Conclusion**

GPS has had discovery to identify the business relationships, patients, referral sources, communications, conspirators, damages, and damages computations necessary to prove Counts II and III. The record still contains only generalized allegations of reputational harm, unidentified patients, unidentified prospective customers, unidentified reviewers, unsupported causation, speculative damages, and undisclosed or inadequately supplemented damages categories. Couture's and Garramone's individual testimony and exhibits in the 1218 Case do not, and cannot, cure those defects. They do not identify the lost relationships or non-speculative damages required for Count III or the agreement required for Count II. Because GPS cannot prove essential elements of tortious interference or civil conspiracy, Defendant Danesh Noshirvan respectfully

requests that the Court enter summary judgment in his favor on Counts II and III

of the Second Amended Complaint, and grant such further relief as the Court

deems just and proper.

Respectfully submitted,

Nicholas A. Chiappetta, Esq.
**Chiappetta Trial Lawyers**
Attorneys for Noshirvan
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax:    (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that conferral is not required for this motion for summary judgment. See Local Rule 3.01(g).

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following: all counsel of record.

*/s/ Nicholas A. Chiappetta*
Nicholas A. Chiappetta

24