UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JENNIFER COUTURE; RALPH GARRAMONE M.D. P.A. d/b/a GARRAMONE PLASTIC SURGERY,

Plaintiff,

v. Case No: 2:23-cv-340-KCD-KRH

DANESH NOSHIRVAN a/k/a @THATDANESHGUY,

Defendant.

---

**ORDER**

This lawsuit stems from a viral video. The footage captured two women arguing in a Dunkin' Donuts parking lot. It eventually reached Defendant Danesh Noshirvan, a TikTok influencer with a large online audience. Noshirvan published the video, identified one of the women as Jennifer Couture, and told his millions of followers she worked for Plaintiff Garramone Plastic Surgery.

According to Garramone Plastic Surgery, Noshirvan's post prompted false online reviews, calls, and emails to its office. And Noshirvan allegedly coordinated this response with his online co-conspirators. The fallout for

Garramone Plastic Surgery was canceled surgeries, a departed doctor, and significant security costs.

Extensive motions practice has pared this case down to a single plaintiff—Garramone Plastic Surgery—and just two surviving claims: civil conspiracy (Count II) and tortious interference with a business relationship (Count III). Both parties now move for summary judgment. (Docs. 215, 217.)

After review, the Court finds that the record only permits Garramone Plastic Surgery's tortious interference claim to go to trial. No evidence shows an agreement between the alleged conspirators, and Garramone Plastic Surgery's theory stretches civil conspiracy liability too far. So Noshirvan's Motion for Summary Judgment (Doc. 215) [1] is **GRANTED IN PART AND DENIED IN PART**, and Garramone Plastic Surgery's Motion for Summary Judgment (Doc. 217) is **DENIED**.

## I. Background

If material facts remain in dispute, the Court addresses them in the analysis below, viewing the record "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alteration shave been omitted in this and later citations.

As noted, the story begins with a viral video of a parking-lot argument. Convinced that one of the women had broken the law, Noshirvan set out to uncover her identity. (Doc. 220 ¶ 7.) He deployed a "sock puppet" social media account, posing as a concerned bystander to gain her trust. The ruse worked, and Couture unwittingly confirmed her involvement. (Doc. 222-2 at 25.) Armed with that info, Noshirvan published a TikTok video broadcasting both Couture's name and her employer—Garramone Plastic Surgery.

Noshirvan's followers quickly took to the comments with ideas for how to retaliate. One suggested to "schedule appointments and not show up[.]" (*Id.* at 50.) Another pitched calling Garramone Plastic Surgery to ask about Couture. (*Id.*) And two users went so far as to agree that "we are now working on reviews for his business[.]" (*Id.* at 47.) Just as the comments suggested, Garramone Plastic Surgery received emails, voicemails, and fictitious reviews. (*Id.* at 6, 32-45, 52-54.)

While there is no evidence Noshirvan was directly involved in these activities, he did communicate with a former employee of Garramone Plastic Surgery and someone named Emily Botyos. The former employee claimed to be "team Danesh" and instructed Noshirvan to subpoena her if he wanted a copy of her non-disclosure agreement. (*Id.* at 12, 14.) Later, the former employee told Noshirvan about Couture's friendship with the Lee County Sheriff. (*Id.* at 16.) Noshirvan's conversation with Botyos, on the other hand,

concerned his own actions. There, Noshirvan admitted he "tricked [Couture] into confirming her name," before continuing that he has "done this with 100s of people[.]" (*Id.* at 25-26.)

Apparently having endured enough of this negative publicity, patients cancelled their scheduled procedures, a physician left the practice, and Garramone Plastic Surgery hired security personnel and installed an enhanced security system. (*See* Deposition of Garramone Plastic Surgery at 24-25, 345:19-347:18; Doc. 215-1 at 348:13–24, 353:17–355:1, *Noshirvan v. Couture*, No. 2:23-cv-1218-KCD-KRH; Doc. 217-1 at ¶¶ 18-21.) Garramone Plastic Surgery now seeks to recover those damages.

## II. Legal Standard

Summary judgment is not a substitute for trial. It is appropriate only "when a movant shows there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." *Gonzalez v. Indep. Ord. of Foresters*, No. 24-10758, 2025 WL 337898, at *2 (11th Cir. Jan. 30, 2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at *1 (M.D. Fla. Dec. 28, 2023). "An issue is genuine if a reasonable jury could

return a verdict for the nonmoving party." *Do v. Geico Gen. Ins. Co.*, No. 1:17-CV-23041-JLK, 2019 WL 331295, at *2 (S.D. Fla. Jan. 25, 2019).

The framework governing summary judgment does not change when the parties file cross-motions. *Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001). Cross-motions for summary judgment are treated separately, "view[ing] the facts in the light most favorable to the non-moving party on each motion." *Cowen v. Sec'y of Ga.*, 22 F.4th 1227, 1231 (11th Cir. 2022). Ultimately, "[w]hen parties jointly move for summary judgment, the court has three options: granting summary judgment for the plaintiff under the defendant's best case, granting summary judgment for the defendant under the plaintiff's best case, or denying both motions for summary judgment and proceeding to trial." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 959 (11th Cir. 2023).

## III. Discussion

The surviving claims both rely on the same theory: Noshirvan incited his followers to flood Garramone Plastic Surgery with false reviews, calls, and emails. While this theory presents a viable tortious inference claim, it does not evidence an actionable conspiracy.

In Florida, a civil conspiracy requires: (1) "an agreement between two or more parties"; (2) "to do an unlawful act or to do a lawful act by unlawful means"; (3) "the doing of some overt act in pursuance of the conspiracy"; and

(4) "damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997); *see also GE Real Est. Servs., Inc. v. Mandich Real Est. Advisors, Inc.*, 337 So. 3d 416, 420–21 (Fla. Dist. Ct. App. 2021). An agreement can be express or implied. *See Gilison v. Flagler Bank*, 303 So. 3d 999, 1004 (Fla. Dist. Ct. App. 2020). But where a party lacks direct evidence of a conspiracy, circumstantial evidence only establishes an agreement where it "outweighs all reasonable inferences to the contrary." *See Raimi*, 702 So. 2d at 1284.

Garramone Plastic Surgery cannot show an agreement exists. Its best case relies on three people: (1) a former Garramone Plastic Surgery employee; (2) Emily Botyos; and (3) Noshirvan's followers. Though Garramone Plastic Surgery also alleged Jordan Fredricks as a co-conspirator, it cites no evidence about his involvement in the record.

Starting with the former employee, the evidence shows no agreement to harm the business. The messages cited only show the former employee declining to provide Noshirvan with the non-disclosure agreement. (Doc. 222-2 at 12.) True, she invited Noshirvan to subpoena her and even claimed to be "team Danesh" and "rooting for him." (*Id.* at 12, 14.) But that only permits a reasonable inference that she is supporting his lawsuit. Even the claimed non-public information she provided to Noshirvan dealt with Couture—not Garramone Plastic Surgery. (Doc. 222-2 at 16.) No reasonable jury could

conclude that this evidence outweighs all reasonable inferences that the former employee was either supporting Noshirvan's lawsuit or instead going after Couture.

The alleged Botyos agreement suffers the same fate. The messages between Botyos and Noshirvan are, like above, about Couture. (Doc. 222-2 at 18-23.) The lone, isolated reference to Garramone comes nowhere close to establishing a coordinated attack on the business. (*Id.* at 20.) At this stage, a plaintiff needs evidence of an actual agreement to survive. But these exhibits leave no room for reasonable dispute. They might show a shared plan to harass Couture, but they do not evidence a plot against Garramone Plastic Surgery. (*Id.* at 18-30.)

That leaves the alleged agreement between Noshirvan and his followers. Garramone Plastic Surgery first claims direct incitement, but the evidence falls short. Noshirvan certainly gave his audience the practice's name, but he did not issue the marching orders to attack its reviews. (Doc. 222-2 at 47.) That call to action came from someone else—a user named @motherofrockets. Garramone Plastic Surgery does provide a post where Noshirvan suggested calling businesses around the practice. (Doc. 222-2 at 49.) But that post is a far cry from launching a targeted harassment campaign against Garramone Plastic Surgery, which is the conduct at issue. There is simply not enough evidence for a jury to conclude Noshirvan directed his followers' actions.

Garramone Plastic Surgery separately leans on indirect incitement, claiming that alone is enough to prove a conspiracy. But that argument expands Florida civil conspiracy liability beyond its breaking point. The cases cited in the briefing prove the point. *See, e.g.*, *Raimi*, 702 So. 2d at 1284-85; *Blatt v. Green, Rose, Kahn & Piotrkowski*, 456 So. 2d 949, 951 (Fla. Dist. Ct. App. 1984) (finding a conspiracy agreement sufficiently pled where defendants breached a fiduciary duty by improperly distributing assets in violation of a written agreement); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007) (finding no agreement where complaint lacked allegations of the intent of co-conspirators in obtaining insurance policies and filing for benefits); *Bivens Gardens Off. Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 912 (11th Cir. 1998) (finding no agreement reached because evidence only showed "that something suspicious was going on"). When courts find an actionable agreement, there is often at least some direct communication between the conspirators. That crucial link is missing here.

The defining feature of any civil conspiracy is an agreement. To hold a defendant liable for the acts of others, there must be "a meeting of two independent minds intent on" committing an unlawful act. *Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So. 2d 673, 676 (Fla. Dist. Ct. App. 1991). So to survive summary judgment, a plaintiff has to show evidence of an agreement, or at least the kind of parallel conduct that inescapably implies one. The record

here certainly shows that Noshirvan's followers committed wrongful acts. It may even show that he knew his followers were bound to respond with this sort of misconduct. But the Court declines to endorse a rule that anticipating bad behavior creates a conspiracy, at least not without some Florida law in support.

In conducting its own research, the Court could find only one case involving social media. *See Conradis v. Buonocore*, No. 6:18-CV-1486-EJK, 2021 WL 4243720, at *4 (M.D. Fla. Sept. 17, 2021). It offers no meaningful support to Garramone Plastic Surgery because the defendant directly encouraged *and* recruited third parties to engage in a specific act. At bottom, Garramone Plastic Surgery has failed to prove an actionable agreement between Noshirvan and his followers. Noshirvan is thus entitled to summary judgment on Count II.

Neither party is entitled to summary judgment on Count III. To succeed on a claim for tortious interference under Florida law, the plaintiff must prove: "(1) the existence of a business relationship, not necessarily evidence by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage[s.]" *A Advocs. & Att'ys of Kennedy L. Grp. V. Uiterwyk*, 435 So. 3d 671, 673 (Fla. Dist. Ct. App. 2026). The business relationship, though not requiring an enforceable contract, does require "an

actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *See Shopping Ctr. Int., LLC v. Tab 250, Ltd.*, 433 So. 3d 406, 417 (Fla. Dist. Ct. App. 2026). In other words, mere hope that some past customers will return in the future is not enough. *See Collier HMA Physician Mgmt., LLC v. NCH Healthcare Sys., Inc.*, 591 F. Supp. 3d 1204, 1215 (M.D. Fla. 2022).

There is no shortage of evidence showing both protected business relationships and Noshirvan's knowledge of them. Garramone Plastic Surgery's testimony highlights interference with its existing patients and with Dr. Allison Yee, an associate physician who left the practice amid the fallout. (*See* Deposition of Garramone Plastic Surgery at 24–25, 345:19–347:18, *Noshirvan v. Couture*, No. 2:23-cv-1218-KCD-KRH.) Florida law does not require Noshirvan to know these individuals by name. He merely had to know the business relationships existed. *See, e.g.*, *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). The targeted nature of the online attack—especially the bogus reviews planted on the Yelp and Google pages—is more than enough for a jury to infer that Noshirvan knew he was interfering with the practice's clientele. (Doc. 222-2 at 6.)

Further, there is evidence of competent damages. Garramone Plastic Surgery testified that it lost about $900,000 in non-surgical procedures and $130,000 in surgical procedures. (*See* Deposition of Garramone Plastic Surgery

at 24–25, 345:19–347:18; Doc. 215-1 at 348:13–24, 353:17–355:1, *Noshirvan v. Couture*, No. 2:23-cv-1218-KCD-KRH; Doc. 217-1 at ¶¶ 18–21.) Then there are the costs Garramone Plastic Surgery incurred for security personnel and a security surveillance system. (Doc. 217-1 at ¶ 18.) So, contrary to Noshirvan's claim, there is competent evidence of damages.[2]

What is not clear though, is whether there was intentional, unjustified interference. True, Noshirvan is a stranger to Garramone Plastic Surgery's relationship with its patients and staff because he has no beneficial or economic interest in them. *See Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1320 (S.D. Fla. 2014). But Noshirvan's intent in making his posts is best left for the jury. A reasonable jury could conclude Noshirvan's intent was to harass and target Garramone Plastic Surgery. (Doc. 217-1 at ¶¶ 15, 19; Doc. 215-1 at 25:15–23, 272:4–25.) A reasonable jury could also conclude, however, that Noshirvan's intent was just to harass and target Couture. (Doc. 217-1 at 32–45 (providing screenshots of reviews that frequently refer to Couture rather than the company); Doc. 222-2 at 18–30.) So Garramone Plastic Surgery's

[2] Noshirvan also mounts a procedural attack on the damages element, arguing that the claim must fail because Garramone Plastic Surgery never provided the damages calculations required under Fed. R. Civ. P. 26. (Doc. 215 at 1.) He is right that Garramone Plastic Surgery failed to supplement its initial damages calculation. But the deposition testimony shows that failure was harmless. Noshirvan was put on notice of at least some concrete damages, giving him a fair opportunity to defend against the claim. The Court is therefore inclined to limit Garramone Plastic Surgery to the damages discussed in its testimony, but will reserve the final boundaries of that limitation for trial.

motion for summary judgement on liability must be denied since a jury question remains.

So too must Noshirvan's motion be denied as it relates to his affirmative defenses and 47 U.S.C. § 230 argument. Noshirvan primarily relies upon his pleaded defenses of unclean hands, justification, and intervening or superseding causation. These defenses rest upon Joseph Camp's involvement in another lawsuit in this division. (*See* Order on Summary Judgment, Doc. 697, *Noshirvan v. Couture*, No. 2:23-cv-1218-KCD-KRH). As the Court noted there, that is a question for the jury and cannot support summary judgment. (*Id.*)

As for Section 230, it does not apply in this case. Section 230 protects a "provider or user of an interactive computer service" from being treated as the "publisher or speaker" of information provided by another. *See* 47 U.S.C. § 230(c)(1). While there is admittedly little case law regarding users of interactive computer services, a user or provider is still responsible for their own encouragement of, or material contribution to, unlawful content. *See, e.g.*, *Elliott v. Donegan*, 596 F. Supp. 3d 453, 463–64 (E.D.N.Y. 2022); *Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136, 1161–63 (N.D. Ala. 2022). Noshirvan published multiple videos on his social media accounts specifically identifying Garramone Plastic Surgery. The videos can be interpreted as a call to action for his followers—especially given Noshirvan's comments that he had done this

to numerous people before. (Doc. 222-2 at 22.) Noshirvan cannot escape liability by focusing on the reviews, calls, and emails. After all, it is his own publication that a reasonable jury could conclude sparked them. So Noshirvan's defenses fail as a matter of law, and Count III must go to the jury.

## IV. Conclusion

Garramone Plastic Surgery's theory for Count II stretches civil conspiracy beyond its logical limit. Further, the record lacks evidence to support an inference that either the former Garramone Plastic Surgery employee or Botyos agreed to join the alleged conspiracy. Without evidence of an agreement—either explicit or implied—summary judgment will be entered on Count II

Count III, however, must be left for the jury. Discerning Noshirvan's intent in publishing his videos—whether it be to target Couture or Garramone Plastic Surgery—is a question the Court cannot answer. Accordingly, it is **ORDERED:**

(1) Defendant Danesh Noshirvan's Motion for Summary Judgment (Doc. 215) is **GRANTED IN PART AND DENIED IN PART.** Judgment shall be entered in favor of Defendant Danesh Noshirvan as to Count II and against Plaintiff Garramone Plastic Surgery who shall take nothing as to that Count. Judgment shall be withheld until the conclusion of trial.

(2) Plaintiff Garramone Plastic Surgery's Motion for Summary Judgment (Doc. 217) is **DENIED.**

**ENTERED** in Fort Myers, Florida on November 10, 2026.



Kyle C. Dudek
United States District Judge